IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Honor Duvall, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) NO. 21-CV-00167-PHX-ROS |
| Arizona Department of Child Safety, et al., | ) |
| Defendants. | ) |

DEPOSITION OF GREGORY McKAY

Phoenix, Arizona
July 31, 2023
10:02 a.m.

Reported by:                          CARRIE REPORTING, LLC
Christine Johnson                     Certified Reporters
Registered Professional Reporter      17505 North 79th Ave.
Registered Merit Reporter             Suite 301-C
Arizona CR No. 50383                  Glendale, Arizona 85308

(480) 429-7573

1   and asking the manager of this team to step up and jump in
2   and do things and how we said, "They're not allowed to do
3   that anymore.  You need to go through a manager."
4           So there was an operational dispute going on in
5   the midst of this case happening.  So I don't really
6   remember ever Dr. Coffman telling me any specifics about
7   this child and this interaction.
8   BY MR. CONNELLY:
9       Q.   Okay. Let's look at Exhibit 28.  Exhibit 28 is an
10  e-mail from Dr. Coffman to Jeff Duncan later in the day on
11  the 11th of March.  And I say "later in the day" in relation
12  to the case discussion that Keith Moffitt organized.
13          And she says to Mr. Duncan, "It seems that there
14  are some misunderstandings between our agency and yours
15  about this case and how it was handled.  I think it might be
16  a good idea to meet and talk about it so hopefully it can be
17  resolved."  Do you see that?
18      A.   Yes.
19      Q.   And that's got you laughing and smiling.
20      A.   Yeah.
21      Q.   Does this refresh your recollection about some
22  events around that time?
23      A.   Yes.  This -- this was involving a different
24  contentious matter at the same time this was occurring.
25      Q.   So it's not talking about the Swayde Sankey case?

1                 MS. WERNER:  Join.

2                 THE WITNESS:  Of course not.  What I would

3    probably do is say, "Get me the reports" to which they

4    arrived that night later, to which I probably read.  That

5    usually would be my response to something like that.

6                 So, no, I wouldn't say, "Duncan, eh.  Coffman,

7    more believable.  Do what Coffman says."  Coffman's not a

8    decision maker for this organization.  She was a medical

9    expert supporting by way of protocol and some supplemental

10   assistance.

11   BY MR. CONNELLY:

12        Q.   So if it's true what Mr. Duncan said that you

13   ordered him to file to remove the child and file a pendency

14   petition, why did you do that?

15                MS. STATON:  Object to the form, and foundation.

16                MR. STULTZ:  Join.

17                MS. WERNER:  Join.

18                THE WITNESS:  I don't remember that.  And

19   furthermore, you had -- you said they had a court-ordered

20   removal already.  They already got permission from a judge

21   to remove this kid.  So I don't know why -- I don't know why

22   it came to me saying, "Go remove that kid" if they had a

23   court order.

24   BY MR. CONNELLY:

25        Q.   You agree that having the court order doesn't