EXHIBIT 8

### MALTREATMENT SCREENING AND MANAGEMENT CLINICAL PATHWAY
### PHOENIX CHILDREN'S HOSPITAL

**PATHWAY FLOW DIAGRAM/ALGORITHM**
See attachments

**DISCLAIMER**
This clinical pathway is not intended to replace clinical judgment. It is meant to assist licensed independent practitioners and other health care providers in clinical decision-making by describing a range of generally acceptable approaches to the diagnosis and management of a particular condition. A particular patient's circumstances should always be taken into account when a practitioner is deciding on a course of management.

**SCOPE**
**Definition**
Child:  For purposes of this policy, "child" refers to any person regardless of age that is dependent on a parent or caregiver for food, shelter, or other basic needs of life.

Legal Definitions: Child abuse or maltreatment is both a medical diagnosis and a crime.  Legal definitions vary from jurisdiction to jurisdiction and may vary on intent (reckless, negligent, or intentional).  For the purposes of medical professionals evaluating a patient, the focus should be on the harm done to the child or the potential for future harm, and NOT on investigating the caregiver's intent.

Child Maltreatment:  When a child has been the victim of Physical abuse, emotional abuse, or neglect.

Physical Abuse: The infliction or allowing of physical injury, impairment of bodily function or disfigurement by the child's parent or caregiver.  Specific definitions can vary among countries, cultures, and religious/ethnic groups.

Emotional Abuse: The infliction of, or allowing another person to cause serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist and is caused by the acts or omissions of an individual having care, custody and control of a child.  It also includes unreasonable confinement of a child.

Neglect:  The inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care, if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare.   An exception to this standard is if the inability of a parent, guardian or custodian to provide services to meet the needs of a child with a disability or chronic illness is solely the result of the unavailability of reasonable services.  Neglect does include inadequate supervision that results in injury or death (such as falls, drowning, left in hot car, or ingestions).

Thorough physical exam:  A disrobed physical exam conducted by a trained pediatric provider for the purpose of screening for abuse or neglect that includes visualization of the entire skin surface, external auditory canals and tympanic membranes,  nose, mouth and throat, genitals and anus. There must also be thorough documentation of the exam.

**Inclusion Criteria**
- Any child that comes into contact with the staff of Phoenix Children's at any of the inpatient and outpatient sites.

**Exclusion Criteria**
- Patients with concerns for sexual abuse and/or human trafficking. These are addressed in another pathway.

**Communication:**

1. Social Work: should be consulted on ANY patient where there is a suspicion of maltreatment and they are placed on the pathway (if available in care setting). Provider must follow recommendations for further evaluation, management and disposition.

2. CPT: should be consulted on ANY patient with confirmed maltreatment or any patient with high suspicion for maltreatment (May defer to ED setting if transferred). Provider must follow recommendations for further evaluation, management and disposition.

3. DCS: should be consulted based on social work and or recommendation and on any patient where there is concern that disposition may have the potential for additional harm to the child, social work is generally responsible for making this consultation. (May defer to ED setting if transferred)

4. Police: should be contacted whenever maltreatment is confirmed or a high suspicion exists. This should be coordinated by the social worker. (May defer to ED setting if transferred)

5. The patient's parents/caregivers: should be informed why additional diagnostic testing is occurring based on a concern for maltreatment. The Maricopa County Interagency Protocol recommends that parents not be informed of reporting to DCS / Police unless it is clear that providing this information would not put this child or others in home at risk. Clinicians should approach the family in an empathetic, supportive, and non-accusatory manner while explaining the reasons why it is necessary proceed in the manner outlined above. Example language includes:

   "Anytime we identify a serious injury (or concerning finding) we are mandated by law to perform an investigation to confirm that the child is safe and has no other injuries. This involves discussing the case with (consulting services) and obtaining (additional diagnostic studies)"

   Avoid speculation of injury or medical causation with family

6. Documentation: is paramount for medical/legal reasons. It is important to be as specific as possible in describing physical findings. "Bruising across the body" is not sufficient. A provider should document each individual injury. Provider should also not say "bite mark to thigh". Rather a description of repeating bruising in the pattern of a possible human bite is preferable. Photographs should be uploaded to the medical record by the CPT team when appropriate.

7. Reporting: The vast majority of United States jurisdictions require reporting when an individual has a "reasonable suspicion" or "reasonable cause to believe" that abuse has occurred. But, what constitutes "reasonable suspicion" or a "reasonable cause to believe" is an issue that has perplexed and frustrated physicians for decades. Multiple studies have confirmed that physicians have a broad and variable interpretation of what constitutes "reasonable suspicion," with some physicians even requiring 75 percent or more probability of abuse before they would report. United States courts have provided some clarification on this issue. The United States Supreme Court has defined "reasonable suspicion" (at least within the context of

search and seizure) as something more than "an inchoate and unparticularized suspicion or 'hunch'". Thus, providers should understand that "reasonable suspicion" includes some objective evidence more than a "hunch." But, most importantly, providers should recognize that the threshold for reporting abuse does not require a high degree or incontrovertible certainty.

Verifying that a report has been made is ultimately the responsibility of the physician who places the patient on the pathway. That said, this act of reporting can and commonly should, be delegated to social work. If the initial patient interaction occurs in the ambulatory setting then most cases should be referred to the Emergency Department to complete the necessary screening and consultations. It is the responsibility of the ambulatory provider to verify that the patient arrives at the ED. If the patient does not arrive at the ED in a timely manner from the time of referral, the referring physician should contact the ED attending physician so that they can direct SW to contact PD and any other necessary resources.

1. For concern of harm/abuse in the home, report or cause a report to be made to DCS. For concern of harm/abuse outside of the home, report to Police Department of area in which it allegedly occurred.
2. DCS Statewide Toll-Free Child Abuse Hotline at 1-888-767-2445, (1-888-SOS-CHILD). When reporting, the following information will be requested:
   ▪ name, age, and gender of child and other family members
   ▪ address, phone numbers, and/or directions to child's home
   ▪ parents' place of employment
   ▪ description of suspected abuse or neglect
   ▪ current condition of the child
3. See appendix for Maricopa County Law Enforcement Agencies and Phone Numbers

8. Confidentiality: of every patient's case shall be upheld and maintained. Therefore, information shall not be released or disclosed to any investigative agency without verification of their identity and their involvement in the case. Information shall not be discussed with other family members unless permission has been given by the legal guardian or caretaker. Investigative agencies requesting the medical records should be referred to social work.

## KEY CLINICAL RECOMMENDATIONS

1. Consider maltreatment in the differential diagnosis when, during the conduct of a detailed history of present illness or injury, or during a physical exam, or when focused or incidental diagnostic findings identify any of the "red flags" of possible child abuse as listed. See also Attachment "Reference – Red Flags and Risk Factors."

   "Red Flag" Medical/Social history and risk factors:
   1. Disclosure of abuse
   2. No history of traumatic event with injury
   3. Inconsistent history or vague/no verifiable history
   4. Significant change and/or evolving history

5. Delay in seeking medical care; failure to call 911
6. Seeking healthcare from multiple sites and settings
7. Injury inconsistent with developmental abilities
8. Inappropriate behavior of child and/or caregivers
9. Objective observable symptoms of caregiver impairment
10. Indications of medical neglect

"Red Flag" Physical exam findings:

    1. Bruising in non-mobile child (4 months or younger)

    2. Bruising on Torso, Ears, Neck in child 4 years or younger (TEN-4)

    3. Patterned marks, including bites

    4. Burns (clear history essential)

    5. Intra-oral injuries – healing or acute

    6. Macrocephaly or rapidly enlarging head circumference

    7. Genital or anal injuries without clear history

"Red Flag" Diagnostic findings:

    1. Metaphyseal fractures (bucket-handle, corner, chip)

    2. Rib fractures (especially posterior)

    3. Any fracture in a non-ambulating infant or child

    4. Multiple fractures

    5. An unexpected finding of a healing fracture

    6. Complex skull fractures, subdural hematoma (SDH), subarachnoid hematoma (SAH), brain contusions, cerebral edema, and anoxic/hypoxic brain injury not well-explained by witnessed injury mechanism, especially in young children

    7. Brain injury without explanation and/or multiple ages

    8. Any other significant injury not adequately explained

    9. A positive screen for drugs of abuse in a child under age 12

Independent risk factors that, when combined with above red flags may increase likelihood of maltreatment:

    1. Vulnerable patient population (eg. developmental delay, failure to thrive, NICU stay, twins & triplets, chronic health problems)

    2. Prior DCS reports

    3. History of household domestic violence, intimate partner violence, and/or caregiver police or prison involvement

**2.** When child abuse has entered the differential diagnosis (i.e. presence of at least one "red flag," risk factor or other concern for abuse), provider should proceed to steps of the pathway. It is recommended, but not mandated, to error on the side of proceeding with the pathway whenever maltreatment enters a provider's differential diagnosis or thought process.

    A. The child should get a detailed history of present injury or illness, a thorough disrobed physical exam, and a focused diagnostic workup as needed, to facilitate comprehensive screening and to identify additional "Red Flags" and risk factors of abuse.

    History:

1. Ask directed questions to elicit all possible answers pertinent to "red flag" section on history above.

2. If an injury is present please ask detailed questions of the events surrounding the injury, for example, ask about feedings, naps or sleep, and transitions from one caregiver to another.

3. Social Work consultation is highly recommended (if available in your care setting) for any patient on the maltreatment pathway (see consultations section) please take into account their findings and consider their recommendations.

4. Obtaining basic information from the child:
   A. If possible, find a quiet private spot to talk with the child away from the parent and/or caretaker.
   B. Do not make promises to the child, such as "I won't tell anyone" or "No one will have to go to jail." Simply reassure the child that you will do whatever is necessary to keep them safe.
   C. If the following information has not already been volunteered, ask the child only these four questions:
   What happened?
   Who did it?
   When did it happen?
   Where did it happen?
   D. Document exact quotes provided by the child.

Physical:

1. A complete head to toe undressed assessment is indicated for any patient on the pathway.

2. Key insights from the general exam should include the patient's nutrition status, hygiene, and general appearance.

3. Focused physical exam should be done to determine if any of the findings in the "red flags" physical section are present

B. **Ambulatory Care or Urgent Care** - Complete all of the following Primary Screening for child maltreatment:
   1. Evaluate the risk of imminent harm or continued abuse for the patient.
   2. Determine whether the concerns for abuse are in the home or in another location outside of the home.
   3. Document the thorough physical exam and all caregiver interactions.
   4. Based upon the initial concern, the findings from these three steps, and careful clinical judgement, the practitioner estimates a likelihood of abuse.
      a) **Unlikely/no continued concern for maltreatment**: no further action is necessary. At their discretion, the provider may consider:
         a. **Both** reporting to DCS **and** referring the child to Child Help clinic for follow up. The DCS referral helps ensure that the caregiver completes their follow up appointment with Child Help.
         b. Consultation with Social Work and/or Child Protection Team (if available in this setting) for additional opinion. Must follow consultant recommendations for further evaluation and disposition.
         c. Referral to community resources as appropriate:

Clinical Pathway 005 GR

        i.   Positive Parenting Program (602) 933-3591

        ii.   Birth to Five Helpline 1-877-705-KIDS (5437)

        iii.   Phoenix 2-1-1  211arizona.org

**b)** ==**Possible or likely**==

    a.  ==Evaluate for each of the following:==

        i.   Is there high risk of imminent harm or abuse?

        ii.   Are there injuries requiring ==immediate medical attention?==

        iii.   Are there any physical findings concerning for abuse?

    b.  If yes to any of the above, complete the following:

        i.   ==Immediately send the patient directly to the PCH ED in a safe and secure manner:==

            1.  Transport via EMS for any significant injuries, instability or if there is any question about the reliability of the family/ caregiver or the safety of the patient.

            2.  Transport via Security Services if anywhere on PCH Main Campus.

            3.  Transport by Private Vehicle if none of the above; <u>provider must follow up to verify that the patient arrived in the ED</u>.

        ii.   Report through PCH OneCall 602-933-3627.

        iii.   ==In addition to sending patient to the ED, provider must perform mandated reporting to DCS and/or police department.==

**c)** ==**Special Circumstances for discharge with DCS referral**==

    a.  Certain Circumstances may allow DCS referral and discharge

        i.   Older Patients (>4y/o) without immediate danger and reassuring H&P

        ii.   Child no longer in environment or suspected event occurred remotely in time with reassuring H&P

**C.** ==**PCH Acute Care and Emergency Department**== - Complete all of the following Primary Screening for child maltreatment:

    1.  ==Consult social work for "SNAT evaluation."==

    2.  ==Order skeletal survey (if **<24 months of age**) and non-contrast CT head (if **<12 months of age**).==

      a)  Note: PECARN TBI rules do not apply to abusive head trauma

      b)  Provider must get the official PCH radiologist reading of these tests prior to determining disposition.

    3.  ==Order CBC, CMP, PT/PTT, amylase, lipase, UA, and consider urine drug screen. Use the SNAT orderset.==

4. Document physical exam, noting interactions with caregivers and/or demeanor. Additional focused diagnostic evaluation may need to be performed based upon the findings of the exam.

5. Based upon the initial concern, the findings from these three steps, and careful clinical judgement, the practitioner estimates a likelihood of maltreatment.

   a) **Unlikely:** If there are no additional red flags identified in the social work SNAT evaluation, imaging, laboratory testing and physical exam, and if there is an adequate explanation for the injury, then no further action is necessary. At their discretion, the provider may consider:

      a. Reporting to DCS and referring the child to Child Help clinic for follow up. The DCS referral helps ensure that the caregiver completes their follow up appointment with Child Help.

      b. Consultation with Social Work and/or discussion with Child Protection Team (if available in this setting) for additional opinion. Must follow consultant recommendations for further evaluation and disposition.

      c. Referral to community resources as appropriate:

         i. Positive Parenting Program (602) 933-3591

         ii. Birth to Five Helpline 1-877-705-KIDS (5437)

         iii. Phoenix 2-1-1 211arizona.org

   b) **Possible or likely:** If additional red flags were identified during the Primary Screening for child maltreatment, or if there is not an adequate explanation for injuries or bruising, then complete all of the following:

      a. Consult Child Protection Team between 7am and 8pm, otherwise admit to Trauma Service for CPT consult in the morning (602-933-2780).

      b. Consult Trauma Service for patients without safe discharge plan and/or requiring hospital admission.

      c. All additional reporting, evaluations, consults, and testing will be directed by the CPT and/or Trauma Service.

D. Mandated reporting

   1. For concern of harm/abuse in the home, report or cause a report to be made to DCS. For concern of harm/abuse outside of the home, report to Police Department of area in which it allegedly occurred.

   2. DCS Statewide Toll-Free Child Abuse Hotline at 1-888-767-2445, (1-888-SOS-CHILD). When reporting, the following information will be requested:

      ▪ name, age, and gender of child and other family members

      ▪ address, phone numbers, and/or directions to child's home

      ▪ parents' place of employment

      ▪ description of suspected abuse or neglect

      ▪ current condition of the child

   3. See appendix for Maricopa County Law Enforcement Agencies and Phone Numbers

**PATHWAY GOALS**

1. To define criteria that will prompt abuse screening in patients who are less than 18 years of age and to outline the recommended response to concerns about pediatric physical abuse.

2. To define an objective standard for the evaluation and management of suspected non-accidental trauma patients for performance improvement.

3. To comply with the applicable Arizona Revised Statutes and specific licensing requirements for mandated reporting of pediatric physical abuse:

- TJC Standard PC.01.02.09

- ADHS R9-10-1003 E.

- A.R.S. § 13-3620, and 1404-1406

- A.R.S. § 36-2225 Title 9 A.A.C. 25, Article 13, Table 13.1(8)

**OUTCOME/PROCESS/BALANCING MEASURES**

| Key Performance Measures | Numerator | Denominator |
|---|---|---|
| sNAT rate | Number of cases with NAT coded as primary or secondary injury code in trauma registry | Total number of trauma cases in trauma registry |
| sNAT Nonsurgical admission rate | Number of cases with NAT coded as primary or secondary injury code in trauma registry NOT admitted to trauma service | Number of cases with NAT coded as primary or secondary injury code in trauma registry |
| sNAT CPG compliance | Number of cases with a skeletal survey | Number of cases under 2 years old with NAT evaluation by social work |
| sNAT ED Length of Stay | Average ED LOS of cases with NAT coded as primary or secondary injury code | Average ED LOS of total trauma cases |
| sNAT Hospital Length of Stay | Average Hosp LOS of cases with NAT coded as primary or secondary injury code | Average Hosp LOS of total trauma cases |
| sNAT Case Fatality Rate | Number of mortality cases with NAT coded as primary or secondary injury code | Number of cases with NAT coded as primary or secondary injury code |
| *Additional measures as needed* | | |

Clinical Pathway 008 GR

**ADMISSION  CRITERIA**
- Patients requiring admission for management of traumatic injuries to be admitted according to trauma services policy
- Patients without a safe discharge plan and requiring admission to be admitted to the trauma service

**DISCHARGE  CRITERIA**
Criteria  for discharge will  be according to the primary  service with input from consulting services including Child Protection Team, Social Work, and DCS

**ORDER  SET**
See addendum "Order Set"

**EVIDENCE  BASED SUPPORTING  MATERIAL**
Child maltreatment  remains a leading cause of death among young children in Arizona (Arizona Child Fatality Review Program Twenty Fourth Annual Report, 2017).  As the state's only Level 1 Pediatric Trauma Center and the largest pediatric hospital in the state, Phoenix Children's has a unique responsibility to recognize children that may be victims of maltreatment  whenever they interact with the hospital system. In addition, children with recurrent trauma experience significantly higher mortality  than those with a single instance of abuse. This further emphasizes the importance of recognizing  maltreatment at any interaction between PCH staff and potential victims, in whichever setting that interaction may occur. The attached references expand upon the many important reasons a thorough screening process for child maltreatment  must be in place at a pediatric hospital.

The purpose of this pathway is to provide comprehensive and objective criteria for the prompt screening for child maltreatment  and management standards to ensure suspected victims receive the correct diagnostics and services. It also serves to increase compliance with Arizona Revised Statutes and other licensing requirements for mandated reporting of child maltreatment.

**REFERENCES**
1. American Academy of Pediatrics. (2009).  Diagnostic imaging  of child abuse. *Pediatrics*, *123*(5), 1430.
2. Child  Abuse Medical Diagnosis and Management, 3rd Edition.  Ed. RM Reece and CW Christian. American  Academy of Pediatrics, 2009.
3. Christian, C. W., & Committee  on Child Abuse and Neglect. (2015).  The evaluation of suspected child physical abuse. *Pediatrics*, *135*(5), e1337-e1354.
4. Deans, KJ, Thackeray J, Askegard-Giesmann JR, Earley E, Groner JI, Minneci PC. Mortality increases with recurrent episodes of nonaccidental trauma in children. J Trauma Acute Care Surg. 2013;75(1):161–165.
5. Escobar, M. A., Pflugeisen, B. M., Duralde, Y., Morris, C. J., Haferbecker, D., Amoroso, P. J., ... & Pohlson, E. C. (2016).  Development of a systematic protocol to identify victims  of non-accidental trauma. *Pediatric surgery international*, *32*(4), 377-386.
6. Fleisher, G. R., Ludwig, S., Bachur, R. G., Gorelick, M. H., Ruddy, R. M., Shaw, K. N., Wood, J. N. (2010).  Child Abuse. Textbook of Pediatric Emergency Medicine, Ch132, (1656-1700).  Lippincott, Williams,  & Wilkins.
7. Gonzalez, D. O., & Deans, K. J. (2017, February). Hospital-based screening tools in the identification  of non-accidental trauma. In *Seminars in pediatric surgery* (Vol. 26, No. 1, pp. 43-46).  Elsevier.

8.  Higginbotham, N., Lawson, K. A., Gettig, K., Roth, J., Hopper, E., Higginbotham, E., ... & Garcia, N. M. (2014). Utility of a child abuse screening guideline in an urban pediatric emergency department. *Journal of trauma and acute care surgery*, 76(3), 871-877.

9.  Larimer, E. L., Fallon, S. C., Westfall, J., Frost, M., Wesson, D. E., & Naik-Mathuria, B. J. (2013). The importance of surgeon involvement in the evaluation of non-accidental trauma patients. *Journal of pediatric surgery*, 48(6), 1357-1362.

10. Lavin, L. R., Penrod, C. H., Estrada, C. M., Arnold, D. H., Saville, B. R., Xu, M., & Lowen, D. E. (2018). Fractures in the pediatric emergency department: are we considering abuse?. *Clinical pediatrics*, 0009922818759319.

11. Lorenz, D. J., Pierce, M. C., Kaczor, K., Berger, R. P., Bertocci, G., Herman, B. E., ... & Sheehan, K. (2018). Classifying injuries in young children as abusive or accidental: reliability and accuracy of an expert panel approach. *The Journal of Pediatrics*.

12. Magana, J. N., & Kuppermann, N. (2017). The PECARN TBI rules do not apply to abusive head trauma. *Academic emergency medicine*, 24(3), 382-384.

13. Magoteaux, S., Gilbert, M., Langlais, C. S., Garcia-Filion, P., & Notrica, D. M. (2016). Should children with suspected nonaccidental injury be admitted to a surgical service?. *Journal of the American College of Surgeons*, 222(5), 838-843.

14. Pflugeisen, B. M., Escobar, M. A., Haferbecker, D., Duralde, Y., & Pohlson, E. (2017). Impact on Hospital Resources of Systematic Evaluation and Management of Suspected Nonaccidental Trauma in Patients Less Than 4 Years of Age. *Hospital pediatrics*, 7(4), 219-224.

15. Pierce, M. C., Kaczor, K., Aldridge, S., O'Flynn, J., & Lorenz, D. J. (2010). Bruising characteristics discriminating physical child abuse from accidental trauma. *Pediatrics*, 125(1), 67-74.

16. Riney, L. C., Frey, T. M., Fain, E. T., Duma, E. M., Bennett, B. L., & Kurowski, E. M. (2017). Standardizing the evaluation of nonaccidental trauma in a large pediatric emergency department. *Pediatrics*, e20171994.

17. Tiyyagura, G., Beucher, M., & Bechtel, K. (2017). Nonaccidental injury in pediatric patients: detection, evaluation, and treatment. *Pediatric emergency medicine practice*, 14(7), 1-32.

18. Wootton-Gorges, S. L., Soares, B. P., Alazraki, A. L., Anupindi, S. A., Blount, J. P., Booth, T. N., ... & Partap, S. (2017). ACR appropriateness criteria® suspected physical abuse—child. *Journal of the American College of Radiology*, 14(5), S338-S349.

19. https://dcs.az.gov/report-child-abuse

| Pathway Information/History: | |
|---|---|
| Dates Created/Reviewed/Revised: | *2013; 2015; 1/2019* |
| Date of next review: | |
| Previous Titles/Replacing | *Replaces previous flowsheet* |
| Authored by: | *Zeb Timmons, MD, Associate Medical Director Quality and Safety* |

| Reviewed by: | *Todd Nickoles, RN MBA, Director, Surgery and Trauma Programs* |
|---|---|
| | *Lisa Kirsch MD, Medical Director Child Protection Team* |
| | *Joanna Kramer, MD, Pediatrician* |
| | *David Notrica MD, Trauma Medical Director* |
| | *Kelly Kelleher, MD, Medical Director Quality and Safety* |
| | *Blake Bulloch, MD, Medical Director Emergency Department* |
| | *Chris Ramsook, MD, Medical Director Urgent Care* |
| | *Jeffrey Miller, MD, Medical Director Radiology* |
| | *Wendy Bernatavicius, MD, Pediatrician* |
| | *Rhonda Baldwin, MSW, Manager* |
| **Approved by:** | *Clinical Standards Committee, 1/2019* |
| | *Clinical Effectiveness Committee, 2/2019* |

Clinical Pathway 011 GR

# PCH Child abuse & maltreatment Pathway (Outpatient)



# PCH Child abuse & maltreatment Pathway (Inpatient/ED)



# Pathway Addendum[1] RED FLAGS and Risk Factors

**Behavioral:**

Patient indiscriminate with affection

Caregiver has unrealistic expectations for developmental stage

Caregiver does not respond appropriately to patient cues

Caregiver lacks appropriate concern for illness or injury severity

Child's response to caregiver interaction concerning

Caregiver with inappropriately negative response to social work consultation or discussion of maltreatment

**Historical:**

**Disclosure of abuse**

Patient with an injury who lacks a history or has a changing/inconsistent history as to how it was obtained

Delay in calling 911 or seeking appropriate medical attention for a child's illness or injury

Injuries that are inconsistent with the history obtained or the patient's developmental status

Objective findings of caregiver impairment

Repetitive care-seeking especially at different locations

**Physical:**

Abnormal bruising for age/development, including any bruising in a child under 4 months or a child who does not cruise

Abnormal bruises on a child less than **4** years old including **T**orso, **E**ars, **N**eck, **F**renulum, **A**ngle of the jaw, **C**heek, **E**yelid, **S**cleral hemorrhage, or any **P**atterned bruising (including bites).  TEN-4-FACES-P

Intra-oral injuries

Burns in submersion distribution or pattern

Malnutrition/Undernutrition  (Failure to thrive)

Poor hygiene

Macrocephaly, or rapidly increasing head circumference

Breast, genital, or anal lesions without reasonable history

Hickeys

**Radiographic/Diagnostic:**

Metaphyseal fracture (corner, chip, bucket handle)

Rib fracture(s)

Duodenal hematoma

Any of the following when not explained by a reliable history/mechanism:  depressed skull fracture, subdural hematoma, subarachnoid hematoma, cerebral contusions, intracranial bleeding of varying densities, cerebral edema, and/or anoxic/hypoxic CNS injuries

Multiple fractures

Any unexpected acute/healing fracture, or fracture in a non-ambulatory childAny other injury on diagnostic imaging that is not explained by history (i.e. esophageal perforation)

Sexually transmitted infections

Positive screen for drugs of abuse in a child less than 12 years old

**Independent Risk Factors for Maltreatment:**

History of domestic violence, Police involvement, and/or DCS involvement

A vulnerable child (less than 4 years of age, developmental delay, intellectual disability, twins, NICU graduates, chronic health problems)

Clinical Pathway 014 GR

## Pathway Addendum[1]

| Diagnostic Imaging* and laboratory evaluations[2] | | | | |
|---|---|---|---|---|
| | Head CT | Skeletal Survey | Trauma Labs** | Abdominal CT |
| 0-6 months | YES | YES | YES | Obtain if trauma labs are concerning for intra-abdominal injury |
| 6-12 months | YES, unless directed otherwise by CPT | YES | YES | |
| 12-24 months | NO unless symptomatic | YES | YES | |
| 2-6 years | NO unless symptomatic | NO unless directed by CPT | YES | |
| 6+ years | NO unless symptomatic | NO unless directed by CPT | NO unless directed by CPT or clinically indicated | |

*ALL imaging requires PCH Radiology read for patient disposition
**Trauma Labs include CBC, CMP, UA, PT/PTT, T&S, amylase, and lipase.  Can consider toxicology evaluation based on clinical presentation (Use SNAT order-set)

Ver 4.0 (2/5/2019)

Clinical Pathway 015 GR



