EXHIBIT 46



# Multidisciplinary Protocol for the Investigation of Child Abuse

Developed by the

**Interagency Council**

# Maricopa County Children's Justice Project

***Created July 1995***
*Revised July 1999, September 2003, June 2004, August 2008, March 2016*



**Bill Montgomery**
**Maricopa County Attorney**

# MULTIDISCIPLINARY PROTOCOL FOR THE INVESTIGATION OF CHILD ABUSE

This Protocol was published under the auspices of the Interagency Council of the Maricopa County Children's Justice Project, with grant funding from the Governor's Division for Children.

In December 2003, the State Legislature passed significant revisions to the child protection statutes of Arizona. These changes included a directive to develop a county-wide Protocol for law enforcement, social service agencies, and prosecutors.

In 2013 and 2015, the State Legislative established the Office of Child Welfare Investigations and the Department of Child Safety, with the primary purpose of protecting children.

As County Attorney, I wish to thank the member agencies and commend them for their commitment and dedication to working cooperatively in the handling of cases involving abused children. The delivery of professional services and treatment within a coordinated framework promotes a therapeutic environment within which a child can feel safe and secure. Every child deserves to be treated with dignity, compassion and respect. This Protocol provides a model for treatment consistent with these principles.

Bill Montgomery
Maricopa County Attorney

* * * * * * * * * * * * *

Reproduction of this Protocol, in whole or in part, should acknowledge the Maricopa County Interagency Council as the source.

In December 2003, the Arizona Legislature enacted legislation mandating the development of a county-wide protocol for the A.R.S §8-817 B&C.  Representatives from DCYF, Child Protective Services, the Maricopa County Attorney's Office, the Maricopa County Sheriff's Office, the Attorney General's Office, and the Chiefs of Police of municipalities in Maricopa County, joined together to revise the existing Multidisciplinary Protocol for the Investigation of Child Abuse.  These revisions were made in July, 2004.

| | | |
|---|---|---|
| Richard M. Romley, Maricopa County Attorney | 7/1/04 | |
| Sheriff Joe Arpaio, Maricopa County Sheriff | 7-9-04 | |
| Kevin Kotsur, Avondale Chief of Police | 7/7/04 | |
| Timothy J. Fitzpatrick, Acting Buckeye Chief of Police | 7-7-04 | |
| Sherri Kiyler, Chandler Chief of Police | 7-6-04 | |
| Richard Yost, El Mirage Chief of Police | 7/7/04 | |
| John Brewer, Gilbert Chief of Police | 7-6-04 | |
| Andrew Kirkland, Interim Glendale Chief of Police | 7.7.04 | |
| Mark Brown, Goodyear Chief of Police | 7-7-04 | |
| Dennis Donna, Mesa Chief of Police | 7/1/04 | |
| John Wintersteen, Paradise Valley Chief of Police | 7/6/04 | |
| Child Protective Services | 7/9/04 | |
| Arizona State Attorney General's Office | 7/9/04 | |
| David Leonardo, Peoria Chief of Police | 7-7-04 | |
| Jack Harris, Acting Phoenix Chief of Police | 7-8-04 | |
| Alan Rodbell, Scottsdale Chief of Police | 7.6.04 | |
| Daniel Hughes, Surprise Chief of Police | 7/7/04 | |
| Ralph Tranter, Tempe Chief of Police | 7-6-04 | |
| Lawrence Rodriguez, Tolleson Chief of Police | 7/7/04 | |
| Anthony Melendez, Wickenburg Chief of Police | 7.7.04 | |
| Dan Connelly, Youngtown Chief of Police | 7-7-04 | |
| John L. Pickens, ASU Chief of Police | 7/12/04 | |

## INTERAGENCY COUNCIL - ORIGINAL PROTOCOL AUTHORS – 1995

Helene Abrams
Public Defender - Juvenile Division

Angela Ashley, M.S.
Project Volunteer - Victim Witness

Michael Baker
MCAO - Juvenile Court Center

Karen Bulkeley, Supervisor
Child Protective Services

Paul Charnetsky, M.D.
General Pediatrics

Mindy Duncan, Supervisor
Child Protective Services

Wendy Dutton, M.A.
St. Joseph's Hospital

Sgt. Hector Federico
Mesa Police Department

Bruce Foremny, Senior Investigator
Glendale Police Department

Christine Greenfield
Assistant Attorney General - Child Welfare

Dyanne Greer
MCAO - Sex Crimes Unit

Jeffrey Harrison, Ph.D.
Clinical Psychologist

Richard Johnson, Supervisor
Child Protective Services

Ruth Kawasaki
School Counselor

Chris Lange, Bureau Chief
MCAO - Victim Witness

Peter Leander, Attorney
Private Practice

Mary Livingston, M.S. Ed.
Project Coordinator - Victim Witness

Margaret Lothian, M.S.W.
Maricopa Medical Center

Dorothy Macias
MCAO - Training Division

Jim Marvin
Juvenile Probation - Juv. Court Center

Carol McFadden, M.S.W.
MCAO

Cindi Nannetti, Bureau Chief
MCAO - Sex Crimes

Kay Rauth-Farley, M.D.
St. Joseph's Hospital

Judge Ron Reinstein
Presiding Criminal Judge - East Court

Gary Remeikis, Detective
Tempe Police Department

Lori Scott, Supervisor
Adult Probation - Sex Offender Unit

Sylvia Strickland, M.D.
Maricopa Medical Center

Pam Swart, Detective
Mesa Police Department

Al Thiele, Lieutenant
Phoenix Police Department

Pam Wiens, Juvenile Attorney
Private Practice

Anne Williams
MCAO - Sex Crimes Unit

# 2008 – 2009 Revision Authors

Arizona Attorney General's Office
Valerie Sheedy-Converse   Kevin
Smith   Edward Truman

Arizona Department of Economic
Security   Nanette
Gerber Deborah
Harper Dana
Markusen

Arizona Department of Education
Charles Easaw   Tom Horne Vince
Yanez

Arizona Department of Juvenile
Corrections John Piccarreta

Arizona Department of Public Safety
Roger Vanderpool

Arizona Peace Officer Standards and
Training Board Rosalee Fitch

Arizona State University
Terry Lewis Chief John
Pickens

Arizona Voice for Crime Victims
Steve Twist

Avondale Police Department
Paul Herrmann David Jones
Chief Kevin Kotsur

Buckeye Police Department
Chief Mark Brown Jon
Terpay

Catholic Healthcare West / St. Joseph's
Hospital Kathryn
Coffman   Wendy
A. Dutton Lisa
Kirsch Stacy Nelson

Chandler Police Department
Chief Sherry Kiyler Sean
McKenzie

Childhelp Marilyn
Carson   Maureen
Domogala Kristi
Murphy Stephanie
Parra

Creighton School District
Stefany Bisbee Lucy
Samuels

El Mirage Police Department
Chief Michael Frazier
Former Chief Ken Holmes

Fort McDowell Yavapai Nation Police
Department   Chief Jesse Delmar

Gilbert Police Department
Katrina Alberty   Chief
Timothy J. Dorn Debrah
Harin Dave Meyer

Glendale Police Department
Chief Steven Conrad Dean
Ferullo Phillis Lawson

Goodyear Police Department
  Chief Mark Brown
  Latroy Campbell
  Dwayne Pollard
  Terri Woodmansee
  Anna Ybara

Maricopa County Adult Probation
  Barbara Broderick
  Erin Cacciatore
  Mary Anne Legarski
  Therese Wagner

Maricopa County Attorney's Office
  Angela Andrews
  Suzanne Cohen
  Kim Cummings
  Pat Darrow
  Kim de Beus
  Mark Faull
  Michaella Heslin
  Jamie Mabery
  Debbie MacKenzie
  Keith Manning
  Barbara Marshall
  Rachel Mitchell
  William Montgomery
  Erin Otis
  Jeanine Sorrentino
  County Attorney Andrew Thomas

Maricopa County Juvenile Probation
  Shari Barrett
  Carol Boone
  Debra Hall

Maricopa County Sheriff's Office
  Joe Dietrich
  William Knight
  Gregory Lugo
  Kevin Riddle
  Debra Schoeninger
  Suzanne Seagraves
  Brian Stutsman

Maricopa County Superior Court
Rosa Mroz Christopher Rufo
Sheila Tickles   Eileen Willett


Maricopa Police Department
Patrick Melvin

Mesa Police Department   Cathy
Bowman *(formerly with Mesa Police Department)*
  Chief George Gascon
  Charles Lines Peter
  Thompson   Tim
  Walker   Mark
  Wesselman

  Mesa Public Schools District
  Al Moore

Paradise Valley Police Department
Chief John J. Bennett Dennis Dodd
Jim Gibson

Peoria Police Department
Charles Bezio   Chief
Larry Ratcliff Robert
Sanders

  Phoenix Police Department
  John E. Bell Frank Dimodica
  Eric Edwards   Amanda
  Faust Dru Froggett Chief
  Jack Harris Connie Kostelac
  Kelcey Means   Allison
  Sedowski   Janel Smith

  Phoenix Union High School District
  Debi Neat

Roman Catholic Diocese of Phoenix
Cecelia Frakes Jennifer King
MaryBeth Mueller Jean Sokol


Salt River Police Department
Chief Stanley Kephart


Scottsdale Healthcare
Polly Hrenchir Tiffany
Kennedy    Jackie
Miller    Kim Post
Karyn Rasile


Scottsdale Police Department
Joseph LeDuc Chief Alan
Rodbell


Southwest Family Advocacy Center
Chris Schopen


State of Arizona, Office of Children,
Youth and Families
Christy Alonzo Janet
Garcia


Surprise Police Department
John Bacon    Philip
Hodgkins Chief Daniel
Hughes John Poorte


Tempe Police Department
Lisa Ball Joey Brudnock
Chief Tom Ryff

Tolleson Police Department
Chief Larry Rodriguez


U.S. Department of Justice / U.S.
Attorney's Office
Shawn Cox
Dyanne Greer


Wickenburg Police Department
Andy Brinkman Chief A.E.
Melendez


Youngtown Police Department
Chief Kimberly Johnson    Ed
Siemen

## Contributors to the 2013-2016 Revision

Arizona Voice for Crime Victims
    Colleen Clase

Attorney General's Office
    Ed Truman

Avondale Police Department
    Linda Karel
    Kelly Shore

AZPOST
    Lyle Mann

Buckeye Police Department
    Dena Bango

Catholic Diocese of Phoenix
    Anne Vargas-Leveriza
    Melanie Takinen
    Cecilia Frakes

Chandler Police Department
    David Austin
    Amanda Janssen
    Brian Potter
    David DeVoy

Childhelp
    Maureen Basenberg
    Robert Bell
    Michelle Fingerman
    Latrice Hickman
    Kristy Murphy
    Shefali Gandhi

Department of Child Safety (DES & OCWI)
    Mindy Duncan-Zipprich
    Greg McKay
    Jerry Giesel

Department of Juvenile Corrections
    Bruce Foremny
    Charles Flanagan
    Dona Marie Markley
    Rob Jones
    Shannon Seidel

Department of Public Safety
    Robert Halliday
    Jeromy Neumann

El Mirage Police Department
    Laura Pina
    Kim Walden
    Dave Wilson

Forensic Interviewers
    Wendy Ditton
    Chris Schopen

Fort McDowell Police Department
    Jesse Crabtree

Gilbert Police Department
    Lacey Rose Cox
    Steven Shippee
    John Lyle

Glendale Advocacy Center
    Larry Castrvinci

Glendale Police Department
    Melissa Brickhouse-Thomas
    Chris Briggs
    Dave Madeya

Maricopa County Attorney's Office
    Rachel Mitchell
    Rebecca Baker
    Karen Sciarotta
    Karen Ashley
    Blaine Gadow
    Mike McVey
    Jon Eliason
    Melody Lenhardt
    Keli Luther
    Julie Williams
    Beth Beringhaus

Maricopa County Sheriff's Office
    Brian Sands
    Stephen Whitney

Maricopa County Superior Court
    Brad Astrowsky
    Rosa Mroz

Mesa Police Department
    Charles Lines
    Joseph Shelley
    Frank Hoglund
    Cherie Leffler

Mesa Public Schools
    Allem Moore
    Tom Pickrell

Paradise Valley Police Department
    Jim Gibson
    Blake Barth

Peoria Polcie Department
    Jason Christofferson
    Shari Howard

Phoenix Children's Hospital
    Dr. Kathy Coffman

Phoenix Police Department
    Sandra Renteria
    Mary Roberts
    Mandy Faust

Scottsdale Family Advocacy Center
    Carrie Candler

Scottsdale Healthcare
    Tiffany Kirby
    Karyn Rasile

Scottsdale Police Department
    Todd Larson
    Jay Buckler
    Steve Negron

Southwest Family Advocacy Center
    Debbie Olson

Surprise Police Department
    John Bacon
    Kevin Cyrnek
    John Poorte

Tempe Police Department
    Kevin Mace
    Kim Hale

Tolleson Police Department
    Wayne Booher
    Rudy Mendoza

Winged Hope
    Jessica Nicely
    Danielle Collinwood

## III. MEDICAL PROTOCOL

Medical personnel have a complex role in child abuse cases. Evidence of child abuse may be detected during an examination or disclosures of abuse may be made to medical personnel. Since medical personnel are mandated reporters of child abuse per A.R.S. §13-3620, this Protocol will outline child abuse reporting guidelines. Patients may also be present for child abuse evaluation. Guidelines for medical evaluation have been addressed for these situations.

Child abuse examinations must be performed by medical personnel who are competent in the forensic exam of children as well as in providing expert testimony in judicial proceedings. It is understood that medical personnel have an obligation to inform the immediate family regarding the health and welfare of the child. However, it is imperative that medical personnel remain objective in the evaluation and not confront the family or speculate on the nature of the injury. The medical personnel should be able to document their education, training and experience in the area of child abuse and neglect. In Maricopa County there are five Child Abuse Assessment/Advocacy Centers staffed by physicians, nurse practitioners,  and/or forensic nurse examiners with the necessary qualifications to provide child abuse examinations (see Appendix L), and, when medically appropriate, it is strongly suggested that these exams be conducted at one of the five centers.

I.      Presentation of Suspected Child Abuse Cases

        Suspected child abuse can be made known to medical personnel by three different means:

        A.      A parent or caretaker requests a child abuse evaluation:

                1.      Triage the urgency of medical need, i.e., severe trauma or excessive bleeding vs. minor contusions. A child's physical/medical safety is always the paramount concern.

                2.      Determine if the police and/or DCS have been notified.

                        a.      If notification has been made, re-contact that agency(s) to determine if an officer and/or DCS Investigator will be responding **and** if the agency is requesting that a medical evaluation be performed.

                        b.      If notification has not been made, make every attempt to obtain background information on the child and alleged abuse from the parent/caretaker while out of earshot of the child. If further information regarding the abuse is necessary, obtain basic information from the child as outlined below. If

there is reasonable belief to suspect child abuse, a report must be made. See reporting procedure outlined below.

B.   Evidence of child abuse is observed during routine or unrelated exam:

1.   Utilize the "obtaining basic information from the child" procedure listed below.

2.   If there is reasonable belief to suspect child abuse, utilize the reporting procedure outlined below.

3.   Do not notify parent and/or caretaker prior to police and DCS notification.   It is understood that the forensic medical professional has an obligation to inform the immediate family regarding the health and welfare of the child. However, it is imperative the medical personnel remain objective in the evaluation and not confront the family or speculate on the nature of the injury.

C.   A child self discloses abuse to medical personnel:

1.   Follow the procedure for obtaining basic information from the child as outlined below.

2.   If someone reasonably believes child abuse has occurred, a child abuse report must be made. See reporting procedure outlined below.

II.  Obtaining basic information from the child:

A.   If possible, find a quiet private spot to talk with the child away from the parent and/or caretaker.

B.   Do not make promises to the child, such as "I won't tell anyone" or "No one will have to go to jail." Simply reassure the child that you will do whatever is necessary to keep them safe.

C.   If the following information has not already been volunteered, ask the child only these four questions:

1.   What happened?

2.   Who did it?

3.   When did it happen?

4.   Where did it happen?

D.     Document exact quotes provided by the child.

III.  Procedure for Reporting Child Abuse

When a person reasonably believes that child abuse has occurred, a report must be made.  The person knowing those facts is required to report those facts to a police officer or to DCS.  This Protocol recommends that the report be made by calling both the DCS Hotline (602-530-1832 or 602-530-1831) and the law enforcement agency where the abuse occurred. However, if the report concerns a person who does not have care, custody or control of the minor, the report shall be made to a police officer only.  If unsure where the abuse occurred, the report should be made to the agency where the child lives.

A.     When reporting to DCS:

1.     Document the name of the hotline worker;

2.     Document the DCS office to which the case is being assigned, including the supervisor name and phone number;

3.     Document the name (or copy the identification) of the DCS employee upon        arrival.

4.     Document whether the report alleges an instance of criminal conduct.

B.     When reporting to law enforcement:

1.     Ask if and when the officer/investigator is expected to respond;

2.     Document the name and badge number of officer/investigator upon arrival;

3.     Document the DR # assigned to the case.

A written report is also mandatory per A.R.S. §13-3620. Sample report forms are provided in Appendix II. Hospitals and medical offices may modify or create their own form provided the pertinent information per the statute is provided. The written report must be sent to DCS within 72 hours. A copy of the report should be mailed to:

DCS, P.O. Box 44240
Phoenix, AZ, 85064-4240

The report may also be faxed to the DCS Hotline at:

(602) 530-1832
(602) 530-1833

This may also be accomplished by handing a copy of the written report to the responding DCS Investigator. Law enforcement officers responding would also find a copy of the written report beneficial if it is available upon their arrival. It should be documented who has received a copy of the report. The original report should be kept on file at the hospital/medical office.

## IV. Working in Conjunction With the Child Abuse/Advocacy Centers

It is generally law enforcement who contacts medical personnel from one of the advocacy centers to request a forensic medical evaluation of sexual abuse/physical abuse cases and DCS who contacts medical personnel from one of the advocacy centers for a physical abuse examination. However, either agency may make that referral. Patients throughout Arizona may be seen at the six (6) centers.

As a rule, the medical personnel will not accept a case until there is law enforcement and/or DCS involvement. However, if there is a problem in getting law enforcement or DCS to respond, or if the emergency department/practicing physician believes that a forensic exam should be conducted as soon as possible, then the on-call medical personnel can be contacted for advice (see Appendix 7 for center contact information).

Concerning the issue of the Emergency Medical Treatment and Labor Act (EMTALA), the transfer of a suspected child abuse victim to one of the centers can be done after the medical screening examination (MSE) has been completed. This MSE should generally be an uncomplicated procedure because the majority of child abuse victims do not require emergency medical care. If DCS and/or law enforcement is ready to transport and the MSE is not yet complete then DCS or law enforcement may contact the center's medical personnel for advice. The center's medical personnel may then contact the hospital/medical office physician.

Unless there is concern about significant bleeding, a genital and anal examination should not be done if the case is to be transferred to a center. Also, if the case is to be transferred, total body x-rays (skeletal surveys) should not be done prior to contacting the center's medical personnel. If the patient is going to be admitted to the hospital, it is suggested that one of the center's medical personnel be notified.

Medical records from this incident must be released to law enforcement and/or DCS, per A.R.S. §13-3620(C), upon their written request and signature on a medical release form. The parent/guardian does NOT have to give permission for this release. The release of medical records should also be expeditious, as police and DCS will need the records for their investigations.

V.    The Medical Evaluation

The medical evaluation, which primarily addresses the well-being and safety of the child, may also yield legal evidence. Therefore, it is an important part of the evaluation of the child abuse victim. It is possible however; that the physical exam will not prove or disprove that abuse has occurred, especially when the concern is sexual abuse. The majority of "after 120 hour" sex abuse exams are normal, but this does not preclude the possibility the abuse occurred. The most important part of the evaluation is the history given by the child. It is understood that the medical personnel has an obligation to inform the immediate family regarding the health and welfare of the child. However, it is imperative the medical personnel remain objective in the evaluation and not confront the family or speculate on the nature of the injury.

The comprehensive physical exam must be performed by medical personnel who are competent in the forensic exam of children as well as in providing expert testimony in judicial proceedings. These professionals must be able to document their education, training and experience in the area of child abuse and neglect. In Maricopa County there are five (5) centers staffed by medical personnel with the necessary qualifications to provide child abuse examinations (see Appendix 7), and, when medically appropriate, it is strongly suggested that these exams be conducted at one of the five (5) centers.

VI.   Sexual Abuse

    A.    The forensic interview and videotaping:

        If conducted at a center, the forensic interview should be done prior to physical examination.  Medical personnel conducting the exam should view the interview if possible. The child should not be re-interviewed by medical personnel.

    B.    The Medical evaluation:

        1.    Indications for forensic medical examinations:

            a.    Children who give a history of sexual abuse.

                Best practice suggests that children who give a history of sexual abuse occurring any time in the past where there is the possibility that evidence may be found, should be seen for medical personnel, dependant upon the circumstances. Occasionally some personnel will question the need for a medical evaluation if the child is giving a history of minimal sexual contact. It is known that children may under-report the extent of abusive activities at the initial disclosure. Therefore, to decide that a child does not need an exam because there is only a history of exposure or fondling over

025

clothing, for example, may result in missing physical findings or non-detection of treatable diseases.

b.      Sexual abuse/assault within 120 hours:

Children and adolescents, regardless of gender, who have alleged sexual abuse within the previous 120 hours, may need a forensic medical exam to collect specimens and document injuries.  This decision should be made in consultation with the available medical personnel from the center. In the event a discrepancy occurs between law enforcement and medical personnel regarding obtaining an exam, the on-call deputy county attorney should be consulted.  If an exam is to be completed, the victim should be advised not to bathe, change clothing, etc., prior to the exam.

c.      Genital/rectal pain or bleeding:

Children experiencing these symptoms need to be seen as soon as possible so that the site of the bleeding or cause of the pain can be identified. This will help to differentiate accidental from non-accidental injuries and sexually transmitted infections from non-sexually transmitted ones.

d.      Sexually transmitted diseases (when there is no disclosure of abuse):

(1)      Gonorrhea, Syphilis, Chlamydia, Trichomonas, Genital Herpes and Venereal Warts. Children diagnosed with these infections definitely need to be seen for a forensic exam, even if the diagnosis/treatment has occurred elsewhere. Any lab reports that exist must accompany the child when he/she is seen.

(2)      HIV Positive. Children who have tested positive for HIV should be seen for an exam if the source of the virus is not known. With respect to perinatal transmission, if the HIV positive child is older than 12 months when the positive status is discovered, it should not be assumed that he/she acquired the virus from the HIV positive mother.

  (3) Gardnerella or Monilia. If there is no history or other indication of sexual abuse, children with these infections do not need to be seen for a forensic exam.

  (4) Other Genital Infections. For children who have less common infections, the need for an exam can be determined by a discussion with available medical personnel.  Girls who have a vaginal discharge need to be medically evaluated as soon as possible to determine the cause of the discharge. This may be done by the child's primary care physician or by available medical personnel from the center.

e. Exhibition of some sexualized behavior without reasonable grounds to believe abuse has occurred.

It is appropriate to refer these children for counseling as a first intervention rather than making a report. The exam can then be done if the child gives a history of molest or if the therapist, after working with the child for awhile, feels that sexual abuse most likely has occurred even though the child has still given no history.

f. Children who are preverbal, non-verbal, or developmentally delayed:

The forensic exam is an essential ingredient of the investigation after a report has been made.

g. Adolescents:

  (1) In regard to sexual abuse/assault occurring more than 120 hours prior to the report, children may have evidence of healing trauma and thus a forensic exam may be appropriate after consulting with appropriate medical personnel.

  (2) Adolescents disclosing "consensual sex:"

    (a) If there is a question as to whether the sexual contact was "consensual" or "non-consensual", a forensic medical exam should be done.

    (b) If the victim is under 15 years old, a forensic exam should be done.

(c)     If the youth/victim is age 15, 16, or 17, and the partner/alleged perpetrator is less than 19 years of age or attending High School and is no more than 24 months older than the youth/ victim, the on-call deputy county attorney may be contacted for advice. In other cases, a forensic medical exam should be done if the circumstances call for it.

h.     Pregnant teens:

Medical personnel must consider the possibility of sexual abuse in pregnant teen cases and must comply with the mandatory reporting law (see Appendix 3). If the pregnant teen is under 15 years of age, then the medical personnel must make a child abuse report immediately. An abortion should not be done prior to the law enforcement investigation. If an abortion is done, fetal tissue can be used to identify the father of the baby. A forensic exam is not required, unless the circumstances call for it. If the teen is 15 years or older, the situation may still be a reportable offense.

i.     Custody disputes:

One exam is appropriate subsequent to a report being made. However, personnel who deal with abuse evaluations should not be influenced by those parents who want frequent medical exams after visitations, unless, of course, there is an additional history of reasonable concern about sexual abuse.

j.     Molest allegations/concerns during regular medical exams by community/emergency department physicians:

After consideration of history, behavioral changes and examination findings, the medical personnel must make a child abuse report, if there is reasonable suspicion that sexual abuse has occurred. DCS/law enforcement can then request a forensic exam.

2.     Procedure for forensic medical examination:

a.     These aspects of the exam are pertinent to all cases, regardless of the time interval from the incident.

(1)     A complete medical history (including immunizations) should be obtained from the caretaker and the child. If

028

the caretaker is not present, then an effort to contact them by phone should be made only with law enforcement and/or DCS approval. This is to ensure that the investigation is not compromised. Medical personnel should, however, convey to law enforcement/DCS any urgent need for the medical history.

(2)     The child should be given a choice of whether he/she would like a supportive person (of their own choosing) in the exam room. If this person is disruptive during the exam, medical personnel may ask him/her to leave.

(3)     After the regular physical examination, carefully examine the genital and anal areas to detect any injury. This must be done with good illumination, and can involve the use of magnification. Photographic and/or video documentation of the genital/anal areas is recommended, but is not required. Medical personnel's primary obligation (keeping in mind the best interest of the child) is to do a thorough and accurate exam of the genital/anal areas; photographs are a secondary consideration.

(4)     Carefully examine the entire body to detect any signs of trauma, neglect, or abnormal medical conditions. Photographic and/or video documentation of any positive findings is recommended. If the law enforcement photographer is not available to do this, then a medical unit should have an appropriate camera.

(5)     Consider testing for pregnancy and sexually (and non-sexually) transmitted diseases, such as gonorrhea, syphilis, Chlamydia, herpes, trichomonas, staph, strep, candida and HIV. These lab tests may be available on site. However, patients thirteen (13) years and older should be offered referral to the Health Department for HIV testing, and thus will have the choice of confidential versus anonymous testing.

(6)     Prepare a forensic medical report. This report should be completed in a timely manner unless a particular lab test result or treatment result (e.g., the opening of a labial adhesion) must first be available.

b. When the exam is done within 120 hours of the alleged sexual abuse, in addition to the above medical exam procedure, consideration must be given to whether or not a sexual assault examination needs to be done. The sexual assault examination includes (but is not limited to):

(1) Paper bagging individual items of clothing separately;

(2) Collecting specimens by means of swabs to detect perpetrator body fluids (saliva, semen, etc.);

(3) Collecting other debris (trace evidence) which may be present;

(4) Collecting reference specimens from the victim (saliva, blood, etc.);

(5) Proper drying technique and handling of specimens to prevent deterioration, contamination;

(6) Proper packaging and storing of all specimens; and

(7) Maintaining the chain of custody.

VII. Physical Abuse and Neglect

A. The forensic interview and videotaping:

If conducted at a child abuse assessment/advocacy center, the forensic interview should be done prior to physical examination. Medical personnel conducting the exam should view the interview if possible. The child should not be re-interviewed by medical personnel.

B. Indications for forensic medical examinations:

Children suspected by DCS, law enforcement or medical personnel of having been physically abused or neglected should have an exam as soon as possible. Children with fairly minor visible injuries may have serious internal injuries (see Appendix M for additional guidelines).

C. Procedure for forensic examinations:

This exam should include:

1. A complete past medical history and the history of the suspected abuse, which should be obtained from personnel who interviewed the child.

2. Inspection of the genital/anal areas with good lighting because children who experience one type of abuse are at risk for all forms of abuse. If the history or exam reveals that sexual abuse is a concern, then the sexual abuse procedure should also be followed.

3. Appropriate lab studies to document the medical conditions caused by injury and to exclude such medical conditions as bleeding disorders.

4. Imaging studies may be indicated to discover and document injuries that are not externally apparent by physical exam. These studies may include radiographs, ultrasound scans, computerized tomography scanning, nuclear scanning, and magnetic resonance imaging. The studies needed in any given case are variable and must be determined on a case-by-case basis. However, x-rays of the entire skeleton are indicated in most children less than two (2) years of age and in selected children over two (2) years old if physical abuse is suspected. It is recommended that these studies be done at hospitals that have a pediatric radiologist.

5. Color photographs should be done to document visible injuries as well as locations where injuries are not present. A measuring device, color scale and identification label should appear in the photograph. If the law enforcement photographer is not available to do this, the medical unit should have an appropriate camera.

6. A forensic medical record must be prepared. This report should be completed on the day of the exam unless an opinion cannot be given until a particular lab or radiology result is available.

7. On occasion, a review of medical records of prior medical care may play an important role.