# EXHIBIT 4



Deposition of **Thomas W. Young, M.D.**

Date:  November 4, 2022

Case:  Sankey/Duvall vs. Phoenix Children's Hospital

BARTELT | NIX REPORTING
602.254.4111
Office@BarteltReporting.com

```
 1              IN THE UNITED STATES DISTRICT COURT
                     DISTRICT OF ARIZONA
 2
       Honor Duvall, an individual;
 3     Donald Sankey, Junior, an
       individual; S.Z.S., a minor,
 4     through his parents and
       guardians Honor Duvall and
 5     Donald Sankey,

 6                    Plaintiffs,        Case No.
       vs.                              21-CV-00167-PHX-ROS
 7
       Arizona Department of Child
 8     Safety, a governmental entity;
       State of Arizona, a
 9     governmental entity; Brenda
       Gualajara, individually and as
10     an employee with the State of
       Arizona Department of Child
11     Safety and John Doe Gualajara,
       her spouse, Fernando Araizo,
12     individually and as an employee
       with the State of Arizona
13     Department of Child Safety and
       Jane Doe Araizo, his spouse;
14     Alyssa Lucero, individually and
       as an employee with the State
15     of Arizona Department of Child
       Safety and John Doe Lucero, her
16     spouse; Jeffrey Duncan,
       individually and as an employee
17     with the State of Arizona
       Department of Child Safety and
18     Jane Doe Duncan, his spouse;
       Chantel Madson, individually
19     and as an employee with the
       State of Arizona Department of
20     Child Safety and John Doe
       Madson, her spouse; Phoenix
21     Children's Hospital, Inc., and
       Arizona corporation,
22     individually and as a services
       provider for the State of
23     Arizona Department of Child
       Safety; Brendan Cassidy,
24     individually and as a services
       provider for the State of
25     Arizona Department of Child
```

1    Brenda Gualajara, Jeff Duncan, Greg McKay and the

2    other individual State defendants.

3              MS. PATANE:  This is Cynthia Patane.

4    I represent Dr. Cassidy.

5              MS. ZANGERLE:  Kari Zangerle on behalf

6    of Phoenix Children's Hospital and the Phoenix

7    Children's Hospital defendants.

8              Counsel, did you want to note your

9    presence?

10             MR. CONNELLY:  For the record, I'll

11   note that along with me today is Sandra Daussin, also

12   representing the plaintiffs.

13             And can somebody click got it on that

14   so we can get that off the screen?

15             MR. HALL:  And just for the record,

16   also appearing -- not appearing in this case but here

17   today from Phoenix Children's Hospital is Cary Hall.

18   I'm chief risk and litigation hospital for Phoenix

19   Children's, and my risk manager, Alayna Rakes.

20             THOMAS YOUNG, M.D.,

21   being first duly sworn, testified under oath as

22   follows:

23                   EXAMINATION

24   BY MS. ZANGERLE:

25             Q.    Can you state your name for the

1  an expert witness; is that accurate?

2       A.     Yes.

3       Q.     And later today we will mark a list of

4  your cases that was a part of the file materials that

5  you brought with you, and it looks like you have

6  testified as of October of this year in 463 cases

7  throughout your career; is that correct?

8       A.     Since I started keeping track in 1994.

9       Q.     Very good. And so you're familiar

10 with testifying in deposition and in the courtroom?

11      A.     Yes.

12      Q.     You understand that today your

13 testimony is just as if you were testifying in front

14 of a judge and a jury?

15      A.     Yes.

16      Q.     And you understand that when you are

17 in a courtroom and are being cross-examined, you

18 are asked to answer the question that is posed of

19 you?

20      A.     Yes.

21      Q.     And so narrative answers to specific

22 questions, you understand in the courtroom may be

23 limited by the judge?

24          MR. CONNELLY: Form and foundation.

25      A.     I understand that.

1      A.     The last time I was a medical examiner

2  was in 2006.

3  BY MS. ZANGERLE:

4      Q.     Okay.

5      A.     It's been a few years.

6      Q.     All right.  But you told me that you

7  were not a medical -- that you were not a mandatory

8  reporter as working as a forensic pathologist in the

9  State of Missouri.  Did you believe that you were a

10  mandatory reporter for child abuse and neglect when

11  you functioned as the Jackson County Medical Examiner

12  from July of '95 to December of 2006?

13      A.     Okay.  I'm not really clear on what

14  you're doing here on what you're asking.

15      Q.     If you thought that a child died as a

16  result of child abuse or neglect when you were

17  working in the Jackson County Medical Examiner's

18  office from July of 1995 to December of 2006, did you

19  view yourself as a mandatory reporter of that abuse

20  and neglect?

21      A.     How I viewed myself as is the medical

22  examiner who filled out death certificates, who

23  participated in child fatality review committees that

24  were set up there in the county, who was involved in

25  issues having to do with fatal child abuse.

 1    hearing in federal or state court in which you were

 2    asked to establish that an opinion that you were

 3    rendering was accepted -- generally accepted by the

 4    relevant scientific community?

 5            A.    Do you mean like a Daubert challenge?

 6            Q.    Yes.

 7            A.    I've been through many Daubert

 8    challenges.

 9            Q.    Have you ever had your opinions

10    excluded under a Daubert challenge?

11            A.    One time.

12            Q.    What court was that?

13            A.    That was nearby here, Topeka, Kansas.

14    Shawnee County.

15            Q.    What was the opinion that you were

16    espousing in that case that was excluding?

17            A.    I don't know.  She didn't allow me to

18    testify.  This was a female judge.  There was also

19    another case in Geary County, which is Junction City,

20    Kansas, where the judge didn't allow me to testify

21    either.

22            Q.    Why?

23            A.    I don't know.  But suffice it to say

24    that as far as Daubert hearings and this sort of

25    thing, I've done it many times, and the vast majority

1    of the time, I'm allowed to testify.

2            Q.      When --

3            A.      Those are the two exceptions where I

4    was not allowed to testify.

5            Q.      So when have you ever been allowed to

6    testify about demineralization or catch-up syndrome

7    in court so far?

8            A.      Okay.  I don't -- I'm not a

9    radiologist and I'm not here to make up diagnostic

10   terms that are not used among radiologists.  I don't

11   do that.  I do things in order to be able to explain

12   issues and situations that, having reviewed lots of

13   charts, you can see a progression here, and there

14   have been several other radiologists, okay, who say

15   that a lot of these changes here -- you know, they

16   use the term metabolic bone disease.  I don't like

17   the term because I don't really think of it as

18   disease, per se, anymore that I think that a child

19   that has to catch up in their learning has any kind

20   of disease.

21            It's just a situation that during a

22   process of development, there has to be things --

23   workaround that the developing infant needs to go

24   around in order to catch up.

25            MS. ZANGERLE:  I'm going to mark this

1   well, so.

2       A.      Glad to hear it.

3       Q.      In the -- so would you ever -- using

4   your inferential test, would it ever be possible for

5   a healthcare provider to report suspected

6   nonaccidental trauma unless there was a witness?

7       A.      Okay.  I mention this in my report,

8   okay, since you brought up, and I'll quote,

9   Physicians have a responsibility to make sure

10  vulnerable infants are safe, so quote, Every attempt

11  to ensure the safety of this child, close quotes, is

12  appropriate.  There is also nothing wrong with being

13  highly concerned or even suspicious as long as it is

14  recognized that an expression of suspicion is

15  uncertain.  A suspicion is a guess that may, in the

16  end, be unfounded.

17      Q.      Okay.  So earlier today when we were

18  going over Exhibit 23, which is kind of all the

19  mandatory reporting statutes across the United

20  States, you understand that as a mandatory reporter,

21  you are reporting the possibility of abuse as a

22  medical provider, correct?

23              MR. CONNELLY:  Form.  Foundation.

24      A.      Anybody who is reporting something

25  like that is reporting a suspicion.



RE:  Sankey/Duvall vs. Phoenix Children's Hospital
No:  21-CV-00167-PHX-ROS
DEPOSITION OF:  Thomas W. Young, M.D.

**PAGE**          **LINE**                **CORRECTION**          **REASON**
No corrections

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

11/29/2022
_____                    _____
**Date**                                                **Signature**

1

2

3

4

5

6                                    THOMAS W. YOUNG, M.D.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3          I, Kelsey Robbins Schmalz, a Certified Court

 4    Reporter, do hereby certify:

 5          That prior to being examined the witness was

 6    by me duly sworn;

 7          That said deposition was taken down by me in

 8    shorthand at the time and place hereinbefore stated

 9    and was thereafter reduced to writing under my

10    direction;

11          That I am not a relative or employee or

12    attorney or counsel of any of the parties, or a

13    relative or employee of such attorney or counsel, or

14    financially interested in the action.

15          The original transcript is in the custody of:

16          ms. Kari B. Zangerle
            Gust Rosenfeld, PLC
17          One East Washington Street
            Suite 1600
18          Phoenix, Arizona  85004-2553

19          WITNESS my hand and seal this 4th day of

20    November, 2022.

21          _____

22                    Kelsey Robbins Schmalz
                      CSR No. 1571, CCR No. 1148, RPR

23    Honor Duvall, an individual; Donald Sankey, Junior,
      an individual; S.Z.S., a minor, through his parents
24    and guardians Honor Duvall and Donald Sankey, vs.
      Arizona Department of Child Safety, a governmental
25    entity, et al.
```