# EXHIBIT 5

Todd Allen Lefkowitz, MD, FAAO on November 14, 2022

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Honor Duvall, an individual; Donald)
Sankey, Junior, an individual;      )
S.Z.S., a minor, through his        )
parents and guardians Honor         )
Duvall and Donald Sankey,           )
                                    )
                Plaintiffs,         )Case No.:
vs.                                 )21-CV-00167-PHX-ROS
                                    )
Arizona Department of Child Safety,)
a governmental entity; State of     )
Arizona, a governmental entity;     )
Brenda Gualajara, individually and )
as an employee with the State of    )
Arizona Department of Child Safety )
and John Doe Gualajara, her spouse;)
Fernando Araizo, individually and   )
as an employee with the State of    )
Arizona Department of Child Safety )
and Jane Doe Araizo, his spouse;    )
Alyssa Lucero, individually and as )
an employee with the State of       )
Arizona Department of Child Safety )
and John Doe Lucero, her spouse;    )
Jeffrey Duncan, individually and as)
an employee with the State of       )
Arizona Department of Child Safety )
and Jane Doe Duncan, his spouse;    )
et al.,                             )
                Defendants.         )
_____)

DEPOSITION OF TODD ALLEN LEFKOWITZ, MD, FAAO

Phoenix, Arizona
November 14, 2022
10:11 a.m.

(COPY)

REPORTED BY:
HD REPORTING, LLC
HALEY DAWN WESTRA, RPR, CRR
Certified Court Reporter
AZ-CR No. 50762

Page 38

1  care; is that correct?
2      A.  Yes.  Yes.
3      Q.  Why was that important for you to review in
4  this case?
5          MR. CONNELLY:  Form and foundation.
6          THE WITNESS:  The juvenile court records?
7  BY MS. PATANE:
8      Q.  Yes.
9      A.  It wasn't that important in forming my
10  opinion.
11         I formed my opinions only on a medical basis
12  and not a legal basis; so, of course, ruling would have
13  no relevance to my writing of the report.
14         I looked at it just for completeness' sake, as
15  I always try to do.
16     Q.  Do you keep records in your file of
17  transmittals to you?
18         For example, if materials are sent to you by
19  the attorney via email, do you keep a record of the
20  email?
21     A.  I do.
22     Q.  And do you typically receive the documents
23  that you review by email, or do you like to have them
24  sent to you in regular U.S. mail?
25     A.  Usually by email would be my preference.

Page 39

1      Q.  And so would there be a way for you to --
2  well, strike that.
3          You did not bring the transmittal emails with
4  you today; correct?
5      A.  No.  No, I didn't bring anything but my notes.
6          (Coughing.)
7          MS. PATANE:  Oh, that was Kari.
8  BY MS. PATANE:
9      Q.  And is there a way for you to go back to your
10  office and get the transmittal emails and look to see
11  when the dates were that documents were provided to you
12  that you reviewed in preparing your initial opinions in
13  this case?
14     A.  Yeah, I could do that.
15     Q.  You said that you brought notes with you
16  today; is that correct?
17     A.  Yeah, just the one page of handwritten notes.
18     Q.  Is that what you have in front of you on that
19  yellow sheet?
20     A.  Yes, I do.
21     Q.  Is that something that I could review on a
22  break?
23     A.  Sure.
24     Q.  Okay.  On a break, I'll review, and then we
25  can copy and make it an exhibit to your deposition.

Page 40

1      A.  Okay.
2      Q.  Did you receive any other documents from the
3  dependency proceedings aside from the juvenile court
4  ruling?
5      A.  I don't think so.
6      Q.  Since preparing this report, have you reviewed
7  any other documents from the juvenile court
8  proceedings?
9      A.  No, I haven't.
10     Q.  And so, just so that I'm clear, you did not
11  review the dependency hearing testimony of a
12  Dr. Gabaeff?
13     A.  I don't believe I did.
14     Q.  Do you know Dr. Gabaeff?
15     A.  No, I don't.
16     Q.  And I'm not sure if I'm pronouncing his name
17  correctly, but it's spelled G-A-B-A-E-F-F.
18     A.  Yeah.  I saw it in the records, but I don't
19  know Dr. Gabaeff.
20     Q.  Have you ever read any literature that is --
21  that has been authored by Dr. Gabaeff?
22     A.  I don't believe so.
23     Q.  I take it, then, that his testimony and any
24  literature that he may have authored did not form the
25  basis of any of your opinions in this case?

Page 41

1      A.  Correct.
2      Q.  Did you review any testimony from the
3  dependency proceeding that was given by Dr. Cassidy?
4      A.  I can't recall.
5      Q.  Did you review any testimony given in the
6  dependency proceeding by Honor Duvall, the mother?
7      A.  I don't believe so.
8      Q.  And do you know if you reviewed any testimony
9  from the father, Donald Sankey?
10     A.  No.  I don't recall.
11     Q.  Have you reviewed any deposition transcripts
12  in this case?
13     A.  Yes.
14     Q.  Which deposition transcripts have you
15  reviewed?
16     A.  Oh, the deposition of Dr. Cassidy.  I think of
17  Dr. Fecarotta.  I believe that was it.
18     Q.  Did you review the deposition transcript of
19  Honor Duvall, the mother?
20     A.  I might have.
21     Q.  And do you know if you reviewed the deposition
22  transcript of Donald Sankey --
23     A.  I might have.
24     Q.  -- the father?
25         We were provided yesterday with a copy of your