# EXHIBIT 2

Todd Allen Lefkowitz, MD, FAAO on November 14, 2022

```
                UNITED STATES DISTRICT COURT

                    DISTRICT OF ARIZONA


Honor Duvall, an individual; Donald)
Sankey, Junior, an individual;    )
S.Z.S., a minor, through his      )
parents and guardians Honor       )
Duvall and Donald Sankey,         )
                                  )
             Plaintiffs,          )Case No.:
vs.                               )21-CV-00167-PHX-ROS
                                  )
Arizona Department of Child Safety,)
a governmental entity; State of   )
Arizona, a governmental entity;   )
Brenda Gualajara, individually and )
as an employee with the State of  )
Arizona Department of Child Safety )
and John Doe Gualajara, her spouse;)
Fernando Araizo, individually and )
as an employee with the State of  )
Arizona Department of Child Safety )
and Jane Doe Araizo, his spouse;  )
Alyssa Lucero, individually and as )
an employee with the State of     )
Arizona Department of Child Safety )
and John Doe Lucero, her spouse;  )
Jeffrey Duncan, individually and as)
an employee with the State of     )
Arizona Department of Child Safety )
and Jane Doe Duncan, his spouse;  )
et al.,                           )
             Defendants.          )
_____)

     DEPOSITION OF TODD ALLEN LEFKOWITZ, MD, FAAO

                Phoenix, Arizona
                November 14, 2022
                  10:11 a.m.

(COPY)
                           REPORTED BY:
                           HD REPORTING, LLC
                           HALEY DAWN WESTRA, RPR, CRR
                           Certified Court Reporter
                           AZ-CR No. 50762
```

```
 1   BY MS. PATANE:
 2       Q.   Did you say "waters protocols"?
 3       A.   No.  No.
 4       Q.   I'm sorry.
 5            MR. CONNELLY:  Orders.  He said "orders."
 6            MS. PATANE:  Oh, orders.
 7            THE WITNESS:  Orders or protocol.
 8   BY MS. PATANE:
 9       Q.   Okay.  In your practice and your experience
10   over the years, have you ever performed a slit lamp
11   exam on an infant?
12       A.   No.
13       Q.   Is that possible?
14       A.   I don't believe it's possible.  You can't get
15   them to sit still.
16            Now, there are portable slip lamps that are
17   available; but even so, to get a kid to sit still,
18   unless he or she were anesthetized, is fairly impos- --
19   mainly -- is rare -- is impossible.
20       Q.   Did you see in your review of the records from
21   Dr. Heller's visit with this baby that he documented
22   performing a slit lamp exam?
23            MR. CONNELLY:  Form.  Foundation.
24            THE WITNESS:  Yeah, I saw that, and I don't
25   believe it.
```

1                And I know Dr. Heller personally.  And it
2     wouldn't surprise me that he just ignored -- that he
3     used the template.  And basically it's the template
4     that applies to adult exams.
5                Now, if it were me, and I was using the -- the
6     sheet for the progress note, I would have crossed out
7     things like "slit lamp."
8                I just would have mentioned an assessment of
9     the vision, what the eye muscle situation was, and then
10    the dilated fundus exam.
11               But Dr. Heller is kind of old, and I -- I
12    think he's way beyond the time he should be in his
13    practice, so I would ignore any information from his
14    practice.
15               And I think that most of my colleagues in the
16    Valley would say the same thing.
17    BY MS. PATANE:
18         Q.   And is that the case, then, for anything from
19    his practice from 2019?
20         A.   Mm-hmm.
21               MR. CONNELLY:  Form.  Foundation.
22    BY MS. PATANE:
23         Q.   Is that a "yes"?
24         A.   Yes.
25         Q.   Just to confirm, you've never personally