# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Honor Duvall, et al.,        )
                             )
       Plaintiffs,           )
                             )
v.                           )   No. 21-CV-00167-ROS
                             )
Arizona Department of Child  )
Safety, et al.,              )
                             )
       Defendants.           )
                             )
_____)

**VIDEOCONFERENCE DEPOSITION OF KATHLEEN OUTCALT, D.O.**

San Diego, California
November 9, 2022
1:06 p.m.

CERTIFIED COPY

Reported by:                          CARRIE REPORTING, LLC
CARRIE A. CARIATI                     Certified Reporters
Registered Professional Reporter      2415 East Camelback Road
Certified Realtime Reporter           Suite 700
Certified LiveNote Reporter           Phoenix, AZ 85016
Arizona CR No. 50355                  (480)429-7573
carrie@carriereporting.com

I N D E X

| WITNESS: | EXAMINATION | PAGE |
|---|---|---|
| KATHLEEN OUTCALT, D.O. | | |
| | BY MR. CONNELLY | 5 |
| | BY MR. STULTZ | 150 |

E X H I B I T S

| DEPOSITION EXHIBITS | DESCRIPTION | PAGE |
|---|---|---|
| 60 | Phoenix Children's Hospital, Child Protection Team, Child Abuse and Neglect policy, Bates Nos. Policies 0001 cycn through 0006 cycn | 48 |
| 61 | Phoenix Children's Hospital, Social Work, Referrals and Services, Bates Nos. Policies 0007 cycn through 0008 cycn | 49 |
| 62 | Phoenix Children's Hospital, ED/Urgent Care Triage Note, Bates Nos. PCH 1272 cycn through 1273 cycn, CONFIDENTIAL | 53 |
| 63 | Phoenix Children's Hospital, ED/UC History and Physical, Bates Nos. PCH1258 cycn through 1265 cycn, CONFIDENTIAL | 55 |
| 64 | Phoenix Children's Hospital Patient Orders, Bates Nos. PCH 1297 cycn through 1318 cycn | 125 |
| 65 | Preliminary Radiology Report, Phoenix Children's Hospital, Bates No. PCH 1370 cycn | 130 |
| 66 | Phoenix Children's Hospital Child Protection Note SN, Bates No. AZDCS000838 | 133 |
| 67 | Photograph | 147 |

```
 1  provided history.
 2       Q.   When it says, "Chief complaint, hematemesis" --
 3  did I say that correctly?
 4       A.   Hematemesis.
 5       Q.   "Hematemesis," the mother didn't use that word,
 6  right?  That's your --
 7       A.   I don't recall, but that is a medical jargon.
 8  Likely, I put that word in there.
 9       Q.   And is it fair to say that based on the
10  information that you obtained from the patient, in this
11  case, from the mother, about the history of present
12  illness, it is from that information that you decide what
13  to label as the chief complaint?
14       A.   It is from the discussion with the patient's
15  mother as to why they came into the emergency room is
16  designated as the chief complaint.
17       Q.   All right.  And we see there are a number of
18  different things that the mother told you about Swayde as
19  to why she was there, and among all those things, then you
20  determined that the chief complaint should be labeled as
21  hematemesis, right?
22            MR. STULTZ:  Form, foundation.
23            THE WITNESS:  I believe so, yes.
24  BY MR. CONNELLY:
25       Q.   And then is it true that based on the chief
```

```
 1  complaint, there is a certain protocol that is then
 2  followed determining what step to take next based on the
 3  chief complaint?
 4              MS. PATANE:  Form and foundation.
 5              MR. STULTZ:  Join.
 6              MS. STATON:  Join.
 7              THE WITNESS:  There is no specific
 8  protocol, per se, for hematemesis itself.
 9  BY MR. CONNELLY:
10      Q.  And hematemesis, when you look up the word, that
11  means the vomiting of blood, right?
12      A.  Correct.
13      Q.  Did the mother ever say to you that Swayde was
14  vomiting blood?
15      A.  I don't recall my conversation with the mother,
16  but based on my documentation, she noted that he had
17  bright red blood in his spit-up and brown mucous-tinged
18  spit-up as well.
19      Q.  Right.  She said he was spitting up and it had
20  coloration; she never said that he was vomiting, though,
21  right?
22              MS. PATANE:  Form and foundation.
23              MR. STULTZ:  Join.
24              MS. STATON:  Join.
25              THE WITNESS:  I don't think there is a
```

1  medical term for spitting up blood-tinged spit-up.
2  BY MR. CONNELLY:
3      Q.   Did you ever observe the child vomiting while he
4  was in the emergency department?
5      A.   I don't recall.
6      Q.   If you had observed the child vomiting while he
7  was in the emergency department, that's something you
8  would note in your records?
9      A.   Yeah.
10     Q.   And what section of your records would that be
11 noted in?
12     A.   Likely in the physical exam.
13     Q.   Here's a physical exam section.  Do you note
14 anywhere in here that you observed the child vomit blood?
15     A.   No.  And I just said that I didn't observe him
16 vomiting or spitting up during the exam.
17     Q.   Okay.  But that's not what you said, but I
18 appreciate the clarification.  So you did not observe him
19 spitting up or vomiting blood, right?  I just want to be
20 clear.
21     A.   Correct.
22     Q.   Okay.  Thank you.
23          Now, what you wrote in the clinical
24 summary -- this is what you wrote at some time after you
25 had your discussion with the mother about why they were

```
 1   conjunctival hemorrhage"?
 2       A.    Um-hum.
 3       Q.    Is that a "yes"?
 4       A.    Yes.  Yes.
 5       Q.    The hematemesis you did not observe; that is
 6   just your word for mother is telling you that the child
 7   had discolored spit-up, right?
 8             MR. STULTZ:  Form, foundation.
 9             MS. PATANE:  Join.
10             THE WITNESS:  Correct.  The history of
11   present of illness is the interview or discussion I have
12   with either the patient or the guardian of the patient.
13   BY MR. CONNELLY:
14       Q.    Right.  I understand that.
15       A.    It is not what I observed in the patient.
16       Q.    All right.  And so when you say that, "He
17   presents in the emergency department with acute onset
18   bruising, hematemesis, and conjunctival hemorrhage," that
19   is your medical speak for when the mother says that he was
20   spitting up blood and she saw some blood in the whites of
21   his eyes when he was coughing hard, right?
22             MS. PATANE:  Form and foundation.
23             MR. STULTZ:  Join.
24             MS. STATON:  Join.
25             THE WITNESS:  Per documentation, the
```

1  history of present illness documents that the mother
2  endorsed to me at the time he came in for bruising, blood
3  in the spit-up, and blood in the whites of the eyes.
4  BY MR. CONNELLY:
5      Q.   So, again, this is your summary in medical terms
6  of what the mother is -- what you recounted later in this
7  history of present illness section, right?
8      A.   Correct.
9      Q.   Do you have a specific recollection of the
10 mother saying that there was bright red blood in the
11 spit-up?
12     A.   I don't have a specific recollection -- sorry,
13 recollection, but it was customary of practice when
14 eliciting a history of present illness that if there is
15 any question regarding the color of blood, to ask
16 specifically about the color of the blood.
17     Q.   And then you say in this section, "And then
18 again another episode of emesis that was pink."
19          "Emesis" means vomit, right?
20     A.   Yes.
21     Q.   And you don't have any recollection of mother
22 actually saying "vomit"; she was saying spit-up, right?
23               MR. STULTZ:  Form, foundation.
24               THE WITNESS:  I don't recall.
25

1                    CERTIFICATE

2         I HEREBY CERTIFY that the foregoing deposition
   was taken by me pursuant to notice; that I was then and
3  there a Certified Court Reporter for the State of Arizona,
   and by virtue thereof authorized to administer an oath;
4  that the witness before testifying was duly sworn by me to
   testify to the whole truth and nothing but the truth;
5  pursuant to request, notification was provided that the
   deposition is available for review and signature; that the
6  questions propounded by counsel and the answers of the
   witness thereto were taken down by me in shorthand and
7  thereafter transcribed through computer-aided
   transcription under my direction, and that the foregoing
8  typewritten pages contain a full, true, and accurate
   transcript of all proceedings had upon the taking of said
9  deposition, all done to the best of my skill and ability.
          I FURTHER CERTIFY that I am in no way related to
10 nor employed by any of the parties hereto, nor am I in any
   way interested in the outcome hereof.
11        I FURTHER CERTIFY that I have complied with the
   ethical obligations set forth in ACJA Sections
12 (J)(1)(g)(1) and (2).
          DATED at Phoenix, Arizona, this 27th day of
13 November, 2022.

14                              _____
                                CARRIE A. CARIATI
15                              Registered Professional Reporter
                                Certified Realtime Reporter
16                              Certified LiveNote Reporter
                                Certificate No. 50355
17

18        I CERTIFY that this Registered Reporting Firm
   has complied with the ethical obligations set forth in
19 ACJA Sections (J)(1)(g)(1) and (2).

20
          DATED at Phoenix, Arizona, this 27th day of
21 November, 2022.

22

23                              _____
                                Registered Reporting Firm R1064
24                              CARRIE A. CARIATI, Owner

25

*CARRIE REPORTING, LLC - Certified Reporters*
**(480) 429-7573**