Cynthia Y. Patane (SBN: 018439)
Rachel L. Werner (SBN: 033361)
**GORDON REES SCULLY MANSUKHANI, LLP**
Two North Central Avenue Suite 2200
Phoenix, AZ 85004
Telephone: (602) 794-3647
Facsimile: (602) 265-4716
cpatane@grsm.com
rwerner@grsm.com

*Attorneys for Defendants*
*Brendan Cassidy and Jane Doe Cassidy*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Honor Duvall, an individual; Donald Sankey, Junior, an individual; S.Z.S., a minor, through his parents and guardians Honor Duvall and Donald Sankey,<br><br>Plaintiffs,<br><br>v.<br><br>Arizona Department Of Child Safety, a governmental entity; State of Arizona, a governmental entity; Brenda Gualajara, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Gualajara, her spouse, Fernando Araizo, individually and as an employee with the State of Arizona Department of Child Safety and Jane Doe Araizo, his spouse; Alyssa Lucero, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Lucero, her spouse; Jeffrey Duncan, individually and as an employee with the State of Arizona Department of Child Safety and Jane Doe Duncan, his spouse; Chantel Madson, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Madson, her spouse; Phoenix Children's Hospital, INC., an Arizona corporation, individually and as a services provider for the State of Arizona Department of Child Safety; Brendan Cassidy, individually and as a services provider for the State of Arizona Department of Child Safety and Jane | **CASE NO. 21-CV-00167-PHX-ROS**<br><br>**DR. BRENDAN CASSIDY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON: (1) CONSPIRACY UNDER 42 U.S.C. § 1983 (CLAIM 6); (2) NEGLIGENCE (CLAIM 11); (3) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (CLAIM 15); AND, (4) PUNITIVE DAMAGES** |

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | Doe Cassidy, his spouse; William S. Wood, individually and as a services provider for the State of Arizona Department of Child Safety and Jane Doe Wood, his spouse; Kathryn Coffman, individually and as a service provider for the State of Arizona Department of Child Safety and John Doe Coffman, her spouse; Hailey Dietzman, individually and as a services provider for the State of Arizona Department of Child Safety and John Doe Dietzman, her spouse; Zachary Dion, individually and as a services provider for the State of Arizona Department of Child Safety and Jane Doe Dion, his spouse; Carey Lewis, individually and as a services provider for the State of Arizona Department of Child Safety and John Doe Lewis, her spouse; Gregory Mckay, as former Director, Arizona Department of Child Safety; Michael Faust, as Director, Arizona Department of Child Safety; John and Jane Does 1-5; and Black Entities 1-5,<br><br>         Defendants. |

Defendant Dr. Brendan Cassidy replies in support of his Motion for Summary Judgment on Plaintiffs' claims of conspiracy under 42 U.S.C. § 1983 (claim 6), negligence (claim 11), intentional infliction of emotional distress (claim 15), and punitive damages.

Plaintiffs have conceded that their expert, Dr. Todd Lefkowitz, is not qualified pursuant to A.R.S. §12-2604. Plaintiffs have taken the position that no expert is required to testify on whether Dr. Cassidy's care was reasonable. As a matter of law, expert medical testimony is required to establish the standard of care. Without an expert, Plaintiffs cannot avoid summary judgment on their claim for medical negligence.

Plaintiffs' theory that Dr. Cassidy played a pivotal role with the State in initiating and litigating the dependency action against Plaintiffs is based entirely on speculation. Plaintiffs failed to come forward with evidence to create a genuine issue of material fact on their claims for intentional infliction of emotional distress and punitive damages. As a result, they cannot avoid summary judgment on these claims.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. CONSPIRACY UNDER 42 U.S.C. § 1983 (CLAIM 6)

Plaintiffs have failed to come forward with evidence to create a genuine issue of material fact about whether Dr. Cassidy was a state actor in order to support their § 1983 claim. While Plaintiffs argue that Dr. Cassidy complied with a request by PCH to "find" retinal hemorrhages in order to support a case for abuse and that Dr. Cassidy played a pivotal role with the State in initiating and litigating the dependency action, Plaintiffs have failed to identify any evidence to support these arguments. In reality, Dr. Cassidy usually does not identify findings that are consistent with abuse when he performs evaluations on children who are suspected of having been abused. It is undisputed that 75% of the children Dr. Cassidy saw at PCH during the relevant time for suspicion of AHT <u>did not have</u> ophthalmological findings consistent with AHT, including retinal hemorrhages. (Exhibit 14 – Dr. Cassidy's Answers to Plaintiffs' Non-Uniform Interrogatories, dated April 27, 2022).

Plaintiffs have failed to come forward with any evidence to dispute the testimony of DCS Director McKay that Dr. Cassidy did not collaborate or consult with DCS in the consultation or exam findings of SZS, that Dr. Cassidy was not involved in the decision by DCS to take custody of S.Z.S in February 2019, or the decision to file the dependency petition in March 2019. (Exhibit 17 – Deposition testimony of G. McKay, p.208:20-24 and p.210:18-21.) It is undisputed that Dr. Cassidy was not acting on behalf of DCS. He was not a DCS service provider or case worker, he was not trained by DCS nor was he expected to comply with DCS policies, procedures, or rules during his evaluation of S.Z.S. It is also undisputed that Dr. Cassidy was not an employee of PCH and had no contract with PCH.

The allegation that Dr. Cassidy worked with the State to litigate the dependency action is unfounded. Furthermore, Dr. Cassidy's only role at the dependency hearing was to testify about his exam of SZS. Dr. Cassidy did not testify that Plaintiffs abused SZS. Even if he had, a claim for conspiring to violate §1983 by testifying at the hearing is not

viable since conspiracy is not an actionable claim. A claim that Dr. Cassidy's testimony violated §1983 would have required Dr. Cassidy to be a state actor and for the parents to lose custody at the dependency hearing. However, Dr. Cassidy was not a state actor and custody was returned to Plaintiffs after the dependency hearing. Thus, the dependency hearing did not violate §1983 and is not relevant to the claims against Dr. Cassidy.

Plaintiffs rely strictly on the argument of counsel to support their theories that Dr. Cassidy was a state actor and conspired with DCS and PCH to violate §1983. The arguments of counsel are not evidence. In fact, there is no evidence to create a genuine issue of material fact to avoid summary judgment on Plaintiffs' §1983 claim against Dr. Cassidy.

## II.  NEGLIGENCE (CLAIM 11)

Plaintiffs allege Dr. Cassidy fell below the standard of care in his evaluation of S.Z.S. on February 22, 2019. Plaintiffs did not dispute in their Response that Dr. Lefkowitz, their expert against Dr. Cassidy, is not qualified pursuant to A.R.S. §12-2604. Instead, Plaintiffs assert that no expert is required to determine whether Dr. Cassidy was negligent, based on their belief that the alleged negligence was apparent. On the contrary, a layperson would not be expected to know the standard of care applicable to a pediatric ophthalmologist when performing an eye examination, including whether the eyes must be dilated and if so, the degree of dilation that is required. The Arizona Supreme Court has recognized that the practice of medicine is not within a layperson's knowledge and a court and jury would depend on expert evidence to understand the applicable standard of care. *See Butler v. Rule*, 33 Ariz. 460, 464–65, 265 P. 757, 758 (1928). Expert testimony is required here. The alleged negligence of Dr. Cassidy is not apparent. Without a qualified expert to testify on the standard of care against Dr. Cassidy, Plaintiffs cannot establish that Dr. Cassidy fell below the standard of care and summary judgment is appropriate on the claim of medical negligence. *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383, ¶31 (2013).

1  In their Response, Plaintiffs make a number of misstatements about the facts pertaining to Dr. Cassidy and his involvement with SZS in support of their argument that negligence was apparent. First, Plaintiffs argue that SZS's eyes were not dilated. However, there is undisputed evidence that SZS's eyes were dilated before Dr. Cassidy performed his examination. (Exhibit 13 – Deposition testimony of Dr. Cassidy, p.88:21 to p.89:23). Plaintiffs assert that Dr. Cassidy did not examine the eyes when they were fully dilated, "as the standard of care requires." However, Plaintiffs rely on the opinions of Dr. Lefkowitz to support their assertion that the standard of care requires full dilation. Plaintiffs have conceded that Dr. Lefkowitz is not qualified to testify against Dr. Cassidy on the standard of care. Thus, Dr. Lefkowitz's opinions about what Dr. Cassidy was required to do in order to comply with the standard of care are irrelevant and inadmissible.

Plaintiffs erroneously state that Dr. Cassidy was only in SZS's room for 90 seconds. In fact, Dr. Cassidy's examination of the eyes was 1-2 minutes and he spoke to the family afterwards. (Exhibit 13 – Dr. Cassidy's deposition transcript, p.138:3-18). Thus, he was in SZS's room for longer than 90 seconds.

Dr. Cassidy identified significant retinal hemorrhages in SZS. (Exhibit 14 – Dr. Cassidy's Answers to Plaintiffs' Non-Uniform Interrogatories dated April 27, 2022.) Plaintiffs suggest that SZS sustained retinal hemorrhages during his delivery. Even if he had, those hemorrhages would have been gone by the time Dr. Cassidy performed his examination. (Exhibit 15 – Deposition testimony of Dr. Lefkowitz, p.62:20 to p.63:4). Furthermore, the retinal hemorrhages identified by Dr. Cassidy were much greater than those that might be seen after birth. (Exhibit 13 – Deposition testimony of Dr. Cassidy, p.182:10 to p.183:10). Plaintiffs have failed to come forward with any evidence that SZS sustained retinal hemorrhages when he was delivered due to laboring down. The obstetrician who delivered SZS testified that SZS did not have a traumatic birth due to laboring down or from any other cause. (Exhibit 16 – Deposition transcript of Dr. Jordan Oland, pp.60-61, 66-69, 110-111, 127). Thus, the repeated speculation by Plaintiffs that

the retinal hemorrhages Dr. Cassidy saw during his exam of SZS had been present since birth is not based on any evidence.

Plaintiffs assert that Dr. Cassidy acted improperly by not using a retinal camera to document his findings. It is undisputed that a retinal camera was not available to Dr. Cassidy when he examined SZS. (Exhibit 13 – Dr. Cassidy's deposition testimony p.178:6 to p.180:6). Furthermore, Plaintiffs have no evidence that Dr. Cassidy acted improperly by not using a retinal camera. Without a qualified standard of care expert, Plaintiffs have no evidence that a retinal camera was required by the standard of care.

Although Dr. Warren Heller did not identify any retinal hemorrhages when he examined SZS in February 2019, it is undisputed that Dr. Heller's examination findings are not reliable. (Exhibit 15 – Deposition testimony of Dr. Lefkowitz, p.52:20 to p.53:24.) The retinal hemorrhages identified by Dr. Cassidy were corroborated by Dr. Christopher Fecarotta on March 7, 2019, during his examination, which has not been criticized. (Exhibit 15 – Deposition testimony of Dr. Lefkowitz, p.63:6 to p.64:23).

After Dr. Cassidy's evaluation, it is undisputed that he did not communicate with DCS, PCH or the Buckeye Police Department about SZS. It is also undisputed that Dr. Cassidy did not identify who he thought had inflicted the head trauma on SZS. Plaintiffs' misstatements about the facts in this case do not create a genuine issue of fact in order to defeat summary judgment.

**III.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (CLAIM 15)**

To avoid summary judgment on their IIED claim, Plaintiffs were required to come forward with evidence that the acts of Dr. Cassidy were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Plaintiffs failed to do so. There is absolutely no evidence from which the trier of fact could conclude that Dr. Cassidy intended to cause distress or recklessly disregarded a certainty that distress would occur to Plaintiffs when he documented findings of retinal hemorrhages during the

ophthalmology consultation with S.Z.S. on February 22, 2019. Dr. Cassidy identified possible alternative causes of the retinal hemorrhages, such as a bleeding disorder, infection, or cancer. (Exhibit 18 – Consultation report dated February 22, 2019). Dr. Cassidy's findings during the consultation were not directed towards Plaintiffs. Rather, they were directed towards SZS. There is no evidence that Dr. Cassidy told anyone that Plaintiffs abused SZS. There is also no evidence that Dr. Cassidy's findings directly resulted in DCS taking custody of SZS.

Plaintiffs assert that it was malicious for Dr. Cassidy to give information to DCS that was not substantiated by second opinions. Plaintiffs have no evidence that Dr. Cassidy was required by the standard of care to make sure his findings were substantiated by second opinions before they could be relied on by anyone else.

## IV.   PUNITIVE DAMAGES

If any claims against Dr. Cassidy survive the Motion for Summary Judgment, Plaintiffs should be precluded from requesting punitive damages at trial. Plaintiffs cannot meet the stringent standard to justify an award of punitive damages.  Plaintiffs have provided no document, testimony, or other evidence showing Dr. Cassidy had an evil motive, intent, or reckless indifference to Plaintiffs' rights. Plaintiffs' claim for punitive damages is based entirely on their theory that Dr. Cassidy found retinal hemorrhages in order to support a suspicion of abuse. No evidence exists that Dr. Cassidy was asked to find retinal hemorrhages or that he was involved in helping anyone substantiate a suspicion of abuse. For this reason, summary judgment should be granted to Dr. Cassidy as to the punitive damages issue.

## V.   CONCLUSION

Summary judgment should be entered in Dr. Cassidy's favor on each of the claims Plaintiffs have brought against him. With respect to the claim that Dr. Cassidy violated Section 1983, Plaintiffs have failed to come forward with evidence that Dr. Cassidy was a state actor or that he conspired with a state actor to violate Plaintiffs' Constitutional rights. Without a qualified expert to testify on the standard of care against Dr. Cassidy,

-7-

Plaintiffs cannot establish that Dr. Cassidy fell below the standard of care and summary judgment is appropriate on the negligence claim. None of Dr. Cassidy's alleged conduct could be considered "outrageous" or "extreme" to prove a claim of IIED. Finally, Plaintiffs have failed to come forward with evidence that Dr. Cassidy acted with an evil motive or intent or that he acted with reckless or callous indifference to Plaintiffs' rights in order to reach the jury on a claim for punitive damages.

Dated: November 13, 2023  **GORDON REES SCULLY MANSUKHANI, LLP**

By: /s *Cynthia Y. Patane*
Cynthia Y. Patane
Rachel L. Werner
*Attorneys for Defendants*
*Brendan Cassidy and Jane Doe Cassidy*

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2023, I electronically filed the foregoing with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to all parties, and will e-mail all notification of such filing to all non-CM/ECF system participants.

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
Mills & Woods Law PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ  85014
*Attorneys for Plaintiffs*

DeeAn Gillespie Strub
Sandra Daussin
Gillespie, Shields, Goldfarb Taylor
7319 North 16th Street
Phoenix, AZ  85020
*Attorneys for Plaintiffs*

Kari B. Zangerle
Robert C. Stultz
Gust Rosenfeld, P.L.C.
One East Washington Street, Suite 1600
Phoenix, AZ  85004-2553
*Attorneys for Defendants Phoenix Children's Hospital;*
*Dr. William S. Wood and Rachel Wood; Dr. Kathryn Coffman;*
*Hailey Dietzman and Roald Dietzman; Zachary Dion; and Carey Lewis*

By: /s Z. Seyferth

**TABLE OF CONTENTS – EXHIBITS**

Exhibit 13    Deposition Transcript – Dr. Brendan Cassidy, M.D.

Exhibit 14    Defendant Cassidy's Answers to Plaintiff Honor Duvall's First Set of Interrogatories to Defendant Brendan Cassidy

Exhibit 15    Deposition Transcript – Dr. Todd Allen Lefkowitz

Exhibit 16    Deposition Transcript – Dr. Jordan Robb Oland

Exhibit 17    Deposition Transcript – Gregory McKay

Exhibit 18    February 22, 2019 Consultation Report of Dr. Brendan Cassidy