# EXHIBIT 14

Cynthia Y. Patane, Esq. #018439
KENT & WITTEKIND, P.C.
909 East Missouri Avenue
Phoenix, AZ  85014
Telephone: (602) 261-7770
Court Documents:  minuteentries@kwlaw-az.com
Attorneys for Defendant Cassidy

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Honor Duvall, an individual; Donald Sankey, Junior, an individual; S.Z.S., a minor, through his parents and guardians Honor Duvall and Donald Sankey,<br><br>　　　　Plaintiffs,<br>vs.<br><br>Arizona Department of Child Safety, a governmental entity; State of Arizona, a governmental entity; Brenda Gualajara, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Gualajara, her spouse; Fernando Araizo, individually and as an employee with the State of Arizona Department of Child Safety and Jane Doe Araizo, his spouse; Alyssa Lucero, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Lucero, her spouse; Jeffrey Duncan, individually and as an employee with the State of Arizona Department of Child Safety and Jane Doe Duncan, his spouse; Chantel Madson, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Madson, her spouse; Phoenix Children's Hospital, Inc., an Arizona corporation, individually and as a services provider for the State of Arizona Department of Child Safety; Brendan | No. 21-CV-00167-PHX-ROS<br><br>**DEFENDANT CASSIDY'S ANSWERS TO PLAINTIFF HONOR DUVALL'S FIRST SET OF INTERROGATORIES TO DEFENDANT BRENDAN CASSIDY**<br><br>(Assigned to the Hon. Roslyn O. Silver) |

| | |
|---|---|
| 1 | Cassidy, individually and as a services provider for the State of Arizona Department of Child Safety and Jane Doe Cassidy, his spouse; William S. Wood, individually and as a services provider for the State of Arizona Department of Child Safety and Jane Doe Wood, his spouse; Kathryn Coffman, individually and as a services provider for the State of Arizona Department of Child Safety and John Doe Coffman, her spouse; Hailey Dietzman, individually and as a services provider for the State of Arizona Department of Child Safety and John Doe Dietzman, her spouse; Zachary Dion, individually and as a services provider for the State of Arizona Department of Child Safety and Jane Doe Dion, his spouse; Carey Lewis, individually and as a services provider for the State of Arizona Department of Child Safety and John Doe Lewis, her spouse; Gregory McKay, as former Director, Arizona Department of Child Safety; Michael Faust, as Director, Arizona Department of Child Safety; John and Jane Does 1-5; and Black Entities 1-5, |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | Defendants. |

Defendant Brendan Cassidy, M.D., by and through counsel undersigned, hereby answers Plaintiff Honor Duvall's First Set of Interrogatories to Defendant Brendan Cassidy, M.D.

**INTERROGATORY NO. 1**

Identify each conversation you had with Alyssa Lucero, Brenda Gualajara, Chantel Madson, or anyone else from the Arizona Department of Child Safety regarding Swayde at any time from 21 February 2019 through the present.

**Answer:** Objections: overly broad and vague. Without waiving those objections, I do not recall having any conversations or interactions with Alyssa Lucero, Brenda Gualajara, Chantel Madson, or anyone else from the Arizona

**Department of Child Safety regarding Swayde at any time from 21 February 2019 through the present.**

**INTERROGATORY NO. 2**

Identify each conversation you had with Det. Skaggs or anyone else from the Buckeye Police Department regarding Swayde at any time from 21 February 2019 through the present.

**Answer: Objections: overly broad and vague. Without waiving those objections, I do not recall having any conversations with Det. Skaggs or anyone else from the Buckeye Police Department regarding Swayde at any time from 21 February 2019 through the present.**

**INTERROGATORY NO. 3**

Identify and state with particularity all the information that was made available to you prior to your examination of Swayde, including the identity of the person(s) providing that information and the Bates number for that information if it has been produced in this litigation.

**Answer: Objections: vague and overly broad. Without waiving those objections, the sources of the information that I recall being made available to me prior to my examination of Swayde were the PCH chart, the labor and delivery records from Banner Estrella Medical Center that were available at PCH as of 2/22/2019, a text message from the trauma service at PCH asking me to evaluate Swayde, and a history from Honor Duvall. The information available to me prior to the examination was intracranial hemorrhaging, mental status changes, no history of abnormal birth trauma, and no past ocular history. I do not recall who sent the text message. I do not recall the pages in the chart that I reviewed.**

. . .
. . .
. . .

**INTERROGATORY NO. 4**

Identify each medical test and/or procedure that you ordered, conducted, and/or reviewed the results of to determine the extent of retinal hemorrhaging, if any, Swayde had on 22 February 2019.

**Answer:** **In order to determine the extent of retinal hemorrhaging in Swayde on 2/22/2019, I performed an eye exam with external and internal visual inspection of Swayde's eyes, including through the use of an indirect ophthalmoscope.**

**INTERROGATORY NO. 5**

Identify each medical test and/or procedure that you ordered, conducted, and/or reviewed the results of to determine whether any retinal hemorrhaging you diagnosed on Swayde was the result of non-abusive causes.

**Answer:** **In order to determine whether the retinal hemorrhaging I diagnosed was the result of non-abusive causes, I performed an eye exam with external and internal visual inspection of Swayde's eyes, including through the use of an indirect ophthalmoscope. I also reviewed the PCH chart as of 2/22/2019, the labor and delivery records from Banner Estrella Medical Center that were available at PCH as of 2/22/2019, and obtained a history from Honor Duvall.**

**INTERROGATORY NO. 6**

Identify each member of the Phoenix Children's Hospital Child Protection Team that you had any conversations with between 21 February 2019 and the present about your or their examination(s), record review(s), diagnoses, conclusions, or any other matter regarding Swayde.

**Answer: Objection: overly broad. Without waiving the objection, I received a text message from the team requesting a consultation. I recorded my consultation summary and submitted it to the hospital system in a timely fashion**

**after the examination.  I do not recall the details of any conversations with the team or the individual team members.**

**INTERROGATORY NO. 7**

Identify all medical professionals outside of the Phoenix Children's Hospital Child Protection Team that you had any conversations with between 21 February 2019 and the present about your or their examination(s), record review(s), diagnoses, conclusions, or any other matter regarding Swayde.

**Answer**:   **Objections: overly broad and vague. Without waiving those objections, none that I can recall.**

**INTERROGATORY NO. 8**

Identify all conferences, seminars, trainings, or continuing education that you attended between January 2012 through present related to identifying, diagnosing, and/or ruling out abuse or suspected non-accidental trauma ("SNAT") in regard to children patients.

**Answer**:   **Objections: overly broad and vague. Without waiving those objections, I do not recall, nor did I keep a list of all the conferences, seminars, trainings, or continuing education that I attended between January 2012 through the present related to identifying, diagnosing, and/or ruling out abuse or suspected non-accidental trauma ("SNAT") in regard to children patients.  I earn continuing education credits through teaching.  Since 2012, I have been involved in seminars and watched seminars electronically, I have spent thousands of hours reviewing medical reports and literature in this field, and I have spent hundreds of hours reviewing pathology slides in this field.**

**INTERROGATORY NO. 9**

Identify each forensic medical practitioner who to your knowledge played any role in this matter, stating their name, qualifications, specialty(ies), the forensic-science

society(ies) to which they belong, the role they played, the records they reviewed, and the conclusions they reached.

**Answer: Objection to extent this calls for information that is privileged by the attorney-client privilege or protected by work product. Without waiving that objection, I am not aware of any forensic medical practitioners aside from those at PCH who may have played a role in this matter.**

**INTERROGATORY NO. 10**

Identify each forensic science society(ies) and/or each forensic medical society(ies) to which you belong, when you joined, any office you hold, and whether your membership is currently active.

**Answer: I do not belong to a forensic science society.**

**INTERROGATORY NO. 11**

State whether you are a member of or provide services for or at the request of the Phoenix Children's Hospital Child Protection Team ("CPT"). If you are a member of the CPT, or provide services for or at the request of the CPT, state:

- How you are compensated for your role or participation on the CPT;
- The amount of compensation you received annually in relation to your role or participation on the CPT for the period of January 2014 through the present;
- The number of patients you examined annually between January 2014 through 22 February 2019 in discharge of your role or duties on the CPT;
- Of the number of patients you identified in the immediately previous bullet point, how many patients did you diagnose their injuries as being the result of abuse or suspected abuse.

**Answer: Objections: vague and overly broad. Without waiving those objections, when requested, I provide ophthalmology consultations at the request of PCH as part of the trauma service. I receive compensation through insurance billing (if available) that is submitted by my office and, on occasion,**

**forward a bill to the parents of the child. I earn approximately $3,400 annually by performing consultations at PCH. I saw approximately 3 children a week in consultation at PCH from January 2014 through February 22, 2019, and roughly 25% had ophthalmological findings consistent with non-accidental trauma. Ten percent had significant findings. Swayde's ophthalmological findings were considered significant.**

DATED this 27th day of April 2022.

         KENT & WITTEKIND, P.C.

       By */s/ Cynthia Y. Patane*
         Cynthia Y. Patane
         *Attorneys for Defendant Cassidy*

### CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April 2022, a copy of the foregoing document was served via email on the following counsel of record:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
MILLS + WOODS LAW PLLC
5055 N. 12th Street, Suite 101
Phoenix, AZ  85014
*Attorneys for Plaintiffs*

DeeAn Gillespie Strub
Sandra Daussin
GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 N. 16th Street
Phoenix, AZ  85020
*Attorneys for Plaintiffs*

Georgia A. Stanton
Ravi V. Patel
Jones Skelton & Hochuli, P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, AZ  85004
*Attorneys for State Defendants*

| | |
|---|---|
| 1 | Kari B. Zangerle |
| | Mary G. Isban |
| 2 | CAMPBELL, YOST, CLARE & NORELL, P.C. |
| | 3101 N. Central Avenue, Suite 1200 |
| 3 | Phoenix, AZ  85012 |
| | *Attorneys for Defendants Phoenix Children's Hospital,* |
| 4 | *Dr. William S. Wood and Rachel Wood, Dr. Kathryn Coffman,* |
| | *Hailey Dietzman and Roald Dietzman, Zachary Dion,* |
| 5 | *and Carey Lewis* |

                        /s/ Deanna Hedegard