**GUST ROSENFELD  P.L.C.**
Kari B. Zangerle, No. 013164
Robert C. Stultz, No. 025781
kzangerle@gustlaw.com
rstultz@gustlaw.com
One East Washington Street, Suite 1600
Phoenix, Arizona  85004-2553
(602) 257-7422
Fax: (602) 254-4878

*Attorneys for Defendants Phoenix Children's Hospital; Dr. William S. Wood*
 *and Rachel Wood; Dr. Kathryn Coffman; Haley Dietzman and*
*Roald Dietzman; Zachary Dion; and Carey Lewis*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Honor Duvall, an individual; Donald Sankey, Junior, an individual; S.Z.S., a minor, through his parents and guardians Honor Duvall and Donald Sankey, | Case No.:  21-CV-00167-PHX-ROS |
| Plaintiffs, | **THE PCH DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| v. | **(Oral Argument Requested)** |
| Arizona Department Of Child Safety, a governmental entity; *et al.*, | |
| Defendants. | |

Defendants Phoenix Children's Hospital, Dr. William S. Wood and spouse Rachel Wood, Dr. Kathryn Coffman, and Haley Dietzman and spouse Roald Dietzman ("PCH Defendants"), through counsel, submit their Reply in Support of the PCH Defendants' Motion for Summary Judgment (Doc. 312).

After years of discovery, thousands of pages of documents produced, more than two dozen depositions, and numerous extensions, Plaintiffs have fallen far short of the minimum evidentiary burden to survive summary judgment. Relying on rhetoric that borders, and often crosses into, the inflammatory, Plaintiffs attempt to distract attention away from their lack of evidence. However, when the dust settles from Plaintiffs' rhetorical flourishes, they are left with what has been the case since the beginning: an infant with severe injuries that they cannot explain. The only likely explanation for S.Z.S.'s injuries is abuse. Plaintiffs do not have a single expert to testify otherwise.

The PCH Defendants should be granted summary judgment for several reasons: (1) there is no evidence that Dr. Coffman, the only PCH defendant against whom conspiracy has been alleged, conspired with the State to deprive S.Z.S. and his parents of their constitutional rights; (2) the PCH Defendants are immune from liability as to the State law claims, pursuant to A.R.S. § 13-3620(J); (3) Plaintiffs lack the requisite expert witnesses to maintain negligence claims against Dr. Coffman, Dr. Wood, and Haley Dietzman, FNP; and (4) no evidence supports the high burden of proof for the intentional infliction of emotional distress claim.

This Reply is supported by the below Memorandum of Points and Authorities and the entire Court record.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    RESPONSE TO PLAINTIFFS' BACKGROUND SECTION

The Background Section in Plaintiffs' Combined Response to PCH Defendants' Motion for Summary Judgment and Dr. Brendan Cassidy's Motion for Summary Judgment is substantially similar to the Background Section in Plaintiffs' Motion for Partial Summary Judgment.  The PCH Defendants addressed the Background Section in their Response to Plaintiffs' Motion for Partial Summary Judgment, which the PCH Defendants incorporate herein by reference. (Doc. 349, at p. 6-17.) A few points need

1   further emphasis here.

2   Plaintiffs have half-heartedly injected race into the case, by referring to

3   themselves as African American and several of the PCH providers as Caucasian.

4   Plaintiffs have not argued that the care S.Z.S. received was in any way affected by race.

5   In fact, Dr. Pickett, the PCH Emergency Room physician who first treated S.Z.S. and

6   suspected non-accidental trauma, is African American and has denied that race played

7   any role in the care provided by him or his resident Kathleen Outcalt, M.D. (Doc. 341,

8   at p. 5-6.)

9   Plaintiffs argue that doctors not on the Child Protection Team (CPT) told S.Z.S.'s

10  family that the test results were normal or not worrisome for abuse, and that they did not

11  suspect abuse. For the purported evidence, Plaintiffs cite to an inadmissible hearsay

12  timeline written by Plaintiff Honor Duvall. (Doc. 319-10.) The medical records do not

13  support Plaintiffs' argument. For example, Dr. Pickett, discussed above, was not on the

14  CPT, and he suspected S.Z.S. was a victim of abuse.

15  Plaintiffs state that S.Z.S.'s birth was traumatic, purportedly to argue that his

16  subdural hematomas could have been caused by the birthing process. Plaintiffs cite to

17  testimony from Defendant Kathryn Coffman, M.D. from the State juvenile court

18  proceedings. Dr. Coffman's testimony was offered in general, and she is not an

19  obstetrician and was not present for S.Z.S.'s birth. Notably, Plaintiffs ignore the

20  testimony *in this case* of Jordan Oland, M.D., the obstetrician who delivered S.Z.S. Dr.

21  Oland testified that S.Z.S.'s birth was not traumatic.  (Doc. 349-1, at p. 125, ln. 1 – p.

22  126, ln. 11.) It also is undisputed that S.Z.S. required neurosurgery at PCH for an

23  expanding subdural hematoma, and the neurosurgeon who performed the surgery, Dr.

24  Taryn Bragg, testified that S.Z.S.'s subdural hematomas were inconsistent with

25  childbirth. (Doc. 333-7.). Dr. Bragg testified that she has treated hundreds of patients

26  who experienced subdural hematomas from childbirth. *Id*. None of those patients

1  required the surgery that S.Z.S. needed, and the patients with bleeds from childbirth had

2  blood in a different location of the brain than S.Z.S.'s hematomas. *Id.* Plaintiffs do not

3  have an expert to testify that childbirth caused S.Z.S.'s subdural hematomas. In contrast,

4  the PCH Defendants disclosed Sarah Wagner, M.D., a board certified obstetrician, who

5  is of the opinion that S.Z.S.'s birthing process is unrelated to the injuries he presented

6  with at PCH. (Doc. 130-1 at 362; Doc. 333, at p. 10, lns. 6-16.)  Dr. Wagner's testimony

7  is unrebutted by any Plaintiff expert.

8          Plaintiffs contend that their pediatrician recommended the parents take S.Z.S. to

9  PCH to evaluate a possible bleeding disorder. (Doc. 352, at p. 4, lns. 19-21.) Plaintiffs

10  cite an exhibit that does not support their contention. They also fail to acknowledge that

11  the same pediatrician, Dr. Heather Gosnell, suspected S.Z.S. was abused and believed

12  further investigation was reasonable. (Doc. 333, at p. 27-28.)

13          Plaintiffs argue that S.Z.S. did not have hematemesis (vomiting blood) at the

14  time of his presentation at PCH. The medical records contradict this point, but it is

15  irrelevant to the issues before the Court in the PCH Defendants' Motion for Summary

16  Judgment. S.Z.S.'s suspected nonaccidental trauma was reported to DCS because he

17  had subdural hematomas, bilateral retinal hemorrhages, and a bucket handle fracture.

18  Any one of these injuries, without a plausible accidental explanation, would have

19  required a report to DCS. S.Z.S.'s parents offered no accidental explanation for these

20  injuries. With or without hematemesis, providers at PCH would have had an *obligation*

21  to report S.Z.S. to DCS.

22          Plaintiffs allege that Defendant Haley Dietzman, FNP performed a "forensic"

23  examination of S.Z.S. without his parents' consent. Ms. Dietzman's examination was

24  covered by the consent in the Conditions of Admission signed by S.Z.S.'s mother. (Doc.

25  349-2, at PCH 1206 – 1207 cycn; Doc. 349-3, at p. 144, ln. 24 – p. 145, ln. 10.) Not

26  only is Plaintiffs' allegation not true, it is irrelevant to the issues before the Court.

1   Plaintiffs also have disclosed no expert witness to testify that Ms. Dietzman did not

2   comply with the standard of care, including with consent issues.

3       Plaintiffs misstate Dr. Patrick Hangge's role in S.Z.S.'s care. Dr. Hangge is not a

4   party to this case, and Plaintiffs have not alleged that his care was below the standard of

5   care. In their Response, Plaintiffs describe Dr. Hangge as a "trauma floor doctor" at

6   PCH. Plaintiffs omit that Dr. Hangge was a resident physician under the supervision of

7   a pediatric general surgeon. At the time of S.Z.S.'s admission on February 21, 2019, Dr.

8   Hangge's supervising physician was Dorothy Rowe, M.D. (**Exhibit 1**, at p. 29, lns. 14-

9   24.) As a resident, Dr. Hangge did not have the authority to admit patients, including

10  S.Z.S., without Dr. Rowe's approval. (**Ex. 1**, at p. 30, lns. 10-13.) Dr. Rowe agreed that

11  S.Z.S. should be admitted to PCH.

12      In discussing statements Dr. Hangge purportedly made to the Buckeye Police

13  Department, Plaintiffs suggest that additional work up was needed to rule out a blood

14  disorder with respect to S.Z.S.'s subdural hematomas. Plaintiffs again leave out critical

15  details. Dr. Rowe, the supervising physician, testified that, based on S.Z.S.'s laboratory

16  results, a consult to a hematologist was not indicated, and the results did not indicate

17  any tendency for S.Z.S. to form abnormal clots. (**Ex. 1**, at p. 137, lns 17-22 and p. 138,

18  lns. 20-24.) Moreover, Plaintiffs do not have an expert witness to testify that S.Z.S. had

19  a blood disorder or that a blood disorder caused his injuries. With an absence of

20  supporting evidence, Plaintiffs rely on pure speculation.

21      With respect to S.Z.S.'s bilateral retinal hemorrhages, Plaintiffs question

22  pediatric ophthalmologist Dr. Brendan Cassidy's role in S.Z.S.'s care and diagnosis of

23  bilateral retinal hemorrhages. Plaintiffs rely on Dr. Warren Heller, an ophthalmologist

24  not affiliated with PCH who saw S.Z.S. after the first admission at PCH. Plaintiffs argue

25  that Dr. Heller's examination "revealed nothing alarming about S.Z.S.'s retinas or eyes"

26  and all aspects of his eyes were within normal limits. (Doc. 352, at p. 9, lns. 6-8.) Yet

1    Plaintiffs' own pediatric ophthalmology expert, Dr. Todd Lefkowitz, discredited Dr.

2    Heller.   According to Dr. Lefkowitz, he knows Dr. Heller and would "ignore any

3    information from his practice." (Doc. 341, at p. 8-9.) Plaintiffs cannot escape the fact

4    that S.Z.S. was seen by two pediatric ophthalmologists at PCH who observed retinal

5    hemorrhages: Dr. Cassidy, and Dr. Fecoratta, whose care is not at issue this case. (Doc.

6    314, at ¶35.)

7           With respect to S.Z.S.'s metaphyseal fracture, Plaintiffs attempt to call the

8    diagnosis into question by arguing that the initial skeletal survey was misinterpreted and

9    that a subsequent X-ray, from Valley Radiology, showed no left fracture and a

10   "possible" right fracture. The Valley Radiology report indicated that the left radiographs

11   were of "limited" value due to the child's movement and recommended repeated

12   radiographs, which were done at PCH. (Doc. 319-29.) Plaintiffs have failed to disclose a

13   radiology expert to testify on the imaging or S.Z.S.'s injuries.

14          The PCH Defendants disclosed Dr. Charles Maxfield, who is board certified by

15   the American Board of Radiology in Diagnostic Radiology with subspecialty

16   certification in Pediatric Radiology. (Doc. 130-1 at 202.) He is a Professor of Radiology

17   and Pediatrics at Duke University, where he also serves as the Chief of Pediatric

18   Radiology and the Vice Chair of Education for the Department of Radiology. (*Id*.)

19          At his deposition, Dr. Maxfield testified that metaphyseal fractures are

20   pathognomonic, or virtually diagnostic, for child abuse. (Doc. 315-5, at p. 36, lns. 11-

21   15.) Dr. Maxfield also testified that S.Z.S. unequivocally had a right metaphyseal

22   fracture, and it was reasonable to suspect a left metaphyseal fracture. (Doc. 349-4, at p.

23   123, lns. 7-23.) Plaintiffs failed to disclose a witness to testify, to a reasonable degree of

24   medical probability, as to the cause of S.Z.S.'s right metaphyseal fracture, which is

25   pathognomonic for child abuse.

26

1    Plaintiffs also argue that a bone scan should have been performed to confirm the

2  right metaphyseal fracture. Dr. Maxfield disputes this point. He testified that bone scans

3  are no longer performed for metaphyseal fractures, because bone scans are not as good

4  as X-rays in detecting metaphyseal fractures. (Doc. 349-4, at p. 34, lns. 1-18.) In

5  S.Z.S.'s care, a bone scan would have played no role, due to the definite metaphyseal

6  fracture. (Doc. 349-4 at p. 35, lns. 10-21.)

7    Plaintiffs contend that there were inaccuracies in Dr. Wood's medical record.

8  These allegations are irrelevant. There is no evidence that any other provider reviewed

9  and relied on the purported inaccuracies, or that S.Z.S.'s care was impacted in any way

10  by the inaccuracies. Moreover, as discussed below, the standard of care does not require

11  100 percent accuracy in medical records. Plaintiffs have failed to disclose an expert to

12  testify that Dr. Wood breached the standard of care, whereas the PCH Defendants have

13  disclosed Dr. Steven Frick to testify that Dr. Wood complied with the standard of care.

14  (Doc. 312, at p. 9.)

15    Finally, Plaintiffs make several false claims about Dr. Coffman. For example,

16  Plaintiffs claim that Dr. Coffman tried to "influence" Jeff Duncan, the DCS OCWI

17  investigating supervisor, to remove S.Z.S. from his parents' care. (Doc. 352, at p. 11,

18  lns. 19-21.) Exhibit 21, upon which Plaintiffs rely, makes no reference to Dr. Coffman.

19  (Doc. 319-21.)  Plaintiffs then contend that Dr. Coffman intervened with DCS Director

20  Greg McKay. (Doc. 352, at p. 11, ln. 21 – p. 12, ln. 2.) At his deposition, Mr. McKay

21  denied any such suggestion of collusion or pressure from Dr. Coffman regarding S.Z.S.

22  Mr. McKay testified that he does not recall Dr. Coffman telling him any specifics about

23  S.Z.S, and Dr. Coffman was "not a decision maker for this organization." (Doc. 314, at

24  ¶ 94.) Similarly, Dr. Coffman testified that she would not have suggested DCS take

25  custody of S.Z.S. and file a dependency petition, as that was not her role. (Doc. 349-5,

26  at p. 227, lns. 14-22.)

As discussed in detail in the Response to Plaintiffs' Motion for Partial Summary Judgment, the PCH Defendants were not parties to, and had no control over, the dependency action in the State juvenile court. DCS's Dependency Petition and Petition for Paternity and/or Child Support, filed by the Attorney General's office, lists the parties as DCS, S.Z.S., Honor Nacole Duvall, and Donald Ray Sankey, Jr. (Doc. 319-44, at p. 1-3.) Plaintiffs state, without any factual support, that "PCH, through its general counsel, and Drs. Cassidy and Wood worked closely with the assistant attorney general prosecuting the dependency for DCS." (Doc. 352, at p. 15, lns. 14-16.) This is inaccurate. *See* Section II.A below. The State brought and prosecuted the dependency action. The State controlled who was called, or not called, as witnesses. The State decided trial strategy. As can be seen by the evidence presented in this case, had the PCH Defendants been parties to, and had control over, the prosecution of the dependency action, the evidence and trial strategy would have been different.

## II.    LEGAL ARGUMENT

### A.    Issue And Claim Preclusion Do Not Apply.

Without evidence to support their claims against the PCH Defendants, Plaintiffs are seeking to impose on this Court the judgment from the State court juvenile proceedings, through a meritless issue/claim preclusion argument. The PCH Defendants addressed this issue in their Response to Plaintiffs' Motion for Partial Summary Judgment (Doc. 349, at p. 18-22, which is incorporated herein by reference.) The PCH Defendants were not parties to the State juvenile court proceedings; they did not have a full and fair opportunity to litigate the issues in the State court; and the issues in the State court were different than the issues before this Court. Accordingly, claim and issue preclusion are inapplicable.

In civil litigation, claim preclusion "means that 'a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the

1   same claim.'" *Cocchia v. Testa Trustee of Karen M. Testa Separate Property Trust*, 536

2   P.3d 273, 279 (App.2023)(quoting *Lawrence T. v. Dep't of Child Safety*, 246 Ariz. 260,

3   261 ¶ 8 (App. 2019)). For claim preclusion to apply, Plaintiffs must prove "(1) an

4   identity of claims in the suit in which a judgment was entered and the current litigation,

5   (2) a final judgment on the merits in the previous litigation, and (3) identity or privity

6   between parties in the two suits." *Id*.

7          Issue preclusion is a judicial doctrine intended to prevent a party from relitigating

8   issues of fact or law. *Cocchia*, 536 P.3d at 279 (quoting *Legacy Found. Action Fund v.*

9   *Citizens Clean Elections Comm'n*, 254 Ariz. 485, __ ¶ 24 (2023)). A party asserting

10  issue preclusion must satisfy four requirements: "(1) the issue at stake is the same in

11  both proceedings; (2) the issue was actually litigated and determined in a valid and final

12  judgment issued by a tribunal with competent jurisdiction; (3) the opposing party had a

13  full and fair opportunity to litigate the issue and actually did so; and (4) the issue was

14  essential to the judgment." *Id*.

15         Neither doctrine is applicable. The PCH Defendants were not parties to the

16  juvenile court dependency action and did not control the presentation of evidence. The

17  PCH Defendants did not decide whom to call as witnesses, how to present the evidence,

18  or what arguments to make. The issues in the juvenile court proceedings were different

19  than the issues before this Court. The juvenile court dependency action and the case at

20  bar do not involve the same rights. In the juvenile court, S.Z.S.'s custody was at issue.

21  Here, it is not. Moreover, in the juvenile court, the PCH Defendants' civil liability was

22  not even at issue, whereas here it is the reason for the lawsuit.

23         The PCH Defendants did not have a full and fair opportunity to litigate the issues

24  and did not actually do so. In arguing the contrary, Plaintiffs further argue that "PCH,

25  through its general counsel, and Drs. Cassidy and Wood worked closely with the

26  assistant attorney general prosecuting the dependency for DCS." (Doc. 352, at p. 15,

1  lns. 14-16.) Plaintiffs' only "evidence" in support of that proposition is a cite to an

2  email exchange between an Assistant Attorney General for the State and an in-house

3  attorney for PCH, in which the PCH attorney responded to a request from a

4  governmental authority for medical information about a bone scan. (Doc. 319-50.)

5  Responding to a request for information does not equate to a full and fair opportunity to

6  litigate issues.

7      Claim and issue preclusion are inapplicable. The doctrines have no relevance to

8  the PCH Defendants' Motion for Summary Judgment.

9      **B.    The PCH Defendants Are Entitled To Summary Judgment On Claim
10     Six (Conspiracy).**

11     After years of litigation, Plaintiffs have no evidence to support the conspiracy

12  allegations (Claim Six) alleged against Dr. Coffman. To mask this lack of evidence,

13  Plaintiffs have attempted to broaden the claim to other PCH Defendants, despite

14  multiple Court orders to the contrary. Plaintiffs have no evidence of a conspiracy for the

15  only party against whom the claim remains pending – Dr. Coffman.

16     In Claim Six, Plaintiffs originally alleged conspiracy against Dr. Coffman, Dr.

17  Wood, and an unidentified social worker. (Doc. 1, at ¶ 230-235.) Plaintiffs subsequently

18  dismissed the claim against Dr. Wood and the unidentified social worker. (Doc. 307.) In

19  an Order dated May 10, 2023, the Court stated, "As PCH argues, there is no conspiracy

20  claim asserted against PCH." (Doc. 278, at p. 3, lns. 20-21.) In the Joint Status Report,

21  filed June 2, 2023, Plaintiffs stated that they intended to file a motion to amend the

22  pleadings to add Defendants PCH and Dietzman to Claim Six. (Doc. 284, at p. 20-21.)

23  In an Order dated June 6, 2023, the Court stated that "it appears unlikely any such

24  motion would be successful." (Doc. 287, at p. 2.) Plaintiffs never attempted to amend

25  the Complaint, yet they are arguing the conspiracy claim as if they had pled it against all

26

1  of the PCH Defendants, not just Dr. Coffman. These improper conspiracy arguments

2  involving PCH Defendants other than Dr. Coffman should be disregarded by the Court.

3  In order to prove a conspiracy between the State Defendants and Dr. Coffman,

4  Plaintiffs must establish "an agreement or 'meeting of the minds' to violate

5  constitutional rights." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d

6  1539, 1540-41 (9th Cir.1989)(*quoting Fonda*, 707 F.2d at 438)). While each participant

7  in the conspiracy need not know the exact details of the plan, they must at least share

8  the common objective of the conspiracy. *Id*.

9  In their Response, Plaintiffs discuss purported actions by "PCH CPT," Dr.

10  Wood[1], Ms. Dietzman, and others. None of these purported actions, almost all of which

11  are mischaracterized by Plaintiffs, are relevant to the conspiracy claim alleged against

12  Dr. Coffman. The issue is whether Dr. Coffman and the State had a common objective

13  to deprive S.Z.S. and his parents of their constitutional rights. They did not.

14  Each of the actions Plaintiffs contend purportedly taken by Dr. Coffman in

15  furtherance of the alleged conspiracy are factually inaccurate and/or do not establish a

16  conspiracy. Plaintiffs argue that at the March 7, 2019 visit at Child Help, Dr. Coffman

17  forced DCS to require S.Z.S.'s parents to return to PCH, instead of Banner Cardon's

18  Children's Hospital, for further evaluation of an increased head circumference. This is

19  not true. Dr. Coffman testified that she thought S.Z.S. should be seen at PCH, for

20  continuity of care, because he had already been seen there, and his recent medical

21  records were at PCH. (Doc. 349-5, at p. 97, ln. 22 – p. 98, ln. 5; p. 196, ln. 5-23.) Dr.

22  Coffman made no threats. *Id*. Moreover, when S.Z.S. returned to PCH, he required

24  [1] Plaintiffs improperly include Dr. Wood's salary. During discovery, Plaintiffs were able to obtain Dr. Wood's salary by arguing that it was relevant to the conspiracy claim alleged

25  against him. Plaintiffs subsequently dismissed the conspiracy claim against Dr. Wood, yet nonetheless include his salary in their Response. This clearly irrelevant information should

26  be stricken.

1  neurosurgery.

2  Next, Plaintiffs argue that DCS Director Mr. McKay did not order his

3  investigators to take custody of S.Z.S. and file the dependency petition, until after he

4  was contacted by Dr. Coffman.  As discussed above, both Dr. Coffman and Mr. McKay

5  flatly deny these allegations.  Mr. McKay testified that Dr. Coffman was not a decision

6  maker for DCS.

7  While a conspiracy claim does not require evidence that a physician breached the

8  standard of care, undisputed evidence proving a physician complied with the standard of

9  care is relevant. The PCH Defendants have disclosed an expert witness who opines that

10  Dr. Coffman complied with the standard of care in all respects. (Doc. 312, at p. 15, ln.

11  15 – p. 17, ln. 5.) Plaintiffs did not disclose an expert to testify that Dr. Coffman

12  breached the standard of care. Plaintiffs fail to explain how the very same conduct by a

13  physician that complies with the medical standard of care can simultaneously constitute

14  a conspiracy to deprive the patient and his family of their constitutional rights.

15  Plaintiffs' argument makes no sense, *and would have a chilling effect on the practice of*

16  *medicine for physicians who care for the most vulnerable patients – infants who have*

17  *been abused*.

18  The evidence shows that any actions Dr. Coffman took regarding S.Z.S. were

19  motivated by concern for his wellbeing, and there is no evidence of a common objective

20  to deprive S.Z.S. or his parents of constitutional rights. The PCH Defendants should be

21  granted summary judgment on Claim Six.

22  **C.**    **The PCH Defendants Have Immunity From Plaintiffs' Arizona State Law Claims.**

23

24  The PCH Defendants, as mandatory reporters of suspected child abuse, have

25  immunity, pursuant to A.R.S. § 13-3620. The Arizona Court of Appeals' opinion in

26  *L.A.R. v. Ludwig*, 170 Ariz. 24 (App.1994) is dispositive in refuting Plaintiffs' argument

1    that the statute does not apply and that there is evidence to overcome the presumption of

2    good faith and proper motives.

3          In *L.A.R.*, the Court of Appeals upheld the trial court's grant of summary

4    judgment, finding immunity under the statute. The *L.A.R.* Court held that "reasonable

5    grounds" means any facts from which one could reasonably conclude that a child had

6    been abused. 170 Ariz. At 27. "Reasonable grounds" is a low standard. *Id*. Moreover,

7    "[t]he statute does not contemplate that a person must fully investigate the suspected

8    abuse before making a report…It is the responsibility of Child Protective Services and

9    the police to investigate the allegations." *Id*.

10         There is a presumption that a person acting pursuant to A.R.S. § 13-3620 did so

11   in good faith and with proper motives. *Ramsey v. Yavapai Family Advocacy Center*, 225

12   Ariz. 132, 138, 235 P.3d 285, 291 (App.2010). To overcome the presumption, the

13   plaintiffs must prove that the person acted with malice. *Id*. It is insufficient to show that

14   the person intended to do the actions and that the actions ultimately proved to be wrong.

15   225 Ariz. At 140. The plaintiff must prove that the person intended to do something that

16   he or she knew to be wrong. *Id.*

17         Plaintiffs make several arguments, all of which fail. Plaintiffs argue that the

18   statute is inapplicable, because the PCH Defendants were not providing medical

19   treatment, but forensic examinations. The statute cannot support such an interpretation.

20   For example, minors who are suspected of being sexually abused undergo a sexual

21   assault forensic examination. If the examination reveals evidence of a sexual assault and

22   is reported to DCS, the reporting provider would be protected by A.R.S. § 13-3620. The

23   statute does not carve out an exception for "forensic examinations."

24         Moreover, the PCH Defendants were providing medical care. The Court need

25   look no further than Plaintiffs' pleadings and recent filings. Plaintiffs filed a medical

26   negligence claim against Dr. Coffman, Dr. Wood, and Ms. Dietzman. (Doc. 1, at ¶ 270.)

1   In responding to the PCH Defendants' request for summary judgment on the medical

2   negligence claim, Plaintiffs did not argue that the Medical Malpractice Act does not

3   apply or that medical treatment was not being provided to S.Z.S. Plaintiffs have

4   conceded that the PCH Defendants provided medical treatment to S.Z.S.

5          Most of Plaintiffs' arguments fall into the category of "they got it wrong and

6   should have known better." For the reasons discussed above and in other filings, the

7   PCH Defendants have presented substantial evidence that S.Z.S. was in fact abused and,

8   without question, it was reasonable to suspect abuse. As discussed above, even S.Z.S.'s

9   own pediatrician (not affiliated with PCH) suspected S.Z.S. was the victim of abuse.  As

10  the Arizona Court of Appeals has held, to overcome the presumption of good faith and

11  proper motives, Plaintiffs must prove not just that what the PCH Defendants did was

12  wrong, but that they knew it was wrong and did it anyway.  There is no such evidence.

13         With Plaintiffs unable to overcome the presumption of good faith and proper

14  motives, the immunity afforded by A.R.S. § 13-3620 applies. On this basis, the PCH

15  Defendants should be granted summary judgment on Plaintiffs' State law claims.

16         **D.      The PCH Defendants Are Entitled To Summary Judgment On Claim
               Eleven (Medical Negligence).**
17

18         Plaintiffs have changed their tune. In correspondence dated March 28, 2022,

19  counsel for Plaintiffs wrote, "no one disputes that such [medical] expert testimony will

20  be required here for the claims against your individually named clients." (Doc. 109-1 at

21  2.) Now, they claim expert testimony is not needed. What changed? Despite three

22  extensions of their expert disclosure deadline, Plaintiffs were unable to disclose a single

23  expert witness to testify that Dr. Coffman, Dr. Wood, or Ms. Dietzman breached the

24  applicable standard of care. Back in March 2022, Plaintiffs were right: expert testimony

25  is required, and the PCH Defendants should be granted summary judgment on Claim

26  Eleven.

1    Without testifying standard of care experts, Plaintiffs' argument lacks focus and

2    direction. In short, though, they seem to argue that Dr. Coffman, Dr. Wood, and Ms.

3    Dietzman breached the standard of care in suspecting nonaccidental trauma. Plaintiffs

4    argue that the purported negligence was so grossly negligent that a layperson could

5    readily recognize it, and therefore, standard of care experts are not required. Arizona

6    law and the facts of this case do not support Plaintiffs' patchwork argument.

7    In *Rudy v. Meshorer*, 146 Ariz. 467, 470 (App.1985), the Arizona Court of

8    Appeals discussed the types of medical malpractice cases in which an expert was not

9    required (e.g., a large cloth left in an abdomen after surgery, steel sutures left in a

10   patient, and loss of a portion of a needle in the surgical site). The facts of *Rudy* were

11   much different and akin to the facts of this case. The claims in *Rudy* involved the

12   diagnosis of a patient's suicide potential. The Arizona Court of Appeals held that it is a

13   very difficult diagnosis to make and involves a subjective judgment, and "[n]o jury

14   could properly determine whether or not the facts available to Dr. Meshorer about Rudy

15   justified his determination that he was not a suicide risk without the assistance of expert

16   testimony." *Rudy*, 146 Ariz. at 470.

17   The same is true of a diagnosis of suspected nonaccidental trauma. A jury could

18   not determine, without the assistance of expert testimony, whether Dr. Coffman's, Dr.

19   Wood's, and Ms. Dietzman's diagnoses and treatment were reasonable. Each provider

20   has a different medical specialty with different standards of care. The applicable

21   standards of care and whether the providers complied with them is far beyond the

22   knowledge of a lay jury. Again, it should be noted that all of the PCH Defendants'

23   standard of care experts are unrebutted.

24   In their Response, Plaintiffs make arguments regarding Dr. Wood's medical

25   records. The PCH Defendants addressed these issues in their Response to Plaintiffs'

26   Motion for Partial Summary Judgment. (Doc. 349, at p. 25-28, which is incorporated

1 herein by reference.) In their Response, Plaintiffs argue that Dr. Coffman relied on the

2 purportedly inaccurate records to "rubber-stamp the allegations of abuse." (Doc. 352, at

3 p. 23, lns. 22-24.) Plaintiffs provide no citation to evidence, because there is no

4 evidence that Dr. Coffman, or any other PCH provider, relied on purported inaccuracies

5 in Dr. Wood's medical records.

6        Prior to Plaintiffs being unable to find standard of care experts to support their

7 claims, Plaintiffs agreed that expert witness testimony was required to support their

8 medical negligence claim. The only thing that has changed is Plaintiffs' inability to find

9 supporting expert witnesses. The PCH Defendants should be granted summary

10 judgment on Claim Eleven.

11      **E.      The PCH Defendants Are Entitled to Summary Judgment On Claim Fifteen (Intentional Infliction Of Emotional Distress).**

12

13      In an effort to save their intentional infliction of emotional distress claim,

14 Plaintiffs recycle their same unsupported assertions and misstatements of evidence.

15 Plaintiffs have no evidence that PCH, Dr. Coffman, Dr. Wood, and Ms. Dietzman's

16 conduct was "extreme and outrageous"; that they intended to cause emotional distress or

17 recklessly disregarded the near certainty that such distress would result from their

18 conduct; and that severe emotional distress indeed occurred as a result of their conduct.

19 *See Citizen Publishing Company v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110

20 (2005). Defendants lack any evidence that the PCH Defendants' conduct "completely

21 violate[d] human dignity" and "strike[s] to the very core of one's being, threatening to

22 shatter the frame upon which one's emotional fabric is hung." *Christakis v. Deitsch*, 250

23 Ariz. 246, 250, 478 P.3d 241, 245 (App.2020)(*quoting Pankratz v. Willis*, 155 Ariz. 8,

24 15, 744 P.2d 1182, 1189 (App. 1987)). Plaintiffs have not come close to presenting any

25 evidence that would meet this extraordinarily high burden. Accordingly, the PCH

26 Defendants should be granted summary judgment on Claim Fifteen.

**III.   CONCLUSION**

After a protracted and extended discovery period, Plaintiffs still lack evidence to support their claims against the PCH Defendants. Plaintiffs are right about one thing. This is a sad case. But they are right for the wrong reasons. It is a sad case because S.Z.S. sustained severe injuries for which the only explanation supported by the evidence is nonaccidental trauma.

The PCH Defendants were correct in February/March of 2019, and they are correct today. S.Z.S. was the victim of abuse, and it was reasonable for the PCH Defendants to report the suspected abuse. While what happened to S.Z.S. cannot be changed, it is time for this case to come to a conclusion. The PCH Defendants should be granted summary judgment.

DATED this 20th day of November, 2023.

**GUST ROSENFELD, P.L.C.**

By  /s/ Kari B. Zangerle
Kari B. Zangerle
Robert C. Stultz
One East Washington Street, Suite 1600
Phoenix, AZ  85004-2553
*Attorneys for Defendants Phoenix
Children's Hospital; Dr. William S. Wood
and Rachel Wood; Dr. Kathryn Coffman;
Haley Dietzman and Roald Dietzman;
Zachary Dion; and Carey Lewis*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2023, I electronically filed the foregoing with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to all parties, and will e-mail all notification of such filing to all non-CM/ECF system participants.

Thomas A. Connelly, Esq.
Robert T. Mills, Esq.
Sean A. Woods, Esq.
Mills & Woods Law PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ  85014
*Attorneys for Plaintiffs*

DeeAn Gillespie Strub, Esq.
Jenny D. Jansch, Esq.
Gillespie, Shields & Taylor
7319 North 16th Street
Phoenix, AZ  85020
*Attorneys for Plaintiffs*

Georgia A. Staton, Esq.
Ravi V. Patel, Esq.
Jones, Skelton & Hochuli, PLC
40 North Central Ave., Suite 2700
Phoenix, AZ  85004
*Attorneys for Defendants State of Arizona and ADOCS*

Cynthia Y. Patane, Esq.
Rachel L. Werner, Esq.
Gordon Rees Scully Mansukhani, LLP
One Renaissance Square
Two North Central Ave., #2200
Phoenix, AZ  85004
*Attorneys for Defendant Brendan Cassidy*

By /s/ Melody Kern