**GUST ROSENFELD P.L.C.**
Kari B. Zangerle, No. 013164
Robert C. Stultz, No. 025781
kzangerle@gustlaw.com
rstultz@gustlaw.com
One East Washington Street, Suite 1600
Phoenix, Arizona 85004-2553
(602) 257-7422
Fax: (602) 254-4878

*Attorneys for Defendants Phoenix Children's Hospital; Dr. William S. Wood and Rachel Wood; Dr. Kathryn Coffman; Haley Dietzman and Roald Dietzman; Zachary Dion; and Carey Lewis*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Honor Duvall, an individual; Donald Sankey, Junior, an individual; S.Z.S., a minor, through his parents and guardians Honor Duvall and Donald Sankey,<br><br>Plaintiffs,<br><br>v.<br><br>Arizona Department Of Child Safety, a governmental entity; *et al.*,<br><br>Defendants. | Case No.: 21-CV-00167-PHX-ROS<br><br>**THE PCH DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**(Oral Argument Requested)** |

Defendants Phoenix Children's Hospital; Dr. Kathryn Coffman; and Haley Dietzman and spouse Roald Dietzman ("PCH Defendants"), through counsel, submit their request for attorneys' and costs.

For more than three years, Plaintiffs litigated meritless claims centered around a non-existent conspiracy to deprive them of their civil and constitutional rights. The absence of supporting evidence should have been apparent to Plaintiffs from the

beginning, and certainly after more than 20 depositions and thousands of pages of produced documents failed to provide any evidence. Nonetheless, Plaintiffs persisted until the inevitable conclusion – summary judgment in favor of the PCH Defendants.

Pursuant to 42 U.S.C. § 1988(b), the PCH Defendants are seeking $501,983.50 in attorneys' fees, which includes the fees incurred in bringing this Motion. That is nearly $20,000.00 less than the fees they paid prior to the entry of Judgment. The PCH Defendants have excluded attorneys' fees directly related to the claims against William Wood, M.D., Carey Lewis, and Zachary Dion, each of whom were PCH employees individually named as Defendants. The civil rights claim against Dr. Wood was dismissed, and all claims against Mr. Lewis and Mr. Dion were dismissed, with each party to bear their own fees and costs as to those claims. For the recoverable costs related to the remaining claims, the PCH Defendants are seeking $48,677.54 in costs. This represents a small portion of the total costs of $286,988.96 paid by PCH.

Pursuant to Local Rule 54.2(d)(1), on July 23, 2024, Robert Stultz, counsel for the PCH Defendants, and Thomas Connelly, counsel for Plaintiffs, had a telephonic meet and confer and were unable to resolve the PCH Defendants' claim for attorneys' fees and costs. *See* correspondence from Robert Stultz to Thomas Connelly, dated July 26, 2024, attached as Exhibit 1.

## **MEMORNDUM OF POINTS AND AUTHORITIES**

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs alleged four causes of action against the PCH Defendants[1]. In the Complaint, Plaintiffs brought Claim Six under 42 U.S.C. § 1983. Plaintiffs alleged that Dr. Coffman conspired with several of the State Defendants to violate Plaintiffs Honor

---

[1] Plaintiffs alleged several causes of action against Dr. William Wood, Mr. Zachary Dion, and Mr. Carey Lewis. Since those causes of action were dismissed with prejudice, with each party to bear their own fees and costs, they are not part of the remaining PCH Defendants' Motion for Attorneys' Fees and Costs.

1 Duvall's and Donald Sankey's right to freedom of association, under the First Amendment, and Due Process, under the Fourteenth Amendment of the U.S. Constitution, to not have S.Z.S. unlawfully seized and S.Z.S.'s right to be free from unlawful seizure, under the Fourth and Fourteenth Amendments.

When the PCH Defendants filed their Motion for Summary Judgment, the Section 1983 civil rights/conspiracy claim was pled only against Dr. Coffman. Yet, Plaintiffs continued to argue that other PCH staff were involved in the non-existent conspiracy, the same tactic they had taken throughout discovery. For example, in their Response to the PCH Defendants' Motion for Summary Judgment, Plaintiffs described the non-existent conspiracy as "multi-layered, with Defendants at the core of each layer." (Doc. 352, at p. 17, ln. 11.) Plaintiffs argued that it began with Defendant Ms. Dietzman begging the PCH ED or trauma doctors to admit S.Z.S. so a full SNAT work up could be completed. (Doc. 352, at p. 17, lns. 12 – 13.) Plaintiffs further argued that Dr. Cassidy, Dr. Wood, and others participated in the non-existent conspiracy. None of these allegations were properly pled or supported by evidence, as discussed in the Court's Order dated July 18, 2024.

Plaintiffs also asserted several related pendent state law claims, based on the same alleged conduct that purportedly deprived Plaintiffs of their rights when the PCH Defendant reported the suspected abuse to DCS. In Claim Eleven, Plaintiffs alleged medical negligence, under Arizona law. Plaintiffs alleged that Dr. Coffman and Ms. Dietzman had "a duty to provide the minimum accepted standard of care in their treatment of S.Z.S." (Doc. 1 at ¶ 270.) Plaintiffs further alleged that Dr. Coffman and NP Dietzman "breached their duty and failed to provide the minimum accepted standard of care in their treatment of S.Z.S." (Doc. 1 at ¶ 271.) In Claim Fifteen, Plaintiffs allege intentional infliction of emotional distress against PCH, Dr. Coffman and Ms. Dietzman, under Arizona law. (Doc. 1 at ¶ 291 – 295.) The purported basis for the claim

1  was the "making of false reports of abuse to DCS." *Id.* Claim Sixteen was alleged
2  against only PCH. (Doc. 1 at ¶ 296 – 300) Plaintiffs alleged that PCH was liable for the
3  purported negligence of its employees and agents. *Id.*

4        While the case was pending, Plaintiffs sought, and obtained, three extensions of
5  the expert disclosure deadlines. Before the expiration of the expert disclosure deadline,
6  Plaintiffs admitted that expert testimony was required. In correspondence dated March
7  28, 2022, counsel for Plaintiffs wrote, "no one disputes that such expert testimony will
8  be required here for the claims against your individually named clients." (Doc. 109-1 at
9  2.) Yet, after failing to disclose experts to testify that any of the PCH Defendants
10 breached the standard of care, Plaintiffs refused to dismiss the claims and continued to
11 litigate the case.

12       On July 6, 2023, Plaintiffs settled with the State Defendants. In a letter dated
13 August 4, 2023, the PCH Defendants advised Plaintiffs that pursuant to ER 1.15, the
14 PCH Defendants requested the funds from Plaintiffs' settlement not be disbursed until
15 the end of the litigation, as the claims against the PCH Defendants provide for the
16 recovery of attorneys' fees and costs, if the PCH Defendants are the prevailing parties.
17 *See* correspondence from Kari Zangerle to Tom Connelly, attached as Exhibit 2. The
18 PCH Defendants further requested to be advised if Plaintiffs intended to disburse the
19 settlement funds, so the issue could be addressed with the court. *Id.* During the meet and
20 confer on July 23, 2024, Plaintiffs' counsel stated that they had disbursed the settlement
21 funds without notifying the PCH Defendants. *See* Exhibit 1.

22       On July 18, 2024, the Court granted the PCH Defendants' Motion for Summary
23 Judgment.  (Doc. 365.) The Court entered Judgment in favor of the PCH Defendants
24 that same day. (Doc. 366.) As discussed in more detail in Section II.A.2 below, the
25 Court concluded that Plaintiffs made claims without evidentiary support and offered
26 conjecture instead of evidence. The Court described Plaintiffs' argument against civil

immunity as "bizarre" and "without merit."

## II. ARGUMENT

### A. Attorneys' Fees and Expenses Under 42 U.S.C. § 1988.

#### 1. The PCH Defendant are eligible for an award of attorneys' fees.

The PCH Defendants are eligible for an award of attorneys' fees and costs for prevailing on Plaintiffs' Section 1983 civil rights/conspiracy claim and the related pendant state law claims. The prevailing party in a Section 1983 claim is eligible for an award of attorneys' fees and costs:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b). The PCH Defendants are the prevailing parties. There is no room for doubt or argument. On July 18, 2024, the Court granted the PCH Defendants' Motion for Summary Judgment and entered Judgment in favor of Defendants. Accordingly, the PCH Defendants are eligible for an award of attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

#### 2. The PCH Defendants are entitled to an award of attorneys' fees and expenses.

When a defendant is the prevailing party in a Section 1983 claim, the court may award attorneys' fees to the defendant "if the plaintiff's action was 'unreasonable, frivolous, meritless, or vexatious.'" *Galen v. County of Los Angeles*, 477 F.3d 652, 666

1 (9th Cir.2007)(*quoting Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994)). "An action becomes frivolous when the result appears obvious or the arguments are wholly without merit." *Id* (*citing Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). A defendant can recover attorneys' fees if the plaintiff violates this standard at any point in the litigation, not just at its inception. *Id*.

In a civil rights action, the Court may award fees on a pendent state claim based on a common nucleus of operative facts with a substantial federal claim. *Carreras v. City of Anaheim*, 768 F.2d 1039 (9th Cir.1985). *See also Munson v. Milwaukee Bd. Of School Directors*, 969 F.2d 266, 272 (7th Cir.1992) ("If a plaintiff can be awarded fees for work done on an *unsuccessful* pendent state claim which is factually or legally related to a successful civil rights claim, then defendants likewise should be entitled to fee awards for defending frivolous pendent claims factually or legally related to frivolous civil rights claims.")

The PCH Defendants also are entitled to the attorneys' fees incurred in bringing this Motion for Attorneys' Fees and Costs. "[I]t's now well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir.2013) (*quoting Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir.1996)). Fees for time spent preparing fee applications are recoverable, even when the court does not award the full amount of fees requested. *Id* (*citing Harris v. McCarthy*, 790 F.2d 753, 758-59 (9th Cir.1986).

Plaintiffs' claims against the PCH Defendants were unreasonable, frivolous, meritless, or vexatious. In the Order granting the PCH Defendants summary judgment, the Court noted several times that Plaintiffs made claims without citing to evidence. After discussing Plaintiffs' conspiracy allegations against Dr. Coffman, the Court pointed out that "[i]t is not the Court's role to find evidentiary support for Plaintiff's contentions, but even with the Court's best efforts to do so, these contentions are not

supported by admissible evidence. Rather, they are mere conjecture." (Doc. 365, at p. 8, lns. 14-16.) Plaintiffs never produced any evidence of a conspiracy to violate their civil and constitutional rights. To make matters worse, Plaintiffs implied, **without evidence**, that Dr. Coffman and other PCH providers violated their rights out of greed and racial bias.

Plaintiffs' arguments in the related pendent state law claims were equally unreasonable, frivolous, and meritless. It should have been apparent to Plaintiffs from the beginning that the PCH Defendants met the low bar to trigger civil immunity, under A.R.S. § 13-3620(A)(1). Certainly, as discovery progressed, Plaintiffs should have known that they lacked evidence to overcome the presumption that the PCH Defendants acted in good faith when reporting the suspected abuse of S.Z.S. By the time dispositive motions were filed, Plaintiffs relied on what the Court described as a "bizarre suggestion that the PCH Defendants were not providing SZS medical treatment and instead 'merely conducted forensic examinations in the context of ongoing law enforcement and DCS criminal investigations,'" an argument the Court concluded was "without merit." (Doc. 365, at p. 11, lns. 2-5.)

While prevailing defendants are not awarded attorneys' fees automatically, under 42 U.S.C. § 1988(b), defendants may be awarded fees when plaintiffs pursue unreasonable, meritless, or frivolous claims. That is exactly what happened here, at great expense to the PCH Defendants.[2] An award of attorneys' fees is appropriate.

    **3.    The attorneys' fees requested by the PCH Defendants are reasonable.**

The PCH Defendants request an award of attorneys' fees in the amount of $501,983.50. The total amount of attorneys' fees paid by the PCH Defendants is

---

[2] Moreover, as discussed further below, this is the **second** action dismissed by this Court brought by this same Plaintiff's counsel against many of the same PCH Defendants.

$520,895.50, before the entry of Judgment. The PCH Defendants' request for attorneys' fees is supported by the Affidavit of Kari Zangerle, Esq., attached as Exhibit 3.

To determine the amount of a reasonable fee pursuant to Section 1988, the court applies the two-step "lodestar" method. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir.2013). First, "[t]he lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (1996) (*citing McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir.1995)). The product of the lodestar computation is a presumptively reasonable fee, under Section 1988. *Gonzalez*, 729 F.3d at 1202. "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir.1994) (*citing Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir.1988), *judgment vacated on other grounds*, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.ED.2d 982 (1989)).

Second, "[a]fter making that [lodestar] computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales*, 96 F.3d at 363-64. The *Kerr* factors include the following:

(1) the time and labor required,

(2) the novelty and difficulty of the questions involved,

(3) the skill requisite to perform the legal service properly,

(4) the preclusion of other employment by the attorney due to acceptance of the case,

(5) the customary fee,

(6) whether the fee is fixed or contingent,

(7) time limitations imposed by the client or the circumstances,

(8) the amount involved and the results obtained,

(9) the experience, reputation, and ability of the attorneys,

(10) the 'undesirability' of the case,

(11) the nature and length of the professional relationship with the client, and

(12) awards in similar cases.

*Kerr v. Screen extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). Under the lodestar method for computing reasonable attorneys' fees, many of the *Kerr* factors have been subsumed in the lodestar determination as a matter of law. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir.1988) (*citing Blum v. Stetson*, 465 U.S. 886, 898-900 (1984)). Among the subsumed *Kerr* factors presumably taken into account in the reasonable hours or the reasonable rate components of the lodestar calculation are the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained. *Morales*, 96 F.3d 359, fn. 9.

      a.    **The lodestar calculation of the PCH Defendants' reasonable attorneys' fees.**

The PCH Defendants request an award of attorneys' fees in the amount of $501,983.50. This is less than the total amount of attorneys' fees actually paid by the PCH Defendants ($520,895.50, before the entry of Judgment). In arriving at the requested amount of $501,983.50, the PCH Defendants have excluded 377 hours of billed time. The total time claimed in this Motion is 2,270.2 hours, which includes 54.9 hours post-Judgment, most of which is related to the preparing of this Motion, with billing rates ranging from $140.00 to $275.00 per hour. The fee invoices supporting this request are attached as Exhibit 4.

For each timekeeper, the following chart provides a breakdown of the rate, total hours billed, and the total hours and attorneys' fees claimed in this Motion. At the time of initial retention, undersigned counsel was at Campbell, Yost, Clare & Norell, P.C. ("CYCN"). In June of 2022, undersigned counsel moved to Gust Rosenfeld, P.L.L.C.

("GR"). The below chart includes the attorneys' fees incurred by the PCH Defendants from both law firms.

| Timekeeper | Rate | Total Hours Billed | Total Hours Claimed | Total Fees Claimed |
|---|---|---|---|---|
| Kari Zangerle, Esq. | $275.00 (Partner rate) | CYCN: 355.5<br>GR: 606.5 | CYCN: 309.5<br>GR: 573.8 | $242,907.5 |
| Mary Isban, Esq. | $275.00 (Partner rate) | CYCN: 70.1 | CYCN: 63.3 | $17,407.50 |
| Robert Stultz, Esq. | $230.00 (Associate rate)<br>$275.00 (Partner rate, after January 1, 2024) | GR: 571.8<br><br>GR: 40.7 | GR: 554.9<br><br>GR: 40.7 | $138,819.50 |
| Pamela Nelson, R.N. (Licensed Nurse Consultant) | $145.00 | CYCN: 72.3 | CYCN: 61.4 | $8,903.00 |
| Mary Moore (Licensed Nurse Consultant) | $145.00 | CYCN: 98.0 | CYCN: 96.6 | $14,007.00 |
| Kathleen Gain (Licensed Nurse Consultant) | $145.00 | CYCN: 28.5 | CYCN: 27.8 | $4,031.00 |
| Judith Douglas (Licensed Nurse Consultant) | $140.00 | CYCN: 51.7<br>GR: 384.3 | CYCN: 44.2<br>GR: 333.5 | $52,878.00 |
| Lee Davis (Paralegal) | $140.00 | CYCN: 201.5<br>GR: 2.4 | CYCN: 0<br>GR: 0 | 0 |

| | | | | |
|---|---|---|---|---|
| Annette Shivley (Paralegal) | $140.00 | GR: 128.0 | GR: 128.0 | $17,920.00 |
| Kristine Yoder (Licensed Nurse Consultant) | $140.00 | GR: 36.5 | GR: 36.5 | $5,110 |
| | | 2,647.8 | 2,270.2 | $501,983.50 |

The number of hours claimed by the PCH Defendants (2,270.2) is reasonable. At the heart of this case were Plaintiffs' allegations that Dr. Coffman and others conspired to deprive Plaintiffs of their civil and constitutional rights and, in doing so, provided SZS with negligent medical care and intentionally inflicted emotional distress. To try to prove a conspiracy for which there was no evidence, Plaintiffs attacked decades of well-established and accepted medicine. This required the PCH Defendants to retain expert witnesses from multiple relevant disciplines, including, but not limited to, forensic pediatrics, pediatric radiology, pediatric orthopedics, obstetrics, and pediatric ophthalmology. The PCH Defendants retained 11 expert witnesses. While the PCH Defendants are not claiming the fees and costs charged by the expert witnesses, Plaintiffs' allegations and meritless arguments required the PCH Defendants to incur significant attorneys' fees in responding to the medical allegations to rebut the conspiracy claim.

Discovery in this case was complicated and protracted. The parties produced thousands of pages of documents. There were more than 20 depositions, many of which lasted for more than five hours. Plaintiffs went on fishing expeditions seeking evidence of a non-existent conspiracy, resulting in several discovery disputes. Plaintiffs implied, without evidence, that the conspiracy involved racial bias or prejudice. This required expensive discovery that resulted in no evidence of racial bias or prejudice. Plaintiffs also implied, without evidence, that the conspiracy was financially motivated. This

resulted in expensive financial discovery that also resulted in no evidence of a conspiracy.

On multiple occasions, the PCH Defendants advised Plaintiffs that the defendants were immune from civil liability on the state law claims and Plaintiffs' lack of expert witnesses to testify on the standard of care precluded those claims. On August 29, 2022, after Plaintiffs failed to disclose standard of care experts, the PCH Defendants requested that Plaintiffs dismiss the claims against the PCH Defendants. *See* correspondence from Kari Zangerle, attached as Exhibit 5. As noted above, Plaintiffs had previously admitted expert witness testimony was required for the state law claims, but they reversed their position after failing to retain standard of care experts. Even if the Plaintiffs had dismissed only the state law claims in September of 2022, it would have significantly narrowed the scope of discovery and reduced the attorneys' fees the PCH Defendants incurred.

The rates of $140 to $275 per hour are well within the reasonable market rates for the services provided. *See* Exhibit 3, Affidavit of Kari Zangerle, at ¶ 8. The Partner Rate of $275.00 per hour and Associate Rate of $230 per hour are reasonable. Kari Zangerle is lead counsel and has more than thirty years' experience practicing healthcare law. Mary Isban, who assisted with the matter at CYCN, also has more than thirty years' experience practicing healthcare law. Robert Stultz has been licensed to practice law for sixteen years and has more than nine years' experience in healthcare law. Several licensed nurse consultants assisted with the case at various times during the pendency of the litigation, with a rate of $140 per hour. Their assistance was invaluable in assessing and preparing a defense for the complicated medical issues. *See* Exhibit 3, Affidavit of Kari Zangerle, at ¶ 8.

The reasonableness of the PCH Defendants' fee application is reinforced by considering the China Doll Affidavit filed by Plaintiffs' counsel in the Arizona state

Probate Court, when seeking approval of the settlement with the State Defendants. In the Affidavit, Plaintiffs' counsel averred that they "expended in excess of 2,529.20 hours working on this matter." *See* Exhibit 6A, at ¶ 4. That is 259 more hours than claimed by the PCH Defendants in this Motion. Moreover, Plaintiffs submitted the China Doll Affidavit on November 1, 2023, before the motions for summary judgment and *Dabuert* motions were fully briefed. Plaintiffs' billed time likely has increased even further since the Affidavit.

In the Amended Petition for Appointment of Conservator for Minor and Approval of Settlement, Plaintiffs' counsel represented to the Probate Court that they had "earned fees in the amount of $714,499.94." *See* Exhibit 6B, at ¶ 11. That amount is $212,516.44 **more** than what the PCH Defendants are requesting in this Motion. The Fee Agreement filed by Plaintiffs in support of the China Doll Affidavit included rates of $295 - $600 for members, $175 - $400 for associates, $200 - $400 for of counsel, and $175 - $205 for paralegals. *See* Exhibit 6C. In the Probate Court filings, Plaintiffs did not provide a breakdown of how many hours each timekeeper worked and their hourly rate. However, the 2,529.2 hours and $714,499.94 in fees claimed by Plaintiffs equate to an average billable rate of $282.50 per hour, which is more than any of the rates claimed by the PCH Defendants in this Motion.

The lodestar calculation resulting in the PCH Defendants' fee request for $501,983.50 is presumptively reasonable. *See Gonzalez*, 729 F.3d at 1202.

        **b.**    **The lodestar calculation should not be adjusted.**

Many of the *Kerr* factors have been subsumed within the lodestar determination, as a matter of law. *Cunningham*, 879 F.2d at 487. This is not one of the rare cases in which the lodestar figure should be adjusted. *See Harris*, 24 F.3d at 18. None of the non-subsumed *Kerr* factors apply or justify a departure from the lodestar figure of $501,983.50.

### 4. Expenses Under 42 U.S.C. 1988(b).

The PCH Defendants' out-of-pocket expenses total $286,988.96. Most of those expenses were expert witness fees, which the PCH Defendants incurred to rebut Plaintiffs' meritless and frivolous attacks on the widely accepted medicine on child abuse. Expert witness fees are not recoverable under 42 U.S.C. § 1988(b). The costs that are recoverable, and for which the PCH Defendants request an award, total $48,677.54. It should be noted that this amount is less than the costs Plaintiffs' counsel recovered from the settlement proceeds with the State Defendants.

Under 42 U.S.C. § 1988(b), a prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994) (*quoting Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1216 n. 7 (9th Cir.1986), *reh'g denied and opinion amended,* 808 F.2d 1373 (9th Cir.1987)). The reasonable expenses may be proper, even if greater than taxable costs. *Harris*, 24 F.3d at 20. Courts have held that expenses such as messenger services, computerized legal research, and travel are ordinarily allowed under Section 1988. *Doe ex rel. Doe v. Keala*, 361 F.Supp.2d 1171, 1189 (2005).

The total amount of costs requested by the PCH Defendants is $48,677.54. The below chart identifies each category of expense and the amount requested. Attached as Exhibit 7 is an itemization of the costs within each category, along with supporting documentation.

| Expense Category | Total Amount Requested |
|---|---|
| Transcripts | $30,494.25 |
| Deposition Related Expenses | $2,865.50 |
| Travel Expenses (excluding meals) | $15,274.4 |
| Medical Research | $43.39 |

The costs incurred for the transcripts also are recoverable as a taxable cost under 28 U.S.C. § 1920. *See* Section II.B. below. The PCH Defendants are not seeking a double recovery for these expenses but simply asserting two bases for the award of the expenses. If the Court awards $30,494.25 for the transcripts as a taxable cost, that amount can be deducted from the expense request under 42 U.S.C. § 1988(b).

Each of the expenses identified above were necessary and normally are charged to a fee-paying client, such as PCH. Considering the complexity of the case and number of expert witnesses, deposition transcripts and related deposition expenses (conference rooms) were necessary to prepare for later discovery and possible trial, and for the experts to review to assist with the defense and form their opinions. All the travel expenses were incurred in defending client or expert out-of-state depositions, as well as taking the deposition of Plaintiff's expert Dr. Young in Kansas. The medical research was minimal and necessary for deposition preparation and expert opinions.

The PCH Defendants request an award of costs in the amount of $48,677.54, pursuant to 42 U.S.C. § 1988(b).

### 5. The award of attorneys' fees and expenses should be assessed against Plaintiffs' counsel.

The attorneys' fees award, including expenses, should be assessed against Plaintiffs' counsel Thomas Connelly and DeeAn Gillespie. While Mr. Connelly was the primary attorney, both attorneys made an appearance and thus share in the responsibility.

Pursuant to 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under Section 1927 require a finding that an attorney has acted "recklessly or in bad faith." *U.S. v. Associated Convalescent Enterprises, Inc.*, 766

F.2d 1342, 1346 (9th Cir.1985) (*quoting United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983)). Section 1927 authorizes an award for the litigation as a whole and "may shift the entire financial burden of an action's defense, including attorneys' fees, if the entire course of proceedings was unwarranted and should not have been commenced or pursued." *Blixseth v. Yellowstone Mountain Club, LLC,* 854 F.3d 626, 632 (9th Cir.2017). *See also C.W. v. Capistrano Unified School Dist.*, 784 F.3d 1237 (9th Cir.2015) (affirming a fee award against counsel in a case involving Section 1983 claims).

Plaintiffs' counsel acted recklessly and in bad faith. As discussed above, the Court concluded that Plaintiffs' counsel made civil conspiracy allegations that were mere conjecture and not supported by evidence. Moreover, the Court described Plaintiffs' argument against immunity on the state law claims as "bizarre" and "without merit."

Plaintiffs' counsels' conduct in this case is not an aberration. It is a pattern. Plaintiffs' counsel have a history of filing meritless and frivolous claims against PCH. In *Fidler v. PCH, et al.*, this Court dismissed the plaintiff's claims with prejudice after giving the plaintiff multiple opportunities to plead Section 1983-based conspiracy claims that were not "implausible" and "speculative." (CV-22-00300-PHX-ROS) In the *Fidler* case, Plaintiffs' counsel Mr. Connelly and Ms. Gillespie made implausible and speculative allegations against PCH and Dr. Coffman, among other PCH providers. The Ninth Circuit Court of Appeals affirmed the dismissal.

Not only is it permissible for the court to assess the fees against Plaintiffs' counsel under Section 1927, but it is also the just remedy. On August 4, 2023, the PCH Defendants advised Plaintiffs' counsel Mr. Connelly and Ms. Gillespie to retain the settlement funds in trust, pursuant to E.R. 1.15, as the PCH Defendants intended to seek an award of attorneys' fees if they prevailed in the litigation. *See* E.R. 1.15(e) and (f).

Plaintiffs' counsel did not follow these ethical requirements. Not only did Plaintiffs' counsel not notify the PCH Defendants of their intent to distribute the State Defendants' settlement, Plaintiffs' counsel also did not notify the Arizona Probate Court in their filings about the PCH Defendants' claim. Plaintiffs' counsel may have been eager to collect their fee and recover their total costs in the case out of the settlement with the State Defendants, but in doing so, they exposed their clients and themselves to a fee award.

Considering the lack of evidence in this case, Plaintiffs' counsel's history of filing frivolous claims against PCH and Dr. Coffman, and Plaintiffs' counsel's disbursement of the settlement funds, exposing his clients to a fee award, an assessment of attorneys' fees against Plaintiffs' counsel is appropriate.

### B. Taxable Costs Under 28 U.S.C. § 1920.

The PCH Defendants are entitled to an award of taxable costs in the amount of $30,494.25, under 28 U.S.C. § 1920. Those costs were incurred primarily for deposition transcripts, as well as obtaining transcriptions of audio recordings produced by Plaintiffs. Pursuant to 28 U.S.C. § 1920(2), the court may tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." As discussed above, the transcripts were necessary for use in the case, particularly deposition preparation and expert review, as well as possible trial preparation. *See* the Bill of Costs, incorporated herein by reference, filed contemporaneously with this Motion.

### III. CONCLUSION

The PCH Defendants incurred substantial fees and costs in defending against Plaintiffs' meritless and frivolous claims. For the reasons discussed above, the PCH Defendants request an award of attorneys' fees in the amount of $501,983.50 and costs in the amount of $48,677.54.

DATED this 1st day of August, 2024.

**GUST ROSENFELD P.L.C.**


By /s/ Kari B. Zangerle
Kari B. Zangerle
Robert C. Stultz
One East Washington Street, Suite 1600
Phoenix, AZ  85004-2553
*Attorneys for Defendants Phoenix Children's Hospital; Dr. William S. Wood and Rachel Wood; Dr. Kathryn Coffman; Haley Dietzman and Roald Dietzman; Zachary Dion; and Carey Lewis*

**CERTIFICATE OF SERVICE**

I hereby certify that on  August 1, 2024, I electronically filed the foregoing with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to all parties, and will e-mail all notification of such filing to all non-CM/ECF system participants.

Thomas A. Connelly, Esq.
Robert T. Mills, Esq.
Sean A. Woods, Esq.
Mills & Woods Law PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ  85014
*Attorneys for Plaintiffs*

DeeAn Gillespie Strub, Esq.
Mark Shields, Esq.
Gillespie, Shields, Goldfarb Taylor
7319 North 16th Street
Phoenix, AZ  85020
*Attorneys for Plaintiffs*

| | |
|---|---|
| 1 | Cynthia Y. Patane, Esq. |
| 2 | Rachel L. Werner, Esq. |
|   | Gordon & Rees Scully Mansukhani, LLP |
| 3 | One Renaissance Square |
|   | Two North Central Ave., #2200 |
| 4 | Phoenix, AZ  85004 |
| 5 | *Attorneys for Defendant Brendan Cassidy* |
| 6 | By /s/ Melody Kern |