# Exhibit 3

**GUST ROSENFELD P.L.C.**
Kari B. Zangerle, No. 013164
Robert C. Stultz, No. 025781
kzangerle@gustlaw.com
rstultz@gustlaw.com
One East Washington Street, Suite 1600
Phoenix, Arizona 85004-2553
(602) 257-7422
Fax: (602) 254-4878

*Attorneys for Defendants Phoenix Children's Hospital; Dr. William S. Wood and Rachel Wood; Dr. Kathryn Coffman; Haley Dietzman and Roald Dietzman; Zachary Dion; and Carey Lewis*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Honor Duvall, an individual; Donald Sankey, Junior, an individual; S.Z.S., a minor, through his parents and guardians Honor Duvall and Donald Sankey,<br><br>Plaintiffs,<br><br>v.<br><br>Arizona Department of Child Safety, a governmental entity; *et al.*,<br><br>Defendants. | Case No.: 21-CV-00167-PHX-ROS<br><br>**CHINA DOLL AFFIDAVIT OF KARI B. ZANGERLE** |

STATE OF ARIZONA    )
                   ) SS.
County of Maricopa  )

Kari B. Zangerle, being first duly sworn upon her oath, states as follows:

1.      I am an attorney with the law firm of Gust Rosenfeld, P.C, and previously worked at the law firm Campbell, Yost, Clare & Norell. I have been licensed to practice law since 1990.

2.      While working at Campbell Yost I was retained on or about June 9, 2020, as lead counsel in the Sankey v. PCH matter to defend the hospital and its employees Dr. Kathryn Coffman, Haley Dietzman and her spouse Roald Dietzman, Dr. William Wood, Carey Lewis, NP, and Zachary Dion, NP.

3.      The claims against Defendants Lewis and Dion were dismissed with each party to bear their own fees and costs. The civil rights claim against Dr. William Wood was dismissed with each party to bear their own fees and costs. Our China Doll affidavit does not include fees and costs directly related to the defense of those claims.

4.      On or about June 9, 2020, we began our representation of PCH and the individual Defendants. Our retention agreement provides we would be reimbursed at rates ranging from $140 to $275 per hour. We have attached a copy of our retention agreement to the motion.

5.      We have outlined the fees incurred in our motion for attorney's fees and costs. The PCH defendants are seeking an award of attorneys' fees in the amount of $501,983.50, which includes the fees for preparing this motion. This is less than the total amount of fees paid by the PCH Defendants ($520,895.50), prior to the date of judgment. In arriving at the requested amount of fees, the PCH defendants excluded 377 hours of billed time. The total time claimed in this Motion is 2,270.2.9 hours, with billing rates ranging from $140 to $275. The redacted fee invoices supporting this request are attached as Exhibit 4 to the motion.

6. The number of hours claimed by the PCH Defendants (2,270.2) is reasonable. At the heart of this case were Plaintiffs' allegations that Dr. Coffman and others conspired to deprive Plaintiffs of their civil and constitutional rights and, in doing so, provided SZS with negligent medical care and intentionally inflicted emotional distress. To try to prove a conspiracy for which there was no evidence, Plaintiffs attacked decades of well-established and accepted medicine. This required the PCH Defendants to retain expert witnesses from multiple relevant disciplines, including, but not limited to, forensic pediatrics, pediatric radiology, pediatric orthopedics, obstetrics, and pediatric ophthalmology. The PCH Defendants retained eleven expert witnesses. While the PCH Defendants are not claiming the fees and costs charged by the expert witnesses, Plaintiffs' allegations and meritless arguments required the PCH Defendants to incur significant attorneys' fees in responding to the medical allegations to rebut the conspiracy claim.

7. Discovery in this case was complicated and protracted. The parties produced thousands of pages of documents. There were more than twenty depositions, many of which lasted for more than five hours.

8. The rates of $140 to $275 per hour are well within the reasonable market rates for the services provided. The Partner Rate of $275.00 per hour and Associate Rate of $230 per hour are reasonable. Kari Zangerle is lead counsel and has more than thirty years' experience practicing healthcare law. Mary Isban, who assisted with the matter at CYCN, also has more than thirty years' experience practicing healthcare law. Robert Stultz has been licensed to practice law for sixteen years and has more than nine years' experience in healthcare law. Several licensed nurse consultants assisted with the case at various times during the pendency

of the litigation, with a rate of $140 per hour. Their assistance was invaluable in assessing and preparing a defense for the complicated medical issues.

9. In defending the case, PCH incurred significant expenses of $286,988.96 due to the need to retain expert witness in multiple specialties on standard of care and on causation due to injuries in multiple organ systems. Expert witness fees are not recoverable under 42 U.S.C. § 1988(b). The costs that are recoverable, and for which the PCH Defendants request an award, total $48,677.54.

10. The total amount of costs requested by the PCH Defendants is $48,677.54. The below chart identifies each category of expense and the amount requested. Attached as Exhibit 7 to the PCH Defendants' Motion for Attorneys' Fees and Costs is an itemization of the costs within each category, along with supporting documentation.

| Expense Category | Total Amount Requested |
|---|---|
| Transcripts | $30,494.25 |
| Deposition Related Expenses | $2,865.50 |
| Travel Expenses (excluding meals) | $15,274.40 |
| Medical Research | $43.39 |

11. Each of the expenses identified above were necessary and normally are charged to a fee-paying client, such as PCH. Considering the complexity of the case and number of expert witnesses, deposition transcripts and related deposition expenses (conference rooms) were necessary to prepare for later discovery and trial, and for the experts to review to assist with the defense and form their opinions. All the travel expenses were incurred in defending

client or expert out-of-state depositions, as well as taking the deposition of Plaintiff's expert Dr. Young in Kansas. The medical research was minimal and necessary for deposition preparation and expert opinions.

12. The State of Arizona settled its claims with Plaintiffs in 2023. Upon learning of the settlement, I wrote to Plaintiffs' counsel Tom Connelly and copied his co-counsel DeeAnn Gillespie on the letter.

13. The PCH Defendants advised Plaintiffs' counsel Mr. Connelly and Ms. Gillespie to retain the settlement funds in trust, pursuant to E.R. 1.15, as the PCH Defendants intended to seek an award of attorneys' fees if they prevailed in the litigation. E.R. 1.15(e) and (f) provide as follows:

> **(e)** When in the course of representation, a lawyer possesses property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer. The lawyer shall promptly distribute any portions of the property as to which there are no competing claims. Any other property shall be kept separate until one of the following occurs:
> (1) the parties reach an agreement on the distribution of the property;
> (2) a court order resolves the competing claims; or
> (3) distribution is allowed under section (f) below.
> **(f)** Where the competing claims are between a client and a third party, the lawyer may provide written notice to the third party of the lawyer's intent to distribute the property to the client, as follows:
> (1) The notice shall be served on the third party in the manner provided under Rules 4.1 or 4.2 of the Arizona Rules of Civil Procedure, and must inform the third party that the lawyer may distribute the property to the client unless the third party initiates legal action and provides the lawyer with written notice of such action within 90 calendar days of the date of service of the lawyer's notice.
> (2) If the lawyer does not receive such written notice from the third party within the 90-day period, and provided that the disbursement is not prohibited by law or court order, the lawyer may distribute

the funds to the client after consulting with the client regarding the advantages and disadvantages of disbursement of the disputed funds and obtaining the client's informed consent to the distribution, confirmed in writing.

(3) If the lawyer is notified in writing of an action filed within the 90-day period, the lawyer shall continue to hold the property separate unless and until the parties reach an agreement on distribution of the property, or a court resolves the matter.

(4) Nothing in this rule is intended to alter a third party's substantive rights.

14. Plaintiffs' counsel did not notify the PCH Defendants of their intent to distribute the State Defendants' settlement, Plaintiffs' counsel did not notify the Arizona Probate Court in their filings about the PCH Defendants' claim. Plaintiffs' counsel filed a China Doll Affidavit in the Probate Action seeking a fee of 50% of the settlement amount in addition to $66,644.31 in costs. Plaintiffs' counsel advised our office that no funds were kept in trust to satisfy a future claim by the PCH Defendants for fees and costs. Attorney Robert Stultz from our office confirmed this information in a letter to Plaintiffs' counsel which is attached to the motion.

15. A copy of our legal bills and associated costs are attached to the motion pursuant to LRCiv 54.2.

I declare under penalty and perjury that the foregoing is true and correct.

DATED this __1st__ day of August 2024.

GUST ROSENFELD, P.L.C.

_/s/ Kari B. Zangerle_
Kari B. Zangerle

SUBSCRIBED AND SWORN TO before me this 1st day of August 2024.

[Notary Seal: TIFFANY S. JOHNSON, Notary Public - State of Arizona, COCHISE COUNTY, Commission # 609969, Expires August 24, 2025]

_____
Notary Public

My Commission Expires: August 24, 2025

# GUST ROSENFELD
### 100 YEARS · 1921-2021

■ ONE E. WASHINGTON, SUITE 1600  ■ PHOENIX, ARIZONA 85004-2553  ■ TELEPHONE 602-257-7422  ■ FACSIMILE 602-254-4878 ■

KARI B. ZANGERLE
602-257-7448
kzangerle@gustlaw.com

July 15, 2022

**VIA E-MAIL**

Cary W. Hall, III
Chief Risk and Litigation Counsel
Phoenix Children's Hospital
1919 E. Thomas Road
Phoenix, AZ  85016

Re:     Legal Representation Re:  *Duvall; Sankey v. Phoenix Children's Hospital, et al.*

Dear Cary:

I am writing to acknowledge and thank you for retaining our law firm to represent Phoenix Children's Hospital, Dr. William S. Wood and Rachel Wood, Dr. Kathryn Coffman, Hailey Dietzman and Roald Dietzman, Zachary Dion, and Carey Lewis, in connection with *Duvall; Sankey v. Arizona Department of Child Safety, et al.;* District Court of Arizona, Case No. 21-CV-00167-PHX-ROS.

I am enclosing for your information our "Terms of Engagement for Legal Services" Addendum which sets forth certain information concerning the business aspects of your retention of our firm.  We hope that you find this information useful.

I will serve as the attorney primarily responsible for this firm's representation of Phoenix Children's Hospital, Dr. William S. Wood and Rachel Wood, Dr. Kathryn Coffman, Hailey Dietzman and Roald Dietzman, Zachary Dion, and Carey Lewis in this matter, and therefore will serve as your primary contact at this firm.  As stated in the Addendum, other professionals will also provide services depending upon the way in which matters develop.

As noted in the Addendum, it is this firm's policy to obtain a retainer in an amount appropriate to the client and the matter or matters on which we are engaged.  Given our relationship, no retainer is required.

July 15, 2022
Page 2

      The Addendum sets forth the present range of standard hourly rates for me, our other attorneys, paralegals, law clerks and project assistants. Per our initial correspondence, I will be charging Phoenix Children's Hospital the following hourly rates for our services: $275 for Partner; $230 for Associate; and $140 for Nurse/Paralegal.

      We appreciate being given the opportunity to serve you. Of course, if you have any questions or if there are any matters set forth in these documents which you would like to discuss, please contact me.

      Once again, thank you for the confidence that you have placed in our firm by retaining us. We look forward to working with you.

                                      Very truly yours,

                                      */s/ Kari B. Zangerle*

                                      Kari B. Zangerle
                                      For the Firm

KBZ/mak
Enclosure

# GUST ROSENFELD P.L.C.

## Terms of Engagement for Legal Services

This document sets forth the terms of our engagement as your lawyers. Unless modified in writing by mutual agreement or by your specific billing guidelines, these terms are an integral part of our agreement with you. Therefore, we ask that you review this statement carefully. You should retain the original of this document. Please contact us promptly if you have any questions.

### The Scope of Our Work

You should have a clear understanding of the legal services we will provide. Any questions that you have should be dealt with promptly.

We will at all times act on your behalf to the best of our ability. Any expressions on our part concerning the outcome of your legal matters are expressions of our best professional judgment, but are not guarantees. Such opinions are necessarily limited by our knowledge of the facts and are based on the state of the law at the time they are expressed.

### Who Will Provide the Legal Services

Customarily, each client of the firm is served by a primary attorney contact. The primary attorney should be someone in whom you have confidence and with whom you enjoy working. You are free to request a change of primary attorney at any time. Subject to the supervisory role of the primary attorney, your work, or parts of it, may be performed by other lawyers and legal assistants in the firm. Such delegation may be for the purpose of involving lawyers or legal assistants with special expertise in a given area or for the purpose of providing services on the most efficient and timely basis. Whenever practicable, we will advise you of the names of those attorneys and legal assistants who work on your matters.

### How Fees Will Be Set

The firm's fee structure is based upon hourly rates for all attorneys, paralegals and law clerks, unless otherwise specified. We record time expended on hourly fee matters in increments of one tenth of an hour, and calculate our fees on that basis.

Standard hourly rates for the firm presently range from $260 to $550 for attorneys; from $230 to $250 for paralegals; and $180 for law clerks. These rates are subject to

increase, normally once per year. Advance notice of any increase will be provided in writing before any fees are charged at an increased rate.

Statements for services rendered will be submitted monthly, to more effectively monitor time and expenses as they are incurred. Our computerized billing format will provide you with a description of the efforts we have undertaken on your behalf.

We are often requested to estimate the amount of fees and costs likely to be incurred in connection with a particular matter. Whenever possible, we will furnish such an estimate based upon our professional judgment, but always with a clear understanding that it is not a maximum or fixed fee quotation. The ultimate cost frequently is more or less than the amount estimated.

For certain well-defined services we may quote a flat fee. It is our policy not to accept representations on a flat fee basis except in such defined-service areas or pursuant to a special arrangement tailored to the needs of a particular client. In all such situations, the flat fee arrangement will be expressed in a letter, setting forth both the amount of the fee and the scope of the services to be provided.

### Out-of-Pocket Expenses

We typically incur, and advance on behalf of our clients, a variety of out-of-pocket costs arising in connection with legal services. These include charges made by government agencies and service vendors as well as clerical charges. Whenever such costs are incurred, we will carefully itemize and bill them. Typical of such costs are long distance telephone charges; messenger, courier, express delivery charges and certain other postage; facsimile; printing and reproduction costs; filing fees; deposition and transcript costs; witness fees; travel expenses; charges made by outside experts and consultants, including accountants, appraisers and other legal counsel (unless arrangements for direct billing have been made); and computer assisted legal research charges at an amount that reasonably reflects the cost we incur. We incur outside costs as agents for our clients and incur internal expenses on behalf of our clients, who agree to pay these costs on a regular basis.

### Retainer and Trust Agreements

New clients of the firm are routinely asked to deposit a retainer with the firm. This retainer will be held in trust to be applied to the final bill. By mutual agreement it may be applied against earlier bills. At the conclusion of our legal representation or at such time as the deposit is unnecessary or is appropriately reduced, the remaining balance or an appropriate part of it will be returned to you. If the retainer deposit proves insufficient to cover current expenses and fees, it may have to be increased. Deposits that

are received to cover specific items will be disbursed as provided in our agreement with you, and you will be notified from time to time of the amounts applied or withdrawn.

All trust deposits we receive from you, including retainers, will be placed in a trust account for your benefit. By law, your deposit must be placed in a pooled account if it is not expected to earn a net return, taking into consideration the size and anticipated duration of the deposit and the transaction costs. Other trust deposits will also be placed in the pooled account unless you request a segregated account. By law, interest earned on the pooled account is payable to a charitable foundation established by the Arizona Supreme Court. Interest earned on a segregated trust account will be added to the deposit for your benefit and will be includable in your taxable income.

### Termination

You may terminate our representation at any time, with or without cause by notifying us. If such termination occurs, your papers and property will be returned to you promptly. Our own files pertaining to the case will be retained. Your termination of our services will not affect your responsibility for payment of legal services rendered and out-of-pocket costs incurred before termination and in connection with an orderly transition of the matter.

We are subject to the Code of Professional Responsibility adopted by the Arizona Supreme Court, which lists several types of conduct or circumstances that require or allow us to withdraw from representing a client, including nonpayment of fees or costs, misrepresentation or failure to disclose material facts, action contrary to our advice, and conflict of interest with another client. We try to identify in advance and discuss with our clients any situation that may lead to our withdrawal, and if withdrawal ever becomes necessary, we immediately give the client written notice of our withdrawal.

### Billing Arrangements and Terms of Payment

We will bill you on a regular basis, normally each month, for both fees and disbursements. You agree to make payment within 10 days of receiving our statement. Fees and disbursements not paid within 60 days are subject to a late charge of 1.5 percent per month (18% per annum).

We will give you prompt notice if your account becomes delinquent, and you agree to bring the account or the retainer deposit current. If the delinquency continues and you do not arrange satisfactory payment terms, we will withdraw from the representation and pursue collection of your account. You agree to pay the costs of collecting the debt, including court costs, filing fees, and a reasonable attorney's fee.

**Conclusion of Representation**

Unless previously terminated, our representation in the specified matter will conclude when we send our final statement for services rendered.

**Binding Arbitration of Fee Disputes**

If you disagree with the amount of our fee, please take up the question with your primary attorney contact or with the firm's executive committee. Typically, such disagreements are resolved to the satisfaction of both sides with little inconvenience or formality. Any dispute relating to payment of attorney fees which cannot be resolved in this manner shall be submitted to binding arbitration before the Committee of the State Bar of Arizona on Arbitration of Fee Disputes.

**Notice Required by Law Regarding Privacy of Your Personal Information**

Federal law requires financial service providers, which may include attorneys, to inform their non-business clients of their policies regarding protecting the privacy of client information. Gust Rosenfeld attorneys are bound by professional standards of confidentiality more stringent than those required by the Federal law. The Firm will protect our clients' confidential information.

Types of Nonpublic Personal Information That We Collect

We only collect nonpublic personal information about our clients that is provided to us by clients or obtained by us with their authorization.

Parties to Whom We Disclose Information

For current and former clients, we do not disclose any nonpublic personal information obtained in the course of our practice except as required by law or permitted by our clients.

Protecting the Confidentiality and Security of Current and Former Clients' Information

We retain records relating to professional services that we provide so that we are better able to assist our clients with their professional needs and, in some cases, to comply with professional guidelines. In order to guard clients' nonpublic personal information, we maintain physical and procedural safeguards that comply with professional standards for law firms.