# Exhibit 6C

CLERK OF THE
SUPERIOR COURT
FILED
S. TAVARES, DEP

2023 NOV 13 PM 4:36

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**GILLESPIE, SHIELDS, & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com
*Attorneys for Petitioner*

GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480)-985-4000 ♦ Fax (Mesa): (480) 985-7552

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

| In the Matter of the Conservatorship of:<br><br>**SWAYDE ZAKAI SANKEY**<br>(DOB 12/23/2018)<br><br>Minor. | Case No.: PB2023-051294<br><br>**NOTICE OF FILING FEE AGREEMENT** |
|---|---|

Petitioner, by and through counsel undersigned, hereby provides Notice of Filing Fee Agreements in Support of Petitioners China Doll Affidavit filed on November 13, 2023. Copy of the Legal Representation Agreement and Co-Counsel/Fee Splitting Agreement is attached hereto.

**GILLESPIE, SHIELDS & TAYLOR**

By *\/s/ DeeAn Gillespie Strub*
DeeAn Gillespie Strub
Jenny D. Jansch
7319 North 16th Street
Phoenix, AZ 85020

*Attorneys for Petitioner*



# CO-COUNSEL/FEE SPLITTING AGREEMENT

This Agreement concerns the matter against agents of the Department of Child Safety, an agency of the State of Arizona, agents of the Arizona Attorney General's Office, and medical professionals, individually and in affiliation with Phoenix Children's Hospital, and others, on behalf of Honor N. Duvall and Donald R. Sankey, Jr., and their child, Swayde Sankey (Clients), who are jointly represented by Gillespie, Shields, Goldfarb & Taylor (Gillespie Shields), and Mills & Woods Law (Mills).

Gillespie Shields and Mills will jointly prosecute this action as co-counsel. Gillespie Shields and Mills will divide the labor associated with the prosecution of this case, attorneys' fees, and costs pursuant to the terms set forth below:

**1. Division of Labor and Responsibility.**

It is expressly agreed that the level of responsibility and work shall not be measured by lodestar alone. With respect to the efforts, time, skill, and experience necessary to prosecute this action, including, but not limited to, attending hearings, conducting discovery, drafting pleadings, preparing motions, joining in settlement discussions, participating at trial, and otherwise acting in the best interests of plaintiff, the attorneys agree to divide the work-load as follows:

It is understood and agreed that Mills will serve as lead counsel in this case unless and until the parties agree otherwise.

Gillespie Shields will make every reasonable effort to contribute 50% of the work necessary to prosecute the case. Mills will make every reasonable effort to contribute 50% of the work necessary to prosecute the case.

Each attorney, as appropriate or necessary in the extant circumstances, agrees to execute documents, make appearances, and do other things within reason necessary to prosecute the matter through trial, or to settle the matter on terms favorable to the Clients, as the case may be. Obviously, it will be impossible to ensure that each attorney's relative contribution to the case is exactly equal. Keeping this in mind, each attorney agrees to make reasonable efforts, and reasonable accommodations to each other, to assist one another in the efficient prosecution of the case.

**2. Division of Attorneys' Fees.**

It is agreed that in connection with settlement or judgment in this case, the total amount of attorneys' contingency fees in the case, including contributions and/or deductions for any and all reasonable costs actually and necessarily incurred, shall be divided and/or advanced as follows:



Fees: The first 40% of any contingency fee shall be divided equally between Gillespie Shields and Mills irrespective of hours worked by each particular firm or its personnel; the remaining 60% of any contingency fee recovered shall be divided between the firms in proportion to the total number of billable hours worked on this case by each firm's attorneys as of the date of execution of any settlement agreement or the actual receipt of any monetary judgment. It is understood that the first 40% of any fee is deemed adequate compensation for the work completed to that time by all attorneys.

Any attorneys' fees awarded by the Court or negotiated *via* settlement shall be divided between the firms in proportion to the total number of billable hours worked on this case by each firm's attorneys as of the date of any such award or the execution of any such settlement agreement. These fees shall be the sole and exclusive property of the firm who performed the labor. No other party shall be entitled to any portion of such fee award. *The Firms and Clients agree that any application for fees submitted to the Court* shall include a request for the fees billed by each Firm.

**3. Division of Advanced Costs.**

It is agreed that in connection with this litigation, all of the advanced costs will be split in the following percentages.

> Gillespie Shields will contribute 50% of the costs necessary to prosecute the case.
>
> Mills will contribute 50% of the costs necessary to prosecute the case.

**4. Monthly Billing Statements.**

From the date of execution hereof, each Firm shall, upon the request of the other firm, provide the other with to-date billing statements specifying the amount of all billable time recorded during the preceding period, a description of the nature of any expenditures and the total amount of costs and billable time. Each Firm shall provide the following detailed information on each of said statements:

A) The amount of any costs incurred during the billing period;
B) A description of the nature of such expenditures and the total amount of the costs actually paid; (This "cost" information will be set forth in a separate portion of the monthly billing statement.)
C) Persons who performed services during the billing period;
D) A description of the services performed with sufficient detail to allow for meaningful review; (Counsel shall avoid the use of block billing as courts are reluctant to ascribe full Lodestar values to block billed time entries);



E) The amount of time spent on each described task. (The "fee" section of the statement will be set forth in a separate portion of the monthly billing statement in such a way that it is easily distinguishable from the "cost" section.)

**5. Attorney Charging Lien.**

Each Firm shall have an attorney's charging lien on all claims, causes of action, recoveries and property, both real and personal, involved in the controversy as security for the payment of attorneys' fees and costs. *See, e.g., Linder v. Lewis, Roca, Scoville & Beauchamp,* 85 Ariz. 118 (1958). Such lien shall survive the termination or resignation of either firm from this matter. Funds will not be disbursed to Clients until arrangements satisfactory to each Firm have been made to satisfy all amounts owed on any outstanding account existing between Clients and the Firms.

**6. Confidentiality.**

It is further agreed that this Co-Counsel agreement must be kept confidential unless a Court of competent jurisdiction orders the disclosure of this document.

Dated: Jan. 26, 2021

**Gillespie, Shields, Goldfarb & Taylor**

By:______________________
DeeAn Gillespie

Dated: 29 January, 2021

Mills + Woods Law, PLLC

By:______________________
Thomas Connelly

**I HAVE READ THE FOREGOING CO-COUNSEL AGREEMENT AND UNDERSTAND AND AGREE TO ITS TERMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT DOES NOT IMPACT MY FEE OBLIGATION IN ANY WAY AND WILL NOT INCREASE OR DECREASE THE AMOUNT OF FEES AND COSTS I WILL PAY UPON RESOLUTION OF THE CASE.**

The foregoing arrangement is agreeable and accepted to me this ___ of ________, 2021.

______________________
Honor N. Duvall

______________________
Donald R. Sankey, Jr.




LEGAL REPRESENTATION AGREEMENT
(Contingent Fee Arrangement)
(☐With/☒Without Advance Costs Deposit)

THIS AGREEMENT is entered into as of this 28th day of March 2020, in Phoenix, Arizona, by and between HONOR DUVALL and DONALD SANKEY, Jr., whose principal address is 2308 NW 199th St, Edmond, Oklahoma 73012, for themselves and on behalf of SWAYDE ZAKAI SANKEY, their minor child (hereinafter, Honor, Donald and Swayde collectively referred to as "Client"), and MILLS + WOODS LAW PLLC, 5055 North 12th Street, Suite 101, Phoenix, Arizona 85014 (hereinafter referred to as "Counsel").

1. **SCOPE OF ENGAGEMENT.**

1.1. Matter Involved. Client has engaged Counsel to undertake the legal representation of Client in a matter (hereinafter referred to as the "Matter") involving:

> Potential claims against the Arizona Department of Child Safety and Phoenix Children's Hospital for negligence, gross negligence, and violation of their parental and family civil rights as to their natural born child, namely Swayde Zakai Sankey, a minor (DOB 12/23/2018), among other possible claims.

1.2. Counsel Functions. Counsel agrees to provide its legal services in return for the covenants and promises made by Client herein. Counsel will perform such legal services as it shall deem appropriate to the Matter. It is specifically understood and agreed by Client that Counsel does not, by this Agreement, promise to perform any specific act of legal representation, nor does Counsel promise to obtain any particular result. Client acknowledges that Client has relied upon no oral representations to the contrary in entering into this Agreement.

1.3. Client Functions. Client agrees to perform the following functions:

(a) Payment. To pay Counsel for the performance of such legal services, and to pay for all fees, costs, charges and expenses incurred in connection therewith, as specified in Section 2 below.

(b) Cooperation. Client will assist and cooperate fully with Counsel with respect to this engagement. In connection with this engagement, Client will be available to discuss issues as they arise, comment on and approve draft documents we prepare, and attend and participate in meetings, preparation sessions, court proceedings, and other activities. Client also agree to be truthful and to fully and accurately disclose to us all facts that may be relevant to the matter or that we otherwise may request. You will timely provide any new information that you receive about the matter so that we can represent you effectively.

(c) Multiple Clients. If Counsel is representing multiple Clients jointly in the Matter, it is each Client's responsibility to advise Counsel if any information concerning the Matter is confidential and is to be withheld from the other Clients. Otherwise, all relevant communications received from any Client in the Matter will be fully disclosed to the others. If such a situation arises, Counsel will advise the other Clients that a confidence exists (without divulging it) and will determine if any of the other Clients has any objection to Counsel receiving, retaining, and withholding from them such information. Counsel retains the right to withdraw from representing any one or more of Clients involved, if in the sole discretion of Counsel, a conflict of interest arises by reason of such confidences which mandates such a withdrawal.

(d) Other. Such other functions as may be reasonably requested by Counsel from time to time.

(e) Authorization and Decision-Making. Client authorizes and directs Counsel to take all actions which Counsel deems advisable on Client's behalf in the Matter. Counsel agrees to notify Client of all significant developments and to consult with Client in advance as to any significant decisions attendant to those developments.




**2. LEGAL FEES AND EXPENSES.**

2.1. Method of Determining Fees. Client and Counsel agree that the following method is to be used for determining the amount of legal fees:

(a) Client agrees to pay Counsel a fee contingent upon the outcome of the Matter. If any recovery is made in the Matter on Client's behalf, Client agrees to pay to Counsel, for legal services rendered, a sum equal to:

40% of any and all sums recovered by way of settlement of the Matter or any portion thereof prior to instituting a lawsuit; or

50% of any and all sums recovered either as a result of trial or by way of settlement of the Matter or any portion thereof after a lawsuit has been instituted; or

55% of any and all sums recovered if any judgment is appealed, either on behalf of Client or by any adverse party, or if garnishment or any proceeding after judgment has to be brought to collect the judgment or any portion thereof; or

55% of any and all sums recovered if the Matter is the subject of a retrial as ordered by a trial or appellate court.

If there is no recovery, except as provided in Section 3 hereof, there shall be no fees owed by Client to Counsel for representation in the Matter. ~~Client agrees, however, that, regardless of recovery, Client shall be responsible for and shall pay all other fees, costs, charges and expenses as described in Section 2.2 herein.~~

(b) Client agrees that Counsel may deduct from the proceeds of any recovery the applicable fee as agreed upon above, along with all other fees, costs, charges and expenses as described in Section 2.2 herein for which Client is responsible and which remain unpaid at the time the recovery proceeds are received.

(c) Such fee shall be computed on the basis of the gross recovery. The gross recovery will be total amounts recovered, including cancellation or forgiveness of debt owed by Client, punitive damages, attorneys' fees, interest, and the fair market value of any property, real or personal, tangible or intangible, recovered whether by settlement or judgment, without reduction for the fees, costs, charges and expenses paid by Client or advanced by Counsel in connection with providing legal representation to Client in the Matter. The fair market value of any property shall be agreed upon by Client and Counsel, and, if they are unable to agree, shall be determined by an appraiser mutually agreeable to Counsel and Client and if Counsel or Client cannot agree upon an appraiser, an appraiser selected by a Judge of the Superior Court of Maricopa County, Arizona.

(d) Counsel agrees to make no compromise or settlement in the Matter without the approval of Client as to the specific settlement or compromise. Counsel agrees to notify Client whenever an offer of settlement or compromise is received by Counsel, and to inform Client of the amount of that offer, and the recommendation of Counsel as to the acceptability thereof. Likewise, Client agrees to make no compromise or settlement in the Matter without the approval of Counsel. Client agrees to notify Counsel whenever an offer of settlement or compromise is received by Client, and to inform Counsel of the amount and terms of any such offer.

(e) Client hereby grants Counsel a lien upon, and security interest in, the claims or causes of action and on any sum recovered by way of settlement and on any judgment that may be recovered in an amount equal to Counsel's fees and other fees, costs, charges and expenses incurred by Counsel pursuant to this Agreement. Counsel may, in its discretion, execute on Client's behalf and cause to be filed with appropriate agencies, UCC Financing Statements evidencing the foregoing security interest. Counsel shall have all general, possessory, or retaining liens, and all special or charging liens known to the common law or available under law.

480.999.4556 | millsandwoods.com
5055 N. 12th St. STE 101, Phoenix, Arizona 85014



(f) Client hereby authorizes Counsel to fully investigate the facts and the law relative to the Matter. Upon the conclusion of such investigation Counsel shall have the discretionary right to determine that it is not feasible to pursue the Matter, and upon notification to Client of such determination Counsel shall be entitled to withdraw from any further representation of Client pursuant to this Agreement. In such event no legal fees shall be payable to Counsel, but Client agrees to promptly pay Counsel for all fees, costs, charges and expenses incurred pursuant to Section 2.2 hereof prior to the date of such withdrawal.

(g) In the event a settlement proposal is made to Client with the affirmative recommendation of Counsel, Counsel shall have the right, if such settlement proposal is rejected by Client, to withdraw from any further representation of Client pursuant to this Agreement upon written notice thereof by Counsel to Client. In such event Client agrees to promptly pay Counsel for all services rendered by Counsel, calculated on the basis of actual hours expended at Counsel's normal schedule of hourly rates in effect at the time of withdrawal, and for all other fees, costs, charges and expenses incurred pursuant to Section 2.2 hereof prior to the date of such withdrawal.

(h) Other Factors. Client acknowledges that, although time expended is the major fee-determining criterion, ultimately the total and final fees will be based on a more comprehensive measure of the reasonable value of Counsel's services. Factors other than the amount of time required, such as the novelty and complexity of the questions involved, the skill required to provide proper legal representation, familiarity with the specific area of law involved, the preclusion of other engagements caused by the acceptance of this engagement, the magnitude of the Matter, the amount involved and results achieved, customary fees for similar legal services, the nature and length of Counsel's relationship with Client, and time limitations imposed by Client or by circumstances, will all have a significant bearing on the reasonable value of the services performed. Therefore, it is agreed that the final fees to be charged by Counsel may be revised upward or downward from the total fee amount as calculated above, at the discretion of Counsel, to properly reflect such factors as those listed above, as well as other considerations which may arise during the course of the representation.

2.2. Other Fees, Costs, Charges and Expenses.

(a) Retention of Third Parties. Client authorizes Counsel to retain and agrees to pay the fees or charges of every other person or entity hired by Counsel to perform necessary services related to the Matter, but only from any recovery made in this matter on behalf of Client, and only if a recovery is made. Such other persons and entities may include, but are not limited to, court reporters, appraisers, real estate agents, escrow agents, accountants, investigators, expert witnesses, trust officers, stock brokers, title examiners, surveyors, land planners, engineers, expert consultants, and other attorneys hired for ancillary matters in other localities. Client authorizes Counsel, in its discretion, to direct such other persons and entities to render invoices for services rendered and expenses advanced either directly to Client or to Counsel, in which event Client agrees to promptly pay the full amount of such invoices upon Client's receipt thereof, but only from any recovery made in this matter on behalf of Client, and only if a recovery is made.

(b) Expenses. Client acknowledges that Counsel may incur various costs, charges and expenses in providing services to Client. Client agrees to reimburse Counsel for all costs, charges and expenses paid or incurred by Counsel, but only from any recovery made in this matter on behalf of Client and only if a recovery is made. Such costs, charges and expenses include, but are not limited to, charges for serving and filing papers, courier and messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long-distance telephone calls, title insurance premiums, photocopies; printing copies; facsimiles; overtime clerical assistance; travel expenses; and postage. In addition, Client agrees to reimburse Counsel, but only from any recovery made in this matter on behalf of Client, and only if a recovery is made, for all costs, charges and expenses, paid or incurred by Counsel, for, Electronic Data Management such as, but not limited to, OCR and ESI processing, document conversion, image branding, video deposition synchronizing and data hosting performed by outside vendors at the actual invoice amount and, if performed in-house, at rates comparable to those charged by outside vendors. Counsel's current charges for printing and photocopies are $0.25 per page, A10 envelopes are $0.35 per envelope, 9x12 envelopes are $0.75 per envelope, and for facsimile transmissions, $1.00 per page. All other internal charges, such as long-distance telephone and computerized legal research will be billed at an amount which approximates Counsel's total cost for the items, including an allowance for direct labor and administration.

(c) Advance Fee Deposit. If the "With Advance Fee Deposit" box at the beginning of this Agreement is checked, then Client agrees:




(i) To pay immediately to Counsel an initial Advance Fee Deposit of **$[Amount]** to be deposited in Counsel's trust account and held for future withdrawals. Counsel shall submit invoices periodically to Client as provided in Section 2.3 for services rendered and other fees, costs, charges and expenses incurred. Client authorizes Counsel to withdraw from the Advance Fee Deposit the amount necessary to pay the invoices. Any unearned balance remaining in the Advance Fee Deposit account at the termination of Counsel's representation will be refunded to Client.

(ii) At such time as the Advance Fee Deposit account is depleted, Counsel may from time to time require Client to make additional advances for deposit to Counsel's trust account to reestablish the Advance Fee Deposit account at the greater of (i) the initial amount of the Advance Fee Deposit or (ii) anticipated invoices for legal fees and other fees, costs, charges and expenses for a reasonable period.

(iii) At such time as a court sets a date for trial or evidentiary hearing of the Matter or any issue or issues encompassed in or related to the Matter, Counsel may require that Client deposit into Counsel's trust account such sum as Counsel determines to be a reasonable estimate of the fees, costs and expenses to be incurred if the Matter in fact proceeds to trial or evidentiary hearing. Client agrees to deposit this amount into Counsel's trust account no later than forty-five (45) days prior to the date scheduled for the commencement of trial or evidentiary hearing. Client acknowledges that the amount of the estimated fees, costs and expenses pursuant to this Paragraph is an estimate only, and that the actual amount of fees, costs and expenses incurred in proceeding to trial or evidentiary hearing may be greater or less than the estimated amount. Client is obligated to pay the actual amount of the fees, costs and expenses incurred even if that amount exceeds the estimated amount. Consistent with other provisions of this Agreement, Counsel will refund to Client any amounts held in the trust account which exceed the amounts of fees, costs and expenses actually incurred. If Client fails to deposit this estimated amount into Counsel's trust account on or before forty-five (45) days before the date set for the commencement of the trial or evidentiary hearing, Counsel reserves the right to withdraw from representation of Client and terminate all obligations for services.

2.3. Schedule of Billing and Payments. Client and Counsel agree to the following schedule of billing and payments for fees and expenses:

(a) Advance Costs Deposit. Any initial Advance Costs Deposit provided for in Subsection 2.2(c) is due and payable upon execution of this Agreement. Each invoice shall show the unearned balance, if any, of the Advance Costs Deposit. The Advance Costs Deposit, if any, shall be restored as provided in Subsection 2.2(c) within thirty (30) days of the invoice date.

(b) Legal Fees. Legal fees determined by the method described in this Agreement will be billed to the Client at the above address.

(c) Other Fees, Costs, Charges and Expenses. Other fees, costs, charges and expenses incurred by Counsel for Client in the Matter will be billed to Client as they are incurred by Counsel, or may, in Counsel's discretion, be accumulated or billed monthly to Client.

(d) Payment in Full. Client agrees to pay in full the amount of each separate invoice rendered under Subsection 2.3(c) for other fees, costs, charges and expenses, but only from any recovery made in this matter on behalf of Client, and only if a recovery is made.

(e) Miscellaneous Bank Fees and Merchant Fees or Credit Card Transaction Fees: Client agrees to pay three and one-half percent (3 1/2%) for merchant fees or credit card transaction fees incurred on Client's behalf. Merchant fees and credit card transaction fees are deducted from the amount of the credit card charge to pay the company that issued your credit card, Counsel's credit card processing service, the credit card association (e.g. Visa, MasterCard, American Express) and related charges. The three and one-half percent (3 1/2%) will either be included on the invoice or will be an expense added to the following invoice.

(f) Interest. Any other fees, costs, charges and expenses incurred by Counsel on behalf of Client not paid by Client to Counsel when due shall accrue interest at a rate of one and one-fourth percent (1-1/4%) per month from the date the fee, cost, charge or expense is incurred until paid.

(g) Execution of Promissory Note. Client agrees that in the event any sums are not fully paid on or before the due date thereof, Client, upon the request of Counsel, shall execute in favor of Counsel a promissory note affirming the obligation of Client to pay such sums together with any interest referenced to above. Such promissory note shall contain terms that are fair and reasonable to Client. Prior to signing the promissory note, Counsel shall forward such promissory note to Client and shall advise Client, in writing, that, prior to its signing, Client should seek advice of and consult with independent counsel of Client's choice in regard to the terms of the promissory note. Counsel cannot advise Client as to the fairness and reasonableness of the terms of such promissory note.

2.4. Information Provided in Invoices. Counsel agrees to include in the invoices sent to Client a general identification of the services of Counsel for which Client is being charged and a specific identification of all other fees, costs, charges and expenses for which Counsel seeks reimbursement.

2.5. Payments Directly to Counsel. The parties agree that any amounts recovered, whether by settlement, judgment, or otherwise, shall be payable directly to Counsel, to be held in trust until such time as Counsel shall become entitled to payment for fees, costs, charges and expenses, as provided for in this Agreement, at which time Counsel shall be entitled to pay itself those fees, costs, charges and expenses from such amounts being held in trust, and to remit all remaining amounts to Client.

**3. GENERAL MATTERS.**

3.1. Assigned Claims. Client and Counsel recognize that some or all of the claims asserted by Counsel on behalf of Client may include claims which are assigned by Client to others, including a liquidating trustee. Client acknowledges that Counsel has no obligation to any party other than Client and no obligation to pursue any claim other than those claims which may lawfully be brought by Client under applicable law. The attorney/client relationship is solely between Counsel and Client.

3.2. Information to Be Made Available to Client. Counsel agrees to make reasonable efforts to keep Client informed at all times as to the status of the Matter and as to the courses of action which are being followed, or are being recommended, by Counsel. Counsel agrees to make reasonably available to Client for reading in Counsel's office all written materials sent or received by Counsel pertaining to the Matter. Copies of all such materials will be provided at Client's request and Client's expense. All of Counsel's work product will be owned by Counsel.

3.3. Conflicting Engagement. Counsel agrees not to accept, without prior approval from Client, any engagement known by Counsel to be in direct conflict with the interests of Client in the Matter. If, in the course of representing multiple Clients, Counsel determines in its sole discretion that a conflict of interest exists, Counsel will notify all affected Clients of such conflict and may withdraw from representing any one or more of the Clients to the extent such a withdrawal would be permitted or required by applicable provisions of the Arizona Code of Professional Responsibility or the rules of courts of the State of Arizona or of the state in which the Matter is pending.

3.4. No Guarantees. It is impossible for Counsel to predict the total amount of fees, costs, charges and expenses that will be incurred in regard to Counsel's representation of Client. No guarantees have been made, nor can they be made, to Client with respect to the fees, costs, charges and expenses relating to such representation. Any estimate of fees, costs, charges and expenses that Counsel may have discussed represents only an estimate of such fees, costs, charges and expenses. It is also expressly understood that Client's obligation for payment of Counsel's costs, charges and expenses is not in any way contingent on the ultimate outcome of the Matter.




Litigation necessarily involves many risks beyond Counsel's control. During the course of Counsel's representation, Counsel may express opinions or beliefs concerning the litigation or various courses of action and the results that might be anticipated. Any such statement made by anyone on behalf of Counsel is intended to be an expression of opinion only, based on information available to Counsel at the time, and it should not be construed by Client as a promise or guarantee of the outcome. Counsel cannot and does not guarantee that the outcome of the Matter will be acceptable to Client or that any particular result will be achieved.

3.5. Awards of Fees and Costs. There may be a statutory or contractual basis for the award of attorneys' fees and costs in the Matter. In Counsel's experience, however, the court rarely orders one party to pay all of the fees of attorneys and other professionals incurred by the other party, and the court may order each party to pay all of such party's own attorneys' and other professional fees and costs. The court's determination of the attorneys' fees and other professional fees and costs that Client may recover from, or be obligated to pay, the opposing party shall not constitute a determination concerning the reasonableness of the fees and costs charged by Counsel or payable by Client. If the court orders the opposing party to pay Client's fees, costs, charges or expenses, Client is still responsible for the payment of all fees, costs, charges and expenses due hereunder, whether or not the other party actually pays the court-ordered fees, costs, charges and expenses.

Client should realize that, in the event that Client does not prevail in the Matter, the opponent may have the right to recover its attorneys' fees, costs, charges and expenses from Client. Payment of any such award of fees, costs, charges and expenses is exclusively Client's responsibility. For this reason, it is essential that Client always consider the reasonableness of Client's position before Counsel is directed to proceed with a claim or defense or to reject an offer of settlement.

3.6. Award of Sanctions. In the event that the court orders another party or person to pay an award of sanctions that is based on the reasonable attorney's fees incurred, Attorney shall retain the entire award as compensation for the additional services required in the matters which led to the sanctions award. The sanctions awarded and retained by Attorney shall be in addition to any contingent fee otherwise earned under this agreement.

3.7. Termination of Representation. The relationship established by this Agreement is subject to termination only as follows:

(a) Withdrawal by Counsel. Counsel reserves the right to withdraw from any representation if Client fails to honor this Agreement, or if Counsel concludes at any time that the Matter does not merit further representation or for any other condition that exists which would permit or require withdrawal under the Arizona Code of Professional Responsibility or by the rules of courts of the State of Arizona or of the state in which the Matter is pending. Notification of withdrawal shall be made in writing to Client. In the event of such withdrawal, Client agrees to promptly pay Counsel upon receipt of an invoice from Counsel for all services rendered by Counsel, calculated on the basis of actual hours expended at Counsel's normal schedule of hourly rates in effect at the time of withdrawal, and all other fees, costs, charges and expenses incurred pursuant to Section 2.2 of this Agreement prior to the date of such withdrawal.

(b) Termination for Cause. Client reserves the right to terminate the representation for cause if Counsel fails to honor this Agreement. Notification of the termination shall be made in writing to Counsel. In the event of any such termination by Client, Counsel waives any further rights to compensation relative to the representation; provided, however, that Client shall promptly pay Counsel upon receipt of an invoice from Counsel for all services rendered by Counsel, calculated on the basis of actual hours expended at Counsel's normal schedule of hourly rates in effect at the time of termination, and for all other fees, charges, and expenses incurred pursuant to Section 2.2 of this Agreement through the date of such termination.

(c) Termination Without Cause. Client further reserves the right to terminate the representation without cause, and shall notify Counsel in writing of any such termination. In the event of any such termination, Counsel's compensation due hereunder shall be whichever of the following Counsel elects: (a) prompt payment to Counsel upon receipt of an invoice from Counsel for all services rendered by Counsel, calculated on the basis of actual hours expended at Counsel's normal schedule of hourly rates in effect at the time of termination, and all other fees, charges, and expenses incurred prior to the date of such termination, as provided in Section 2.2 of this Agreement; or (b) a continuing contingent fee as provided in this Agreement, to be shared with successor counsel on the basis of relative time spent by Counsel and successor counsel through the conclusion of the Matter.




(d) Transition. Upon termination of this representation for any reason, by either Client or Counsel, Counsel agrees to cooperate with any successor counsel to accommodate a smooth transition of the representation, and upon payment of all amounts owed to Counsel hereunder, to transfer Client files to such successor counsel.

## 4. ARBITRATION.

4.1. Arbitration. As a material term to Counsel's engagement, both Client and Counsel agree to settle any claim, controversy, dispute or any other disagreement of any nature, type or description regardless of the facts or legal theories which may be involved ("Dispute") **arising out of or relating to the professional services rendered to the Client by Counsel including, without limitation, issues as to legal fees and costs and claims for professional malpractice, breach of fiduciary duty, breach of contract or any other claim based upon any alleged misconduct or any other alleged breach of duty, by binding arbitration in the City of Phoenix, Arizona**, in accordance with the following:

(a) The party seeking to initiate arbitration ("Disputing Party") shall notify the other party ("Answering Party") in writing that the Disputing Party demands arbitration as provided hereinbelow, setting forth in specific terms the Disputing Party's proposed statement of the matters in Dispute to be submitted to arbitration and the name and address of the arbitrator selected by the Disputing Party. Within seven (7) business days following receipt of the Disputing Party's written arbitration demand complying with the requirements of this Subsection 4.1(a), the Answering Party shall notify the Disputing Party in writing, setting forth in specific terms the Answering Party's proposed statement of the matters in Dispute and identifying the name and address of the arbitrator selected by the Answering Party.

(b) The two (2) arbitrators so selected shall meet and confer within twenty (20) days after receipt by the Disputing Party of the Answering Party's written notice as called for under Subsection 4.1(a) above, and if they are unable within said twenty (20) day period to reach a decision on the matters in Dispute, they shall, at the expiration of said twenty (20) day period, jointly select a third arbitrator. If said arbitrators are unable to choose the third arbitrator, Client and Counsel shall choose the third arbitrator; provided, however, that all arbitrators shall be disinterested individuals knowledgeable in disputes between legal counsel and clients and shall have had not less than fifteen (15) years' experience in litigating, arbitrating or adjudicating disputes between legal counsel and clients in metropolitan Phoenix, Arizona. Subject to the foregoing, the arbitrators, including the third arbitrator, may be selected from any area in the United States. Upon selection of the third arbitrator, the three (3) arbitrators shall, within ten (10) days thereafter, schedule an arbitration hearing at a date, time and place (in metropolitan Phoenix, Arizona) designated by said arbitrators by a majority vote, written notice of which shall be given to the parties not later than thirty (30) days prior to said hearing date. The commencement of the arbitration hearing shall occur not more than one hundred and twenty (120) days from the initial demand for arbitration. At the hearing, each party may be represented by counsel and present testimony and evidence. If at the commencement of the hearing the parties cannot agree on a joint statement of the matters in Dispute to be submitted to the arbitrators, the arbitrators shall be empowered to frame the issue(s). A Certified Court Reporter's transcript may be demanded by any party or by the arbitrators and said official transcript shall be prepared, completed, and delivered to the arbitrators with copies to each party within ten (10) days following the conclusion of the hearing. The original transcript shall be paid for by the party requesting the transcription or the costs of transcription shall be shared equally by the parties if the transcript is requested by the arbitrators. Arbitration sessions following the initial session, if necessary, shall be scheduled by the arbitrators so that the arbitration proceedings (i.e., presentation of evidence and closing arguments, if permitted) are completed within twenty (20) days of the initial session. Each party shall be given the opportunity to file with the arbitrators simultaneous written briefs seven (7) days following receipt by the arbitrators of the official transcript but, if no transcript is demanded as provided in this Agreement, said briefs shall be filed simultaneously seven (7) business days following conclusion of the hearing. Copies of any such briefs shall be provided to the other party concurrently upon filing with the arbitrators.

(c) Within ten (10) days following the receipt by the arbitrators of the brief(s) (or within ten (10) days following conclusion of the hearing if all parties waive briefs), the arbitrators shall make and deliver to the parties their decision and award in writing. The arbitrators shall have the authority to enter any award or to grant any relief which could be obtained in an Arizona court applying Arizona substantive law and giving full effect to the terms (including limitations on available remedies) of this Agreement, except that the parties agree that no punitive, exemplary or multiple damages may be awarded and that reasonable attorneys', expert witnesses', paralegals', arbitrators' and experts' fees, expenses, costs and necessary disbursements of arbitration may be awarded as the arbitrators see fit, consistent with the provisions of this Agreement. A reasoned award shall not be required. The arbitrators shall have no authority to modify, amend or alter the provisions of this Agreement and shall base their decision and award on the language




contained in this Agreement and the facts giving rise to the Dispute as presented on the record at the hearing. The parties may mutually stipulate in writing to extend or to shorten the prescribed time periods (including a stipulation to expedite the referral and submission to arbitration) in this Section 4. All provisions of this Agreement not in dispute shall be observed and performed without interruption during the pendency of any proceeding called for under this Section 4. **Any arbitration award shall be final, binding and conclusive upon Client and Counsel, shall be non-appealable, and shall be enforceable in all courts of competent jurisdiction. Client and Counsel agree that to the extent permitted by law, binding arbitration, as provided in this Section 4, is the sole and exclusive remedy of such parties and Client and Counsel each waive and forego any and all rights to pursue any action in any court or other legal forum to resolve any Dispute.**

(d) If a third arbitrator is required pursuant to Subsection 4.1(b) above, each party shall pay its pro rata share of any required retainer or other payments required by such arbitrator upon such arbitrator's demand, with the ultimate responsibility for the arbitrators' fees to be determined by the arbitrators in the final arbitration award pursuant to Subsection 4.1(c) above; otherwise, each party shall bear its own costs, charges and expenses in connection with any proceedings under this Section and, in any event, each party shall pay the fees of the arbitrator it selects.

4.2. Advantages of Arbitration. The advantages of arbitration are:

(a) The decisions of the arbitrators are final and are subject only to very limited review by the courts.

(b) Usually lower costs as compared to cost of court proceedings.

(c) Generally, arbitrated solutions can be reached more quickly.

(d) Normally, parties have greater control over and can set a timetable for hearings.

(e) Arbitration can offer confidentiality and more privacy than a court hearing.

(f) Informal procedures – rules of evidence are not strictly adhered to.

(g) Usually a friendlier forum than litigation.

(h) Possibly allows for more creative solutions than the courts may offer.

(i) Arbitrators are generally selected because of their knowledge of the subject matter, and the parties have the benefit of the arbitrators' experience.

4.3. **Disadvantages of Arbitration. The disadvantages of arbitration are:**

(a) **In arbitration, the parties are waiving their right to litigate in court, including their right to a jury trial.**

(b) **Arbitration is final and binding on the parties. The right to appeal or seek modification of arbitrators' rulings is extremely limited.**

(c) **Discovery in arbitration is more limited than discovery in court.**

(d) **Arbitrators are not required to include factual findings or legal reasoning in their awards.**

(e) **Costs of arbitrator or arbitrators can be significant because of the number of arbitrators that may be required to participate, depending on the complexity of the arbitration.**




4.4. Review By Independent Counsel. If Client has any questions regarding the effect of Arbitration on the Client's rights in the event of a Dispute arising under this Agreement and the waiver of such rights, prior to signing this Agreement, Client should seek advice of and consult with independent counsel of Client's choice in regards to the terms of these arbitration provisions.

## 5. ADDITIONAL MATTERS.

5.1. Commencement of Representation. Counsel shall not be required to commence representation of Client in the Matter until Counsel receives a copy of this Agreement signed by Client and any Advance Costs Deposit payable at the outset of this representation is in fact paid by Client.

5.2. Retention of Files. Counsel agrees to assert reasonable efforts, subject to Subsection 3.7(d) hereof and causes beyond the control of Counsel, to retain and maintain the files relative to the Matter for a period of five (5) years following the conclusion of the Matter. Thereafter, prior to destruction of such files, Counsel agrees to use reasonable efforts to notify Client at the Client's principal address stated above or such other address as Client provides to Counsel hereafter in writing, or to the e-mail address of Client hereafter provided. In the alternative, Counsel may deliver the entire file to Client, in which case Counsel shall have no further responsibility in regard to Counsel's retention of the files. Counsel shall not be required to maintain a copy of the files upon such deliver to Client, and Client shall take adequate measures to protect such files.

5.3. Original Documents. Upon termination of the representation, Counsel agrees to deliver to Client all original documents received by Counsel during the course of Counsel's engagement relative to the Matter.

5.4. Complete Integration; Binding Upon All Parties; Severability. This Agreement contains the entire agreement between Client and Counsel regarding Counsel's handling of the Matter and the fees, costs, charges and expenses to be paid relative thereto. This Agreement shall not be modified, nor shall Counsel's contractual obligations with respect to the Matter be enlarged, except by written agreement signed by Client and by a member of Counsel. This Agreement shall be binding upon Client and Counsel and their respective heirs, executors, legal representatives, and successors. If any portion of this Agreement is determined to be invalid or unenforceable, the remaining portions shall continue to be binding and enforceable in accordance with their terms. The headings and captions used in this Agreement are for convenience and ease of reference only and shall not be used to construe, interpret, expand or limit the terms of this Agreement.

5.5. Multiple Parties. If more than one individual signs this Agreement on behalf of Client, the liability of all such persons shall be joint and several.

5.6. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Arizona.

**[SIGNATURES ON FOLLOWING PAGE]**



CLIENT HAS READ THE FOREGOING LEGAL REPRESENTATION AGREEMENT AND CLIENT'S SIGNATURE BELOW INDICATES THAT CLIENT FULLY UNDERSTANDS AND AGREES TO ALL OF THE TERMS OF THIS AGREEMENT INCLUDING, BUT NOT LIMITED TO, ITS ARBITRATION PROVISIONS. THE TERMS OF THE ENGAGEMENT OF COUNSEL, AS STATED ABOVE, ARE HEREBY ACCEPTED AND APPROVED BY CLIENT.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

CLIENT: ______________________
Honor Duvall

E-Mail Address: honorduvall44@yahoo.com

______________________
Donald Sankey, Jr.

E-Mail Address: Donald.sankey@yahoo.com

______________________
Swayde Zakai Sankey (by his parent(s))

E-Mail Address: honorduvall44@yahoo.com

COUNSEL: MILLS + WOODS LAW PLLC

By: ______________________
Member




**PERSONAL GUARANTY OF PAYMENT**

FOR VALUE RECEIVED, the undersigned jointly and severally personally guarantee payment of all sums and performance of all obligations of Client under the foregoing Agreement, and agree that the arbitration provisions of Section 4 apply to this Guaranty.

DATED ______________________, _____.

Guarantor : ______________________________
Firm name (if applicable)

______________________________
Signature

______________________________
Title of signer (if applicable)




**SCHEDULE OF RATES AS OF March 28, 2020**[1]

Members........................................$295-$600

Associates........................................$175-$400

Of Counsel........................................$200-$400

Paralegals........................................$175-$205

Project Assistants ........................................$50-$80

Support Staff Overtime........................................$18-$45

[1] These rates are subject to periodic adjustment.