Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiffs*

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Honor Duvall, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Arizona Department of Child Safety, *et al.*,<br>                    Defendants. | Case No.: 21-cv-00167-ROS<br><br>**RESPONSE IN OPPOSITION TO THE PCH DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS** |

An award of attorney's fees under 42 U.S.C. § 1988 against a plaintiff is appropriate ***only*** in "in exceptional circumstances," and "only for claims that are 'frivolous, unreasonable, or groundless.'" *Harris v. Maricopa County Superior Ct.*, 631 F.3d 963, 971 (9th Cir. 2011) (quoting *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 422 (1978). Here, the Phoenix Children's Hospital Defendants ("PCH") seek nearly $550,000 in attorneys' fees and costs for a case it now claims was "frivolous, unreasonable, or groundless." And in so doing, PCH ignores the elephant in the room: its role in the wrongful and lengthy removal of a child from his biological parents.

Then 3-month-old S.Z.S., was removed from his parents on March 16, 2019, and not returned until November 12, 2019, nearly eight months later.[1] When the juvenile court returned S.Z.S. to his parents, it noted PCH's culpability in the wrongful removal of S.Z.S. from his parents: "[T]he medical records from PCH contain significant errors. Moreover, the Court found many of the witnesses to lack credibility." **Juvenile Court Order, dated November 12, 2019, Ex. A** at 2. The juvenile court specifically found credibility or diagnosis errors with each of the following PCH providers: Dr. Brendon Cassidy[2], Dr. William Wood, and Dr. Kathryn Coffman. *Id.* at 3-5. These facts more than establish a sufficient basis to overcome any request for fees under section 1988. *See Karam v. City of Burbank*, [352 F.3d 1188, 1196](9th Cir. 2003) (even though "somewhat tenuous," the "circumstances furnish some basis" for a conspiracy that city officials "instigated the chain of events that led to [plaintiff's] prosecution… During the summary judgment proceedings, however, evidence to support such a theory failed to materialize, and summary judgment was properly granted in favor of the defendants. But that did not render groundless, without foundation or frivolous, within the meaning of 42 U.S.C. § 1988, the First Amendment claims Karam had asserted").

PCH's motion ignores the actual facts underlying this litigation. Further, it seeks fees for claims that do ***not*** fall within the ambit of section 1988, including state law claims, nor do they make any attempt to segregate fees by claims or conduct that they deem "exceptional" and those they do not. *Harris*, [631 F.3d at 971]("a defendant is only entitled to attorneys' fees for work which can be distinctly traced to a plaintiff's frivolous claims") (quoting *Fox v. Vice*, [594 F.3d 423, 429](5th Cir. 2010), *vacated*, [563 U.S. 823](2011)). For these reasons, PCH's motion should be denied in its entirety.

---

[1]   Although temporary custody was not taken until March 16, 2019, a protective plan was put in place in February 2019 under which the child was in the custody of the maternal great grandmother with the parents having only limited supervised visits each week.

[2]   Dr. Cassidy was an agent of PCH sued individually by Plaintiffs. He was represented by his own counsel in this matter and is not a party or joiner to PCH's motion for fees. Dr. Cassidy has *not* filed a motion for fees.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

This should end the inquiry. But PCH then seeks to impose liability on Plaintiff's counsel, citing to 28 U.S.C. § 1927. Since no fees should be awarded, there is nothing to impose on anyone. But even so, PCH's true motive here is not even subtle—even though a series of errors *by PCH and its agents and employees* resulted in emotional and psychological harm to both a child and parents, PCH seeks to quash current counsel and any other attorney from calling PCH to task for its errors. Plaintiffs also respectfully request that this Court deny PCH's request to shift fees to counsel, should any be awarded.

## I.    BACKGROUND

Two months following his birth, S.Z.S.'s mother, Honor Duvall, on February 21, 2019, took S.Z.S. to Phoenix Children's Hospital when he appeared lethargic and ill. Father Donald Sankey arrived at the hospital later that day after work.

That evening, Nurse/Defendant Dietzman "had to beg to admit :/." **Ex. B**. The next day, Defendant Dr. Cassidy examined S.Z.S.'s retinas, and, following only a cursory examination, declared that S.Z.S. had been physically abused.

On February 25, 2019, Mother took S.Z.S. to Dr. Warren Heller, an ophthalmologist, for a second opinion. He found no evidence of abuse in S.Z.S.'s retinas.

On March 7, 2019, Mother took S.Z.S. to a follow-up appointment with PCH providers. When Mother indicated concerns about the increased circumference of S.Z.S.'s head, Dr. Coffman said that S.Z.S. should be readmitted to PCH. Mother wanted to take S.Z.S. to Banner Children's Hospital (Cardon's). **Ex. C** at 178-79. Both Dr. Coffman and Nurse Dietzman said that they could "not do that," but had to take S.Z.S. to PCH. *Id*.[3]

---

[3]    Specifically, DCS Investigator Lucero testified:

Q.    … But when the mother said, "I don't want to go back to PCH, I want to take my child somewhere else," Dr. Coffman and Haley Dietzman stepped in and said, "You can't do that"; right?

A.    I don't recall if that's – those two specific individuals are who told Honor and the family that.

**Ex. C** at 178.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

At PCH, S.Z.S. underwent a surgical procedure to drain accumulating fluids. When PCH doctors removed the breathing tube following the operation, S.Z.S. went into respiratory distress and had to be re-intubated to survive.

While S.Z.S. was still in the hospital, on March 14, 2019, Dr. Coffman wrote an email ***directly*** to the director of the Department of Child Safety noting (among other things) that "the family was advised ***by someone from DCS*** to hire an attorney to sue the hospital." **Ex. D**. Thus, by mid-March of 2019, an employee from the Department of Child Safety ("DCS" or the "Department") disbelieved the medical evidence from PCH sufficient to alert the family about a potential lawsuit.

In an unusual breach of normal procedure, the director of DCS itself, Gregory McKay, instructed DCS employees to take S.Z.S. into temporary custody and file a dependency petition. **Ex. E** at 130:6-25, 131:1-2, 14-25, 133:1-13; **Ex. C** at 224:12-225:2; **Ex. F** at 63:2-64:22, 78:19-79:2, 92:23-93:6; **Ex. G** at 2. DCS investigating supervisor Duncan testified:

> Q.   … So you spoke to him [McKay] before the petition was filed?
> A.   Yes, it was before….
> Q.   During that conversation, did he direct you to file a petition?
> A.   I believe he did.
> Q.   Did he say why he thought a petition needed to be filed?
> A.   I'm certain he did….

**Ex. E** at 133.

DCS took S.Z.S into temporary custody on March 16, 2019, in coordination with PCH as S.Z.S. was being discharged from the hospital, and then filed a dependency petition on March 19, 2019.

The juvenile court conducted the dependency trial over the course of four days, August 15, 16, 22, and 27, 2019. The Department called PCH doctors Cassidy, Coffman and Wood, as well as Dr. Jennifer Ronecker, a pediatric neurosurgeon, and Buckeye Police Detective Tamela Skaggs.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

The juvenile court issued its ruling on November 12, 2019. The court held that the Department failed to prove, by a mere preponderance of evidence, that S.Z.S. was dependent as to his parents. The court was critical of the Department's PCH witnesses:

> [T]he medical records from PCH contain significant errors. Moreover, the Court found many of the witnesses to lack credibility…[¶]
>
> The Court found credibility issues with Dr. Cassidy's testimony. First, Dr. Cassidy was dismissive of the examination of Dr. Heller. In Dr. Heller's records, it states "WNL" in multiple places. Dr. [Cassidy] testified that the acronym in the records meant "We Never Looked." Dr. Coffman testified that WNL means "Within Normal Limits" and that she had never heard of it meaning anything else.
>
> Second, multiple witnesses testified that the child was not in any apparent distress or discomfort. The only visible sign of injury was minor petechiae on the chest. Yet, Dr. Cassidy testified that the trauma necessary for the child's injuries would include a crushing head injury such as a truck rolling over the head, falling from 30 feet or higher, a crash into a wall at a high rate of speed, or a repetitive acceleration and deceleration injury.
>
> Dr. William Wood also treated the child at PCH. Dr. Wood testified that the child had a right tibia fracture that most likely was caused by a torque injury but he acknowledged other possible causes. Dr. Wood's records indicate the child was placed in a splint, the child was given oral pain medication, and there was a history of pain and swelling. None of these notations were accurate. Dr. Wood attributed the errors to a scribe and to template errors. Nonetheless, the errors raise concern about the treatment on the child based on inaccurate records, as well as the opinions formed by those who reviewed the records in this case.

**Ex. A** at 2-4.

That same day, DCS Investigating Supervisor Jeff Duncan sent an email that stated as follows: "**I literally cannot tell you how much grief I took from PCH, CPT and management all the way up to Greg [McKay, DCS Director] for not immediately**

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**removing this kiddo**. Looks like the judge saw the same things I did."[4] **Ex. G** (emphasis added)**.** In short, Duncan noted the involvement of ***PCH and DCS management*** in the wrongful removal of S.Z.S.

On January 29, 2021, S.Z.S. and his parents, Honor Duvall and Donald Sankey, filed a complaint in state court against Phoenix Children's Hospital and various of its employees and agents. They alleged four claims against PCH and its various employees or agents, ***only one of which*** arose under federal law (42 U.S.C. § 1983), as follows:

| COUNT NO. | LEGAL CLAIM | DEFENDANTS |
|---|---|---|
| 6 | Conspiracy to deprive Plaintiffs of right to familial association | Cassidy<br>Wood<br>Coffman<br>(unidentified social worker) |
| 11 | Medical negligence | Cassidy<br>Wood<br>Coffman<br>Dietzman |
| 15 | Intentional infliction of emotional distress | PCH<br>Cassidy<br>Wood<br>Coffman<br>Dietzman<br>Dion<br>Lewis |
| 16 | Supervisory/failure to train liability | PCH |

On cross motions for summary judgment, this Court granted PCH Defendants' motion for summary judgment. **Doc. 263.**[5] But regardless of this Court's ruling, the evidence gathered from discovery in this matter established two things, both of which demonstrate the plausibility of Plaintiffs' claims:

---

[4]  "CPT" is the commonly used acronym for the PCH Child Protection Team.
[5]  An "inability to defeat summary judgment does not mean that [plaintiffs'] claims were groundless at the outset." *Karam v. City of Burbank*, 352 F.3d 1188, 1196 (9th Cir. 2003).

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*First*, the DCS investigators did not want to remove S.Z.S. from his parents' care at the time they were ordered to do so by Director McKay. ***On the same day that the juvenile court issued its ruling***, DCS OCWI investigations supervisor Jeff Duncan emailed DCS OCWI investigator Alyssa Lucero: "**Ironic…. Looks like the Judge saw the same things we did on this case.**" **Ex. G** at 1.

*Second*, PCH put pressure on DCS to pursue the allegations against the parents. On March 14, Defendant Coffman writes *directly* to DCS Director Gregory McKay, threatening to resign over this matter. And clearly, that resulted in direct pressure on DCS employees from the Director to pursue the matter against the parents against their better judgment: Mr. Duncan wrote, again on the same day as the juvenile court's ruling: "**I literally cannot tell you how much grief I took from PCH, CPT and management all the way up to Greg [McKay, DCS Director] for not immediately removing this kiddo.** Looks like the judge saw the same things I did." **Ex. G** at 2**.**

Despite these facts adduced during discovery, ***none of which the PCH Defendants address in their motion,*** the PCH Defendants thereafter filed the present motion for attorney's fees, asserting that they amassed nearly $550,000 in fees and costs on a matter that they deem "frivolous, unreasonable, or groundless." The PCH Defendants' motions falls far short of satisfying the requirements for an award of fees under the statutory scheme they invoke, 42 U.S.C. § 1988. Specifically:

- The PCH Defendants completely ignore all the evidence set forth above demonstrating that Plaintiffs' claims were ***not*** frivolous, unreasonable, or groundless, *see Harris,* 631 F.3d at 971;

- The PCH Defendants do not make any attempt to distinguish between the various claims, such as state law claims or those of Dr. Wood, whose records the juvenile court found filled with errors that influenced later readers, *see id.* ("a defendant is only entitled to attorneys' fees for work which can be distinctly traced to a plaintiff's frivolous claims"); and

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

- Relatedly, the PCH Defendants focus almost exclusively on the state law claims, *see* Mot. at 6-7, 16-17, even though a defendant is entitled to attorney's fees under section 1988 if, and only if, (1) the federal claim was frivolous, and (2) the state law claims arose from the same course of conduct, see *Munson v. Milwaukee Bd. of Sch. Directors*, 969 F.2d 266 (7th Cir. 1992), neither of which is the case here.

Accordingly, Plaintiffs respectfully request that this Court deny PCH Defendants' motion for attorneys' fees.[6]

## II.   DISCUSSION

### A.   Given The Oversized Role PCH and its Agents and Employees had in Removing S.Z.S. From His Home and Parents, this Matter Does Not Fall Within the Category of "Exceptional" Cases Warranting An Award of Fees to PCH.

#### 1.   Statutory background

Section 1988, the sole substantive basis for Defendants' fee application, provides in relevant part that:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs….

**42 U.S.C. § 1988(b)**.

---

[6]  The PCH Defendants argue that "Plaintiffs attacked decades of well established and accepted medicine." Mot. at 11. This is ***far from true***. The Ninth Circuit has held issues involving Shaken Baby Syndrome to be a "vigorous debate...within the scientific community." *Giminez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016). "[N]umerous courts have recognized that a diagnosis of Shaken Baby Syndrome is a matter of debate and presents a question of credibility." *Shelby v. Cain*, No. 1:21-CV-406-HSO-RPM, 2023 WL 2563229, at *7 (S.D. Miss. Mar. 17, 2023) (collecting cases).

Phoenix Children's Hospital is a leading proponent of Shaken Baby Syndrome, and often sees this Syndrome where it simply does not exist, as the juvenile court's assessment of Dr. Cassidy's testimony demonstrates. The present motion is simply an attempt to silence those who dare question PCH's reliance on, and indeed, overuse of this Syndrome.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

"Congress and the courts have long recognized that creating broad compliance with our civil rights laws, a policy of the 'highest priority,' requires that private individuals bring their civil rights grievances to court." *Harris*, 631 F.3d at 971 (citing *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)). "Our system of awarding attorneys fees in civil rights cases is in large part dedicated 'to encouraging individuals injured by...discrimination to seek judicial relief.'" *Id*. (quoting *Newman*, 390 U.S. at 402). "In accordance with this objective, courts are permitted to award attorneys fees to prevailing plaintiffs as a matter of course, but are permitted to award attorneys fees to prevailing defendants under 42 U.S.C. §§ 1988 … only 'in exceptional circumstances'…." *Id.* (quoting *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990)).[7]

Thus, when a defendant seeks fees, there are several clear rules:

- A defendant may recover fees only when the claims arising under one of the enumerated federal statutes were "frivolous, unreasonable, or groundless." *Id.* (quoting *Christiansburg Garment Co.*, 434 U.S. at 422).

- Section 1988 does not provide for an award of fees for state or common law claims, unless there is nearly complete overlap in both facts and law to the state law claims, *see Crane-McNab v. County of Merced*, 773 F. Supp. 2d 861, 885 (E.D. Cal. 2011); and

- Section 1988 only provides for fees for specific claims that are frivolous, not the entire action. *Harris*, 631 F.3d at 971. "To put a finer point on it, *a defendant is entitled only to 'the amount of attorneys fees attributable exclusively to 'a plaintiff's frivolous claims.'"* *Id.* (emphasis in original; quoting *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1064 (9th Cir. 2006)).

For each of these three reasons, Defendants' fee application must fail.

---

[7]   Of note in the civil rights space, "[p]revailing defendants seeking recovery of attorneys fees in civil rights cases do not, like prevailing plaintiffs, vindicate important federal policy or receive fees from a transgressor of federal law." *Harris*, 631 F.3d at 972 n.1 *citing Christiansburg Garment Co.*, 434 U.S. at 418, 98 S.Ct. 694.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

2. **Plaintiffs' civil rights claim was not frivolous as a matter of law.**

Fees can be awarded to a prevailing defendant if, and only if, the claim or claims were "frivolous, unreasonable, or without foundation." *Tutor-Saliba Corp.*, 452 F.3d at 1060. "A case may be deemed frivolous only when the 'result is obvious or the...arguments of error are wholly without merit.'" *Karam*, 352 F.3d at 1195 (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981)). "**In determining whether this standard has been met, a district court must assess the claim at the time the complaint was filed, and must avoid 'post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation**.'" *Tutor-Saliba Corp.*, 452 F.3d at 1060 (quotation omitted; emphasis added). "A case may be deemed frivolous only when the 'result is obvious or the...arguments of error are wholly without merit.'" *Karam*, 352 F.3d at 1195 (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981)). "Simply prevailing on summary judgment is insufficient." *Flores v. City of Maywood*, No. CV 04-7565 PA (EX), 2009 WL 10699909, at *2 (C.D. Cal. Jan. 26, 2009).

"Even if 'evidence to support a [somewhat tenuous] theory failed to materialize, and summary judgment was properly granted in favor of the defendants,' a court may deny attorneys' fees where originating circumstances furnish some basis for the claim." *Arnaudo v. Cnty. of Yavapai*, No. CV-16-08164-PCT-DJH, 2019 WL 652865, at *3 (D. Ariz. Feb. 15, 2019) (quoting *Karam*, 352 F.3d at 1196). "Under this standard, an unsuccessful plaintiff who acted in good faith is generally not at risk of having to pay the other side's attorney's fees." *Akiak Native Community v. U.S. EPA*, 625 F.3d 1162, 1166 (9th Cir. 2010).

This case is controlled by *Karam*. In *Karam*, Theresa Karam regularly attended Burbank city council meetings to oppose expansion of the Burbank airport. On the occasion at issue, Karam entered the council chambers after others had left. Burbank police officer Sindle advised her that she was trespassing, but did not arrest her. Later, a detective

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

investigated, which led to misdemeanor charges against her. Ultimately, the charges were dismissed.

Karam then filed an action against the City of Burbank, Mayor Stacy Murphy, City Manager Robert Ovrom, Officer Shane Sindle, Detective Matthew Miranda, Police Captain Gordon Bowers, Police Chief David Newsham, and City Attorneys Gina Oh, Eric Hovatter, and Juli Scott. Karam asserted claims under 42 U.S.C. § 1983 for what she contended was a violation of the Fourth Amendment caused by her alleged unlawful seizure. She also asserted a violation of the First Amendment caused by what she alleged was her retaliatory prosecution for the exercise of her free speech rights. She also brought state law claims for malicious prosecution.

The district court dismissed Karam's Fourth Amendment claims on the ground that she had never been arrested (and thus, not seized), claims against the prosecutors based on absolute immunity, and dismissed the state law malicious prosecution claims based on state law immunity. Then, the district court granted summary judgment for the defendants, concluding that there was no evidence of a retaliatory motive. *Id.* at 1192. The district court then granted attorneys' fees to the defendants.

The Ninth Circuit reversed. With respect to the Fourth Amendment claim, the court noted that there was a plausible argument that the conditions of her "own recognizance" release constituted a seizure (although the court rejected this claim on the merits). As to the First Amendment claim, the Ninth Circuit concluded:

> These circumstances furnish some basis, albeit somewhat tenuous, for one to theorize that the Mayor and perhaps other city officials, tired of Karam speaking out against them, instigated the chain of events that led to her prosecution. During the summary judgment proceedings, however, evidence to support such a theory failed to materialize, and summary judgment was properly granted in favor of the defendants. But that did not render groundless, without foundation or frivolous, within the meaning of 42 U.S.C. § 1988, the First Amendment claims Karam had asserted.

*Id.* at 1196.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

11

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Here, Plaintiffs' *sole* federal civil rights claim was that PCH employees conspired with DCS employees to remove S.Z.S. from his parents. The evidence for such a conspiracy included:

- At least one communication from a PCH employee (Dr. Coffman) directly to the director of DCS (Gregory McKay), and McKay's directive shortly thereafter to "file a dependency petition," notwithstanding his lack of personal involvement in the investigation;

- That PCH employees would not allow the parents to choose their own, reputable hospital (a Banner Health facility) to take S.Z.S., but insisted that they take S.Z.S. only to PCH and involved DCS to ensure that result;

- That at least one DCS employee already believed that the investigation was heading in an improper direction, advising the parents to hire an attorney to bring an action against PCH;

- The *ludicrous* testimony of Dr. Cassidy that (1) "WNL" meant "we never looked," rather than the routine "within normal limits" when applied to a doctor who disagreed with him[8], and (2) his testimony about the type of injury that would have been required for S.Z.S.'s injuries, despite the absence of *any other indicators* of severe trauma; and

- That PCH received payment from the State of Arizona for each case in which they confirmed a finding of suspected abuse.

Ultimately, *as a direct result of the "lack of credibility" and "erroneous medical records" of Phoenix Children's Hospital*, parents and child were wrongfully separated from each other for nine months. Plaintiffs' claims, at the very least, were not groundless or frivolous.[9] Plaintiffs' sole federal claim was *not* without a factual basis and, as such,

---

[8]  This Court may judicially notice that "WNL" in the medical context means "within normal limits."

[9]  Plaintiffs believe that there are genuine issues of fact in this regard, and as such, are appealing the summary judgment ruling and final judgment to the Ninth Circuit. (Doc. 371, 372.)

there is no basis for a fee award under section 1988. *See Mitchell v. Office of Los Angeles County*, 805 F.2d 844, 847 (1986) ("There is a significant difference between the bringing of cases with no foundation in law or facts at the outset and the failure to present evidence sufficient to justify relief at trial.").

### 3. <u>Defendants failed to distinguish between work on state law claims, which do *not* qualify for fees under section 1988, and Plaintiffs' sole civil rights claim.</u>

"Section 1988 of the Federal Civil Rights Act provides for an award of reasonable attorneys' fees to the prevailing party in civil rights cases brought under one of a number of enumerated federal statutes." *Bremer v. Cnty. of Contra Costa*, No. 15-CV-01895-JSC, 2015 WL 5158488, at *9 (N.D. Cal. Sept. 2, 2015) (citing to **42 U.S.C. § 1988**; *see also Fox v. Vice*, 563 U.S. 826, 832 (2011). In *Karam*, the Ninth Circuit noted: "Section 1988 provides for the award of attorney fees in any action or proceeding to enforce specific federal statutes including § 1983. **Karam's state law claims for malicious prosecution do not fall within the scope of § 1988.**" *Karam*, 352 F.3d at 1195 (emphasis added); *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) ("Prevailing on their substantive due process claim under § 1983 would entitle the Chaudhrys to attorneys' fees, see 42 U.S.C. § 1988(b), while prevailing on their state-law wrongful death claim does not").

Further, a defendant seeking attorneys' fees *must distinguish between claims that may justify fees and those that do not.* "The question then becomes one of allocation: In a lawsuit involving a mix of frivolous and non-frivolous claims, what work may the defendant receive fees for? Vice concedes, as he must, that a defendant may not obtain compensation for work unrelated to a frivolous claim." *Fox v. Vice*, 563 U.S. 826, 835 (2011). "To put a finer point on it, a defendant is entitled only to 'the amount of attorneys fees attributable exclusively to' a plaintiff's frivolous claims." *Harris*, 631 F.3d at 971 (quoting *Tutor–Saliba Corp*., 452 F.3d at 1064).

Here, the PCH Defendants are *not* entitled to attorneys' fees for Plaintiffs' state law claims. Further, the state law claims, including negligence, intentional infliction of

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

emotional distress, and failure to supervise or train, predominate Plaintiffs' claims against PCH. Further, they **predominate** Defendants' motion for attorney's fees, ***even though arguments about state law claims are irrelevant to a fee award under section 1988***. PCH argues, "It should have been apparent to Plaintiffs from the beginning that the PCH Defendants met the low bar to trigger civil immunity, under A.R.S. § 13-3620(A)(1)." Mot. at 7. Whether true or not, it is irrelevant. Defendants claim that they "[had]to incur significant attorneys' fees in responding to the medical allegations to rebut the conspiracy claim." Mot. at 11. But a review of Defendants' own moving papers and this Court's ruling demonstrates that the 11 PCH experts ***went to the state law negligence claims (and state law immunities)***, not the federal civil rights claim, as Defendants now incorrectly claim. This Court noted:

> … Malice is defined by statute as "a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." A.R.S. § 1-215.20; *Ramsey*, 235 P.3d at 292.
>
> PCH Defendants argue Plaintiffs cannot prove malice to overcome the presumption they acted with good faith and with proper motives, noting Plaintiffs have not disclosed a single expert witness to testify that any of the PCH Defendants breached the standard of care by acting unreasonably, let alone with malice.

*Order On MSJs*, **Doc. 263** at 10. The "expert" issue, for which Defendants admit they expended "significant attorney's fees," related to the state law negligence claims (and Defendants' assertion of the "malice" immunity of *Arizona* statute section 13-3620), ***not*** the federal conspiracy claim.

### 4.   Defendants are not entitled to fees under any "operative set of facts" theory.

Defendants suggest that this Court may award fees under section 1988 for work on pendent state law claims "based on a common nucleus of operative facts with a substantial federal claim." Mot. at 6 (citing to *Carreras v. City of Anaheim*, 768 F.2d 1039 (9th Cir. 1985)). But the federal conspiracy claims are separate and distinct from the state law

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

claims. As such, section 1988 does not authorize an award of attorney's fees for any work PCH attorneys assert they did on the state law claims.

Under section 1988, "[w]hen the **plaintiff** in a civil rights action prevails on a pendent state claim based on a **common nucleus of operative fact** with a substantial federal claim, fees may be awarded under § 1988." *Carreras v. City of Anaheim*, 768 F.2d 1039, 1050 (9th Cir. 1985) (emphasis added). The PCH Defendants cite to the Seventh Circuit's decision in *Munson v. Milwaukee Bd. of Sch. Directors*, 969 F.2d 266 (7th Cir. 1992), for the proposition that this is a two-way street, that defendants can recover for time spent on pendent state law claims that arise from a common core of fact. *See* Mot. at 6.

Notably (and not mentioned by the Defendants), the Ninth Circuit has expressly withheld discussion of whether this Circuit will apply the *Munson* rule. *See Harris*, 631 F.3d at 976 n. 6 ("Whether fees are available to defendants for such [pendent state law] claims under § 1988 and the other civil rights fee statutes is an open question in our Circuit. We do not address it here because Harris failed to challenge the district court's decision on this point. Accordingly, our discussion of these claims should not be read as an endorsement of *Munson* 's reasoning or of the district court's conclusion"). "Section 1988 was enacted to attract competent counsel to represent citizens deprived of their civil rights, and to encourage compliance with and enforcement of the civil rights laws." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 930 (9th Cir. 2003) (quotations omitted). Since awarding fees to a prevailing defendant is inconsistent with this salutary purpose, there is good reason to believe that the Ninth Circuit would ***not*** adopt the *Munson* court's reasoning.

As set forth above, Plaintiffs' conspiracy claim under section 1983 was not frivolous, at the outset or as the case progressed. Accordingly, there is no need to even reach the pendent state law claims. However, even so, the *Munson* reasoning does ***not*** apply here. "The burden of establishing entitlement to an attorneys fees award lies solely with the claimant." *Trustees of Directors Guild of America–Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000). In this regard, "[i]f defendants do not demonstrate

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

that the work would not have been performed in order to defend against the nonfrivolous civil rights, or to put it differently, but for the need to defend against the frivolous claims, fees associated with that work cannot be awarded, even in part." *Harris*, 631 F.3d at 973.

Likewise, regardless of the merits of Plaintiffs' section 1983 conspiracy claims, Plaintiffs' state law claims were certainly not frivolous, either at the outset or as the matter progressed. Plaintiffs' state law claims were predicated on the PCH Defendants' diagnosis and treatment of S.Z.S. And the evidence established the potential negligence of the Defendants:

- PCH's initial diagnosis that S.Z.S. was abused was when PCH providers misdiagnosed Monogolian spots as bruising. As the juvenile court found, "all parties agree the child had Mongolian spots rather than bruising."

- However, once the Mongolian spots were initially thought to be bruises, PCH Defendants put in abuse protocols, at which time Dr. Cassidy concluded that S.Z.S.'s retinas were filled with blood, indicative of major, abuse-type trauma. But when a subsequent ophthalmologist examined S.Z.S., he found no evidence of blood buildup in S.Z.S.'s retinas. The juvenile court found Dr. Cassidy to a non-credible witness.

- Dr. Wood's medical records were replete with errors and misstatements. As a result of these numerous errors, other PCH providers examining the records reached incorrect conclusions regarding abuse.

- Dr. Wood ordered a bone scan for S.Z.S., an important step in any abuse investigation, but it was never done. **Ex. H** (order for bone scan); **Ex. I** (July 17, 2019 email, "have a concern about something Dr. Woods stated yesterday and why the bone scan wasn't scheduled following his order on or about 2/28/19").

In short, there was a reasonable basis to believe that the PCH Defendants had breached the applicable standard of care diagnosing and treating S.Z.S.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*Further,* under *Munson*, the Seventh Circuit decision Defendants rely upon for their assertion that they are entitled to fees for work on the pendent law claims, a defendant may be awarded such fees ***only*** for claims that "**seek relief for essentially the same course of conduct**." *Munson*, 969 F.2d 272 (emphasis added).

Here, Plaintiffs ***only*** civil rights claim against the PCH Defendants was found in Count Six, and the ***sole*** factual allegations against the PCH Defendants in that claim are as follows: PCH violated Plaintiffs' right of familial association by:

> providing Defendants Gualajara, Araiza, Lucero, and Duncan [DCS employees] false, misleading, and/or unfounded information alleging that Honor and/or Donald had abused S.Z.S. [and] refusing to discharge S.Z.S. to the custody of this lawful parents, and instead discharging him to the custody of a person who was neither a parent nor a legal guardian.

*Complaint*, **Doc. 1-4**, ¶¶ 233, 234.

And from these two, limited factual allegations, the PCH Defendants claim that a finding with respect to this claim authorizes fees for ***pendent state law claims*** for which they have not cited any legal basis other than section 1988. But these two factual claims theories under section 1983 are simply too dissimilar, both factually and legally, from the pendent state law claims to support an award of fees on these claims under any circumstance. *Cf. Fox v. Vice*, 563 U.S. 826, 840–41 (2011) ("In a suit of this kind, involving both frivolous and non-frivolous claims, a defendant may recover the reasonable attorney's fees he expended solely because of the frivolous allegations. And that is all. Consistent with the policy underlying § 1988, the defendant may not receive compensation for any fees that he would have paid in the absence of the frivolous claims").

The PCH Defendants, who bear the burden of proving their entitlement to fees, did not even attempt to justify why they might be entitled to fees for work on Plaintiffs state law claims. Simply put, they are not entitled to fees for this work.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**5.**     **The PCH Defendants' failure to itemize fees based on claims, specific Defendants, and/or time requires a complete denial of any fees to the PCH Defendants.**

"The proper allocation of attorneys' fees among such claims, when a defendant seeks to recover fees, is both simple and obvious, at least in theory. Fees may be awarded only for frivolous claims, and a defendant bears the burden of establishing that the fees for which it is asking are in fact incurred solely by virtue of the need to defend against those frivolous claims." *Harris*, 631 F.3d at 971. "That is because here as in cases involving attorneys fees generally, the burden of establishing entitlement to an attorneys fees award lies solely with the claimant." *Id.* at 971-72 (quotation omitted). "Where, as here, the plaintiff seeks relief for violation of his civil rights under various legal theories based on essentially the same facts, and a number of his claims are not frivolous, the burden on the defendant to establish that fees are attributable solely to the frivolous claims is from a practical standpoint extremely difficult to carry." *Id.* at 972.

Further, "[t]he fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award." *Fox*, 563 U.S. at 838. And, the "trial courts need not, and indeed should not, become green-eyeshade accountants." *Id.*

Here, the PCH Defendants made no effort to differentiate its fee request between those fees to which it might be entitled and to which it is not. Although claiming fees for pendent state law claims, they made no effort to explain how the state law claims arise from the same facts as the federal. While they claim that, at some unspecified point, Plaintiffs should have realized that the entire case was frivolous, they neither identify that point or segregate fees from that point forward. Indeed, the PCH Defendants did not differentiate between ***any of the following:*** (1) federal versus state law claims; (2) different Defendants; or (3) any point of time at which they claim that the frivolousness should have become obvious. In *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177 (9th Cir. 2012), the Ninth Circuit held that the defendants had "not carried their burden of showing that they incurred attorneys' fees solely because of Braunstein's frivolous claims." *Id.* at 1189.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Here, the PCH Defendants made a conscious decision to seek an "all or nothing" award of attorney's fees. And, for the reasons set forth herein, they have fallen far short of demonstrating an entitlement to "all"; therefore, they are entitled to "nothing" in their fee request.

### 6.   This Court must also consider the financial resources of the Plaintiffs in considering an award under section 1988.

The Plaintiffs, parents and child, were involuntarily separated from each other for nine months because of noncredible testimony of PCH doctors and faulty PCH medical records. Further, Plaintiffs are a regular family without access to any trove of financial resources. Mother is a social worker and Father a youth sports coach with a small side business screen printing tee shirts to augment his income. This Court is required to consider a plaintiff's financial resources in making any fee award under section 1988. *Miller v. L.A. County Bd. of Educ.*, 827 F.2d 617, 620-21 (9th Cir.1987) (requiring district courts to consider the plaintiff's financial resources in determining the amount of the award).

### B.   The PCH Defendants Have Failed to Identify *Any* Ground for an Award of Fees as Sanctions under 28 U.S.C. § 1927.

Title 28, section 1927, provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**28 U.S.C. § 1927.** An award of fees under section 1927, unlike an award under section 1988, is not about "frivolousness." *Braunstein*, 683 F.3d at 1189. Section 1927 applies only to "an attorney who unreasonably and vexatiously 'multiplies the proceedings' in a case" and thus "may be required to pay the excess fees and costs caused by such conduct." *Id*. "Unlike an award of attorneys' fees under § 1988, an award of sanctions under § 1927 'does not distinguish between winners and losers, or between plaintiffs and defendants.'" *Id*. (quoting *Roadway Express., Inc. v. Piper*, 447 U.S. 752, 762 (1980)). "Recklessness suffices for § 1927 sanctions, but sanctions imposed under the district court's inherent

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

authority require a bad faith finding." *Id.* (quoting *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010)).[10]

In this case, we know that both S.Z.S. and his parents were separated for nine months based upon negligent diagnosis and faulty medical records. The evidence shows unprecedented communications between PCH employees ***and the director of DCS***, leading one DCS employee to write in an email: "I literally cannot tell you how much grief I took from PCH, CPT and management all the way up to Greg [McKay, DCS Director] for not immediately removing this kiddo. Looks like the judge saw the same things I did." **Ex. G** at 2.[11]

The PCH Defendants ***admit*** that one of their objectives is to silence Plaintiffs' attorneys, who specialize in civil rights cases involving children's welfare. The PCH Defendants do not make any attempt to actually demonstrate how undersigned counsel "multiplied the proceedings" in this matter.[12]

---

[10]   The PCH Defendants cite *C.W. v. Capistrano Unified School Dist.*, 784 F.3d 1237 (9th Cir. 2015) to support an award of fees against counsel in a case involving section 1983. Disingenuously, Defendants do not note that *C.W.* did not arise under section 1927 whatsoever. *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626 (9th Cir. 2017), also cited by the PCH, stands only for the proposition that section 1927 permits "fees-on-fees," namely, expenses associated with seeking sanctions under section 1927. It does ***not*** stand for the proposition, as cited by PCH, that all fees in a case may be shifted to an attorney under section 1927. In short, the PCH Defendants have ***no authority*** for their novel use of section 1927.

[11]   PCH Defendants also claim that Plaintiffs' counsel should have withheld disbursement of the settlement proceeds from the Department of Child Safety in anticipation of PCH's motion for attorneys' fees. At the time that PCH made this demand, they had not even filed a motion for summary judgment, let alone a fee application. Counsel consulted with ethics counsel about PCH's demand, who concluded that counsel had no obligation to do as PCH demanded. *See* **Ex. J**.

[12]   If anything, it was PCH Defendants who multiplied the proceedings, including with the present frivolous fee application and their refusal to comply with this Court's order regarding their financial arrangement between it and the Department of Child Safety. *See* Doc. 149 at 5:2-12.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**C.** **Defendants' Statement of Costs is Excessive.**

Finally, Defendants' costs and expenses are exaggerated. Most notably, they seek more than $15,000 in travel costs for depositions in this matter. However, most of the depositions in this matter took place during COVID-19 protocols, with many depositions, including most of the out-of-state depositions, being conducted by Zoom. Zoom includes a special "breakout" feature, which enables private communications between participants to a Zoom deposition. Defendants' decisions to travel to out-of-state Zoom depositions to be there in person (unlike that of Plaintiffs' counsel), should not subject Plaintiffs to any needless travel costs incurred by Defendants.

## III. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court deny the PCH Defendants' motion for fees and costs under section 1988.

**RESPECTFULLY SUBMITTED** this 9th day of September 2024.

**MILLS + WOODS LAW PLLC**

By   /s/ Thomas A. Connelly
     Thomas A. Connelly
     Robert T. Mills
     Sean A. Woods
     5055 North 12th Street, Suite 101
     Phoenix, AZ 85014

**GILLESPIE, SHIELDS & TAYLOR**
DeeAn Gillespie Strub
Jenny D. Jansch
7319 North 16th Street
Phoenix, AZ 85020

*Attorneys for Plaintiffs*

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

2

**CERTIFICATE OF SERVICE**

3      I hereby certify that on this 9th day of September 2024, I electronically transmitted

4  the foregoing document to be filed electronically with the Clerk of the Court using the

5  CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF

6  system.

7

8      */s/ Thomas A. Connelly*

9

10

11

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28