# EXHIBIT A

Clerk of the Superior Court
\*\*\* Filed \*\*\*
8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD37152                                                                          11/12/2019

CLERK OF THE COURT
JUDGE PRO TEM LORI ASH                                D. Wood
                                                     Deputy

IN THE MATTER OF:

SWAYDE ZAKAI SANKEY                    ANDREA HARTMAN
F1152112
DOB: 12/23/2018

                                       WILBUR F BARRY III

                                       DEEAN GILLESPIE STRUB

                                       HONOR NACOLE DUVALL
                                       C/O DCS CASEWORKER

                                       JEFFREY M ZURBRIGGEN

                                       DONALD RAY SANKEY JR.
                                       C/O DCS CASEWORKER

                                       DCS SPECIALIST - MARICOPA WEST
                                       REGION
                                       JUVENILE OFFICE OF PUBLIC
                                       DEFENSE SERVICES
                                       LEGAL ADVOCATE-JUVENILE

**RULING**

The Department of Child Safety (hereinafter referred to as "Department" or "DCS") filed a dependency petition on March 19, 2019, following a report of suspected abuse. At the direction of the child's pediatrician, Mother took the child to Phoenix Children's Hospital (hereinafter referred to as "PCH"). The hospital staff suspected non-accidental trauma for the injuries identified upon admission. The child was removed from the home and eventually placed with the child's maternal great-grandmother, who also served as a safety monitor.

DUVALL_000051

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD37152                                                                                      11/12/2019

This was a highly contested dependency. The Court heard testimony from twelve witnesses over four days – August 15, August 16, August 22, and August 27, 2019. More than 2,000 pages of exhibits were admitted and reviewed by the Court. The Court directed the parties to file written closings no later than September 13, 2019.

On first look, this case appeared to be a case in which the child suffered abuse based on the reported injuries. However, the medical records from PCH contain significant errors. Moreover, the Court found many of the witnesses to lack credibility. Based on the Court's assessment of the credibility and review of the testimony and exhibits, the Court finds that the Department did not meet its burden of proof in this case and the evidence fails to establish that there is a dependency as to either parent. For the reasons set forth below, the Court dismisses this dependency action.

This Court has jurisdiction in this matter and venue is proper in Maricopa County. A.R.S. § 8-532. The child resides in Maricopa County, the parents reside in Maricopa County, and the events that gave rise to this action occurred in Maricopa County. In addition, the Court finds that Arizona is the "home state" of the child under the UCCJEA. The Court further finds this matter is not subject to the Indian Child Welfare Act.

The Department's burden of proof in a dependency proceeding is a preponderance of the evidence. A.R.S. § 8-844(C)(1); Ariz.R.Juv.P. 55(C); *In re Cochise County Juvenile Action No. 5666-J,* 133 Ariz. 157, 159, 650 P.2d 459, 461 (1982). A court "must determine whether a child is dependent based upon the circumstances existing at the time of the adjudication hearing." *Shella H. v. Dep't of Child Safety,* 239 Ariz. 47, ¶ 12, 366 P.3d 106,107 (App.2016).

In this case, the Department filed a dependency petition on March 19, 2019, alleging the child, Swayde Zakai Sankey, born December 23, 2018, was dependent as to Mother Honor Duvall and Father Donald Sankey, Jr., because each parent was "unable or unwilling to provide [the] child with proper and effective parental care and control due to physical abuse or failure to protect from physical abuse." Arizona statute defines abuse as "the infliction or allowing of physical injury, impairment of bodily function or disfigurement or the infliction of or allowing another person to cause serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist and is caused by the acts or omissions of an individual who has the care, custody and control of a child." A.R.S. § 8-201(2).

The Court makes the following findings based on the Court's assessment of the credibility and review of the testimony and exhibits.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD37152                                                                11/12/2019

On February 21, 2019, Mother took the child to PCH at the direction of the child's pediatrician. She was concerned because the child was lethargic, the child was spitting up a dark colored mucus, and the child had unexplained bruising. At PCH, the child was diagnosed with unexplained bruising, retinal hemorrhages in both eyes, subdural hemorrhages, a fracture of the right tibia, and an oral lesion. Based on the diagnosed injuries, staff at PCH suspected non-accidental trauma and contacted the Department and law enforcement.

The Buckeye Police Department conducted an investigation regarding the concerns of child abuse. Detective Tamela Skaggs testified that PCH determined the child was abused. She further testified that she does not have the experience or knowledge to determine whether child abuse occurred and in this case, she could not determine who abused the child or when. She testified that the parents were cooperative and credible. The investigation was closed. No arrests were made and no charges were brought based on the investigation.

Dr. Brendan Cassidy, a Pediatric Ophthalmologist, examined the child at PCH on February 22, 2019. He testified that he was contacted by PCH to examine the child because of a concern about child abuse. The examination by Dr. Cassidy took about 90 seconds and consisted of viewing the eyes though a device and an exterior examination – he conducted no other assessments of the interior of the eyes. Dr. Cassidy testified that although the child was able to follow large objects, the child had significant hemorrhaging over the optic nerve on both eyes. He testified that the back of the eyes were "painted with blood." He further testified that there was bruising on the white surface of the eyes and visible swelling and bruising around both eyes. Dr. Cassidy stated there were only a few possible causes, including various medical issues such as bleeding disorders, sepsis, full-body infection, or leukemia. He also testified that if the child did not have any of these medical issues, the cause would be significant trauma, and Dr. Cassidy's examples of such a trauma included a crushing head injury such as a truck rolling over the head, falling from 30 feet or higher, a crash into a wall at a high rate of speed, or a repetitive acceleration and deceleration injury. Dr. Cassidy opined that the child's injuries were from abusive head trauma, slamming a child against a hard object or throttling or shaking a child violently. Dr. Cassidy noted that a lot of children with bleeding of this level do not survive but the blood would likely dissipate within a few weeks. As part of his testimony, Dr. Cassidy dismissed the examination and report of another doctor, Dr. Heller, which was done on February 25, 2019 and had significantly different findings.

The Court found credibility issues with Dr. Cassidy's testimony. First, Dr. Cassidy was dismissive of the examination of Dr. Heller. In Dr. Heller's records, it states "WNL" in multiple places. Dr. Heller testified that the acronym in the records meant "We Never Looked." Dr. Coffman testified that WNL means "Within Normal Limits" and that she had never heard of it meaning anything else. Second, multiple witnesses testified that the child was not in any

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD37152                                                                   11/12/2019

apparent distress or discomfort. The only visible sign of injury was minor petechiae on the chest. Yet, Dr. Cassidy testified that the trauma necessary for the child's injuries would include a crushing head injury such as a truck rolling over the head, falling from 30 feet or higher, a crash into a wall at a high rate of speed, or a repetitive acceleration and deceleration injury. This simply was not credible. Third, Dr. Cassidy testified as to the swelling and bruising around the eye area of the child, referred to as the eye mask area. The Court viewed the photos, admitted into evidence, which were taken upon admission at PCH. The Court was unable to see any visible swelling or bruising. Dr. Coffman also testified that she did not see bruising and swelling in the photos - only a possible dark area that could have been bruising. Fourth, Dr. Cassidy testified that a lot of children with bleeding of this level do not survive. The testimony established that this child is doing well and meeting all his milestones. Finally, Dr. Heller credibly testified that there was nothing alarming about his examination of the child's eyes, just a few days later, and he testified there was no reason to suspect abuse.

Dr. William Wood also treated the child at PCH. Dr. Wood testified that the child had a right tibia fracture that most likely was caused by a torque injury but he acknowledged other possible causes. Dr. Wood's records indicate the child was placed in a splint, the child was given oral pain medication, and there was a history of pain and swelling. None of these notations were accurate. Dr. Wood attributed the errors to a scribe and to template errors. Nonetheless, the errors raise concern about the treatment of the child based on inaccurate records, as well as the opinions formed by those who reviewed the records in this case. Dr. Wood testified the child was not in distress. He conducted a physical examination, moving the arms and legs around, and the child was in no distress or pain. The child had normal movement of all extremities. Dr. Wood admitted under cross examination that an acute fracture usually causes pain and a child would most likely exhibit discomfort upon touching the area. Moreover, Dr. Wood testified that the absence of pain contradicts the fracture being a new fracture.

After the discharge of the child from PCH in February of 2019, Mother took the child to Dr. Warren Heller for a second opinion. He examined the child on February 25, 2019, and he found nothing alarming in his examination of the child – all within normal limits – and he had no reason to suspect abuse. Dr. Heller was not aware of the prior diagnosis from Dr. Cassidy or the prior hospitalization. However, he testified that the prior hospitalization and diagnosis from Dr. Cassidy would not impact what he saw. Dr. Heller had no bias in this case and no reason to suspect abuse going into the examination, and he very clearly and credibly testified that he did not see the retinal bleeding that Dr. Cassidy reported seeing.

Dr. Kathryn Coffman, who works with the Child Protection Team, testified about her contact with the family on March 7, 2019 for a recheck of the child and her subsequent review of the case. Mother brought the child in for a checkup because Mother noticed the child's head

Docket Code RULING                      Form XPJDBlankME                           Page 4

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD37152                                                                 11/12/2019

circumference was increasing. Mother was directed to take the child back to PCH. Even though Mother was concerned about the family's prior interactions with PCH, she took the child to PCH. In addition to testifying about her interactions with the child and Mother on March 7, 2019, Dr. Coffman testified of her impressions of the injuries to the child based on the medical records. Dr. Coffman opined the injuries were likely from inflicted trauma (i.e. not accidental). However, Dr. Coffman reviewed records that the evidence established had several errors.

      Dr. Jennifer Ronecker, a pediatric neurosurgeon at PCH, testified about her contact with the child and the family. She testified about a drain that was placed in March of 2019 to relieve increasing intracranial pressure. She reviewed the child's records and MRIs, and she testified that it is hard to date any blood on a brain scan. She further testified that something happened between the first admission to PCH in February and his readmission in March to cause the head circumference to rapidly increase. Notably, the child was in the care of the Department during this time, not the care of the parents. Finally, she testified that she could not opine on the causation for what was seen on the MRI or the causation of the need for the drain.

      Dr. Steven Gabaeff is an expert hired by parents. He testified that based on his review of the records that there was no abuse in this case. The Court did not find his testimony credible. He referred to Dr. Cassidy as a "liar," which the Court found inappropriate. Moreover, as part of his testimony, the Court admitted exhibit 6, which Dr. Gabaeff testified were all journal articles from reputable, peer reviewed publications. The Court finds this compilation of random materials are not all articles from peer reviewed publications. For example, the first page (MOTHER 000432) is an excerpt from a dissent with commentary before the excerpt. There is no attribution for the introductory sentence. Likewise, there appears to be an article written by Mother's expert (MOTHER 000433-000466) that does not indicate if it was peer reviewed, if it was published, and if it was published, the publication and date of the publication. In addition, compilation includes a Memorandum Opinion and Order (MOTHER 00542-000638) from the United States District for the Northeastern District of Illinois, Eastern Division. This is certainly not a peer reviewed article. The compilation also includes a document that appears to be a court order, possibly a draft of a court order. It does not include a court name, case name, case number, or date. The compilation includes other court decisions (MOTHER 000797-000930) and an unsigned affidavit from a case in the United States District Court, Eastern District of Michigan, Southern Division (MOTHER 000932-000947). The Court is troubled by the lack of candor regarding the contents of this exhibit from counsel and the witness. This random collection of pages does not qualify for admission under the learned treatise exception to the hearsay rule. As a result, the Court did not consider Exhibit 6. Moreover, as previously stated, the Court did not find the testimony of Dr. Gabaeff credible or helpful in this case.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD37152                                                                 11/12/2019

     Michael Caldwell worked with the parents as a parent aide in this case. He testified about his interactions with the parents and his observations of the parents with this child. He credibly testified that the child looks fondly to his parents, the child is very attached to his father, and the child has no hesitation with the parents.

     Maternal Grandmother also testified. She is a registered nurse and testified about her concerns with the care at PCH. The Court found her to be a credible witness who was only concerned with trying to determine what, if anything, was wrong with the child.

     Finally, both parents testified and both were credible. Father testified that he was sick that week, then his wife got sick, and then his child was sluggish and may have been sick as well. He further testified that he never abused his child and never shook his child, and he does not believe his wife harmed or abused the child. He does not believe his child had a broken leg and does not believe there was retinal hemorrhaging. He did not believe there was any abuse by anyone. The Department raised concerns with the fact that Father was not at the hospital and Father did not review the medical records. The dynamic of each family is different with parents taking on different roles. The Court takes no negative inference as a result of Father not being at the hospital and not reviewing the medical records. Mother took a very active role in this case, with her background in social work, and she reviewed the medical records with her mother, who is a nurse.

     Mother testified to the events that led her to take the child to PCH. She testified of the symptoms that caused her concern, including the child was lethargic, the child was spitting up a dark colored mucus, and the child had unexplained bruising. She credibly explained that the lesion on the roof of his mouth could have been caused by him placing his hands in his mouth, and provided an exhibit of the child placing his hand in his mouth. She further testified that she believes the child had a virus, like the one she and Father had, which caused his lethargy. The Department tried to show Mother lacked credibility based on her failure to tell Dr. Heller that the child had previously been in the hospital. Mother explained, and the Court believes, that she was looking for answers as to what happened to her child and did not want the prior events and diagnosis from PCH to impact the opinion she was getting from Dr. Heller.

     These parents clearly love this child. They dote on him. Mother and Father were concerned about the health of their child and sought appropriate medical care, first by consulting the pediatrician and then by taking him to PCH. In addition, Mother took the child back to PCH for care, even though she had concerns with how they were treated by PCH at the onset of this case. She was more concerned with the well-being of her child than possible additional allegations from PCH.

DUVALL_000056

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD37152                                                              11/12/2019

The parents have stable employment and housing. There is no history of illegal substance abuse and no history of mental illness. These are patient, caring parents. The Court found them credible, and Detective Skaggs also testified that she found the parents credible.

Based upon its consideration of the evidence, the Court finds that the Department failed to prove by a preponderance of the evidence that the child was abused or that either parent failed to protect the child from abuse. PCH diagnosed the following injuries which lead the hospital staff to suspect abuse: unexplained bruising, retinal hemorrhages in both eyes, subdural hemorrhages, a fracture of the right tibia, and the oral lesion.

As to the bruising, all parties agree the child had Mongolian spots, rather than bruising. There are only two areas of potential bruising that were not determined to be Mongolian spots. Dr. Cassidy testified about bruising and swelling around the eyes. Dr. Coffman testified that she did not see any bruising or swelling around the eyes in the photographs taken at the hospital. Likewise, the Court was not able to see any swelling or bruising. The other area was the bruising on the chest, which Dr. Coffman identified as minor petechiae on the chest. The photographs showed a slight discoloration on the chest. No records indicated and no witness testified that minor petechiae on the chest is an indicator of abuse.

The credible testimony failed to establish retinal hemorrhages in both eyes. Dr. Cassidy was the only doctor to observe the severe retinal hemorrhaging to which Dr. Cassidy testified and noted in the records. No tests were done to verify this diagnosis. Dr. Heller examined the child a few days later and did not see the retinal hemorrhages to which Dr. Cassidy testified. As to the subdural hemorrhages, the testimony established that it is not possible to date the blood seen on the scans. Moreover, there are various possible reasons for the subdural hemorrhages, including a traumatic birth that lead to the child's head being cone shaped after birth. In addition, the child experienced further issues of cranial pressure a few weeks after being removed from the care of the parents.

There was conflicting testimony regarding the tibia fracture. The child showed no pain or discomfort and Dr. Wood testified a fracture usually causes pain or tenderness. The child exhibited neither, and the child had no issues with range of motion. The oral lesion was credibly explained, with supporting images admitted as evidence, as likely being caused by the child's hands in his mouth.

In addition to the concerns related to the diagnosis, the criminal investigation was closed with no arrests or charges. Moreover, the child is now healthy and meeting his milestones. With significant abuse, including retinal hemorrhages that Dr. Cassidy testified a lot of children would not survive, some lingering issues would be expected. This child has none.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD37152                                                                  11/12/2019

The Court finds Mother and Father are more than minimally adequate parents and the Court further finds no safety barriers exist that would prevent the child from being in the custody of Mother and Father.

Based on the foregoing,

IT IS ORDERED denying a finding of Dependency.

IT IS FURTHER ORDERED dismissing this matter and returning the child to the legal custody of Mother and Father.

IT IS FURTHER ORDERED relieving the Arizona Department of Child Safety, the Foster Care Review Board, and all court-appointed attorneys and guardians ad litem of further responsibility in this case.

IT IS FURTHER ORDERED all pending motions in JD37152 are deemed moot as a result of this ruling.

This is intended to be a final order of the Court. The parties are advised that an appeal may be taken to the Arizona Court of Appeals (Ariz.R.P.Juv.Ct. 103-108). A Notice of Appeal must be filed with the Clerk of the Maricopa County Superior Court no later than 15 days after this final order is filed with the Clerk of the Court. Counsel for any party affected by this ruling shall ensure that the party is informed of this ruling, is advised as to appeal rights, and obtains authorization from the party to file the Notice of Appeal, if elected.

11/12/19
DATE                                JUDGE PRO TEM LORI ASH