**GUST ROSENFELD  P.L.C.**
Kari B. Zangerle, No. 013164
Robert C. Stultz, No. 025781
kzangerle@gustlaw.com
rstultz@gustlaw.com
One East Washington Street, Suite 1600
Phoenix, Arizona  85004-2553
(602) 257-7422
Fax: (602) 254-4878

*Attorneys for Defendants Phoenix Children's Hospital; Dr. William S. Wood*
*and Rachel Wood; Dr. Kathryn Coffman; Haley Dietzman and*
*Roald Dietzman; Zachary Dion; and Carey Lewis*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Honor Duvall, an individual; Donald Sankey, Junior, an individual; S.Z.S., a minor, through his parents and guardians Honor Duvall and Donald Sankey,<br><br>Plaintiffs,<br><br>v.<br><br>Arizona Department Of Child Safety, a governmental entity; *et al.*,<br><br>Defendants. | Case No.:  21-CV-00167-PHX-ROS<br><br>**THE PCH DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO THE PCH DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**(Oral Argument Requested)** |

Defendants  Phoenix  Children's  Hospital;  Dr.  Kathryn  Coffman;  and  Haley Dietzman and spouse Roald Dietzman ("PCH Defendants"), through counsel, submit their Reply to Plaintiffs' Response in Opposition to the PCH Defendants' Motion for Attorneys' Fees and Costs. (Doc. 373)

The PCH Defendants are seeking $501,983.50 in attorneys' fees. Plaintiffs concede that the amount requested by the PCH Defendants is reasonable. Plaintiffs do not argue that the amount of time expended or the hourly rates are unreasonable. Instead, Plaintiffs rest solely on the argument that the PCH Defendants are not entitled to an award of attorneys' fees. Therefore, if the Court concludes that the PCH Defendants should be awarded attorneys' fees, it is uncontested that $501,983.50 is a reasonable amount.

In addition to attorneys' fees, the PCH Defendants are seeking $48,677.54 in costs. Without citing any case law, Plaintiffs argue that $15,000 in travel expenses for depositions is excessive, because counsel for the PCH Defendants could have attended via Zoom. The PCH Defendants' counsel traveled out of state for the depositions of PCH employees who had moved and the PCH Defendants' and Plaintiffs' experts. There is nothing excessive about showing up in person to defend or to take a deposition.

## I.    THE PCH DEFENDANTS' ENTITLEMENT TO ATTORNEYS' FEES.

### A.    The PCH Defendants Should Be Awarded Attorneys' Fees Under 42 U.S.C. § 1988.

When a defendant is the prevailing party in a Section 1983 claim, the court may award attorneys' fees to the defendant "if the plaintiff's action was 'unreasonable, frivolous, meritless, or vexatious.'" *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir.2007)(*quoting Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994)). "An action becomes frivolous when the result appears obvious or the arguments are wholly without merit." *Id* (*citing Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). Contrary to what Plaintiffs suggest in their Response, a defendant can recover attorneys' fees if the plaintiff violates this standard at any point in the litigation, not just at its inception. *Id*.

Plaintiffs argue that *Karam v. City of Burbank*, 352 F.3d 1188 (9th Cir.2003), is controlling. Among other points of law, the *Karam* Court states that a plaintiff's inability to defeat summary judgment does not necessarily mean that the claims were groundless at the outset; the test is whether the claims are "groundless, without foundation, frivolous, or unreasonable." 352 F.3d at1195-96. Those statements of law are not in dispute. Factually, however, *Karam* has no similarities to this case. In *Karam*, the plaintiff filed suit after being excluded from city council meetings. There was no claim for civil conspiracy. A mandatory child abuse reporting statute did not apply, as it does here. And medical conditions and their diagnoses were not at issue. Plaintiffs' reliance on *Karam* is misplaced.

### 1.   Plaintiffs' attempt to relitigate their case only serves as confirmation that their claims were meritless, frivolous, or unreasonable.

In an unsuccessful effort to argue their claims were not "unreasonable, frivolous, meritless, or vexatious," Plaintiffs recycle the same baseless accusations that the Court previously found no evidence to substantiate. Plaintiffs begin by arguing that the results of the juvenile court dependency proceedings somehow provide a basis for the claims they asserted in this federal litigation. In the Order granting summary judgment, the Court concluded that the PCH Defendants were not parties to the juvenile court proceedings; the claims at issue were not the same; and the PCH Defendants did not have a full and fair opportunity to litigate the issues relevant to this case. (Doc. 365, at p. 6, lns. 7-11.)

While the juvenile court's ruling is irrelevant to the issues in this case, it still offers no support for Plaintiffs' civil rights/conspiracy claim. At most, the juvenile court's ruling can be read to mean the court found the evidence the State presented as lacking to establish the elements required to permanently remove S.Z.S. from his parents' custody. That is it. The outcome of the juvenile court proceedings provided no

1  basis for Plaintiffs to conclude that Dr. Coffman or any other PCH provider engaged in

2  a civil conspiracy to deprive them of their rights.

3       In their Response, Plaintiffs cite to two emails as purported factual support for

4  their claims. The first is an email Jeff Duncan, a DCS investigations manager, sent to

5  another DCS employee after the juvenile court's ruling. Mr. Duncan wrote,

6  "Ironic….Looks like the Judge saw the same things we did on this case." (Doc. 373-7.)

7  In a separate email that same day, Mr. Duncan wrote, "I literally cannot tell you how

8  much grief I took from PCH, CPT and management all the way up to Greg on this case

9  for not immediately removing this kiddo. Looks like the Judge saw the same things I

10  did."  (Doc. 373-7.) There is no mention of Dr. Coffman, no mention of a conspiracy,

11  and no mention of any intent by anyone to remove S.Z.S. for improper purposes.  If

12  anything, this e-mail *disproves* that there was an actual "conspiracy" between DCS and

13  the PCH Defendants.

14       In presenting the Court with Mr. Duncan's email, Plaintiffs fail to provide the

15  Court with Mr. Duncan's sworn testimony about the email.  Mr. Duncan testified that he

16  had frustration with the timing of DCS removing S.Z.S. from his parents' custody, not

17  the actual removal, which he concluded was supported by the evidence:

18         Okay. Again, I think another poorly worded e-mail on my

19         part, but I think -- truthfully, I think it was a bit of frustration
          that I had with this case. As I said, I felt like I wasn't ready to

20         remove the child when we did. **That's not to say that I**
          **wasn't going to remove this child at some point because, in**

21         **my opinion, there was sufficient evidence to do so and the**
          **judge signed the order to do so.** But that e-mail in saying it

22         made my day I think was a result of the frustration from

23         basically -- I would say basically I felt like there was some
          lack of confidence in my ability to do my job.

24

25  (See the deposition of Jeffrey Duncan, at p. 275, lns. 3-13, attached hereto as Exhibit

26  1.)(Emphasis added.) Notwithstanding any frustration Mr. Duncan had about the timing

of DCS's removal, he certainly agreed with removing S.Z.S. and filing the dependency action in juvenile court, as Mr. Duncan signed the verification for DCS's Dependency Petition, averring that he had read the Petition and "believe[s] upon information and belief that the contents thereof are true and correct." (Doc. 319-44, at p. 15 of 26.)

Plaintiffs' reliance on an email sent by Dr. Coffman is equally meritless. In an email to Gregory McKay, Director of DCS, Dr. Coffman mentions that "it has come to our attention that the family was advised by someone from DCS to hire an attorney to sue the hospital." (Doc. 373-4.) At her deposition, Dr. Coffman testified that she does not know who at DCS purportedly told the family to sue PCH. Who this nameless DCS employee was and what motivations or biases they may have had is unknown. Regardless of what the nameless DCS employee said, Plaintiffs had a duty to only bring claims for which they had factual support and not pursue meritless, frivolous, or vexatious claims. There is no factual relationship between a nameless DCS employee purportedly telling the family to sue PCH and filing a civil rights/conspiracy claim against Dr. Coffman or anyone else.

### 2. Plaintiffs pursued costly discovery that resulted in no evidence of a civil conspiracy; yet, they continued to litigate their claims.

Throughout the litigation, Plaintiffs led the parties down expensive rabbit holes in futile searches of evidence of a conspiracy. At one point, Plaintiffs suggested the purported conspiracy was financially motivated and sought financial discovery. The PCH Defendants produced financial information related to funds received from State and federal sources for the activities of PCH's Child Protection Team. Plaintiff never provided any of this financial information to the Court, because there was no evidence of a financial motive for reporting S.Z.S.'s suspected abuse to DCS.

At another point, Plaintiffs suggested the purported conspiracy was racially motivated, a particularly egregious allegation to make without evidentiary support. The

PCH Defendants were required to review Dr. Coffman's medical charting for a five-year period and identify how many patients she saw, how may patients she suspected were abused, and the race of the patients. This was a time-consuming undertaking, and ultimately the data revealed no racial bias. Plaintiffs similarly failed to bring this data to the Court's attention.

How did Plaintiff react to the absence of evidence? Undeterred, they charged ahead and continued to litigate their meritless, frivolous, and vexatious civil rights/conspiracy claim. Plaintiffs demonstrated the same obstinance with respect to the related State law claims. (See the Section below for a discussion of the relation between the federal and State law claims.) Prior to the expert disclosure deadline, for which Plaintiffs obtained three extensions, Plaintiffs' counsel admitted that expert testimony was required: "no one disputes that such expert testimony will be required here for the claims against your individually named clients." (Doc. 109-1 at 2.) Yet, after Plaintiffs failed to obtain experts to testify that any of the PCH providers violated the standard of care, Plaintiffs refused to dismiss the State law claims.

Without any evidence of a conspiracy, Plaintiffs litigated this case as though multiple PCH providers participated in the purported conspiracy, requiring the PCH Defendants to defend the allegations. Even after Dr. Coffman was the only remaining PCH Defendant against whom the civil rights/conspiracy claim was alleged, Plaintiffs continued to argue that multiple PCH Defendants were involved, as noted in the Court's Order granting summary judgment: "Plaintiffs' argument with respect to the conspiracy claim focuses heavily on a number of PCH Defendants, but Defendant Coffman is the only remaining PCH Defendant against whom this claim is alleged." (Doc. 365, at p. 6, fn. 1.) Plaintiffs' attempt to now limit the scope of the civil rights/conspiracy claim rings hollow.

**B.**   **The PCH Defendants Should Be Awarded Attorneys' Fees For the Pendent State Law Claims, Which Were Based On A Common Nucleus Of Operative Facts.**

In a civil rights action, the Court may award fees on a pendent state claim based on a common nucleus of operative facts with a substantial federal claim. *Carreras v. City of Anaheim*, 768 F.2d 1039 (9th Cir.1985). *See also Munson v. Milwaukee Bd. Of School Directors*, 969 F.2d 266, 272 (7th Cir.1992) ("If a plaintiff can be awarded fees for work done on an *unsuccessful* pendent state claim which is factually or legally related to a successful civil rights claim, then defendants likewise should be entitled to fee awards for defending frivolous pendent claims factually or legally related to frivolous civil rights claims.")

Plaintiffs half-heartedly call into question the applicability of *Munson* in the Ninth Circuit.  Plaintiffs must have found the *Munson* holding persuasive, because they spent considerable effort to argue that the federal civil rights claim and the State law claims were not based on a common nucleus of operative facts. An East District of California case cited by Plaintiffs, *Crane-McNab v. County of Merced*, 773 F.Supp.2d 861 (E.D.Cal. 2011), also found the *Munson* holding persuasive:

> While *Munson* is not binding on this court, the reasoning is persuasive. *See McAnally v. Clark Cnty.,* No. 0204CV01220, 2006 WL 240896, at *1 (D.Nev. Jan. 27, 2006) (citing *Munson* and awarding attorney's fees for § 1983 and state law claims when those claims were dismissed for the same reason and all lacked legal foundation). Here, all of plaintiffs' state law claims arose from the same set of facts as their § 1983 claims. Indeed, the court found the issues to be so intertwined that it was more effective to write the Memorandum of Decision in terms of the four distinct factual issues than in terms of each cause of action. Thus, attorney's fees may properly be awarded for the entire case because plaintiffs' frivolous § 1983 claims are inseparable from their frivolous state law claims.

*Crane*, 773 F.Supp.2d at 885. As discussed in more detail in the next Section, like in *Crane-McNab*, Plaintiffs' State law claims arose from the same set of facts as their Section 1983 claim.

### 1. **Plaintiffs' pendent State law claims were based on a common nucleus of operative facts as the federal conspiracy claim, under 42 U.S.C. § 1983.**

Throughout the litigation, Plaintiffs attempted to tell an integrated story that purportedly laid the foundation for all of their causes of action. Plaintiffs had no evidence to support that story, but it was an integrated story, nonetheless. In short, Plaintiffs alleged that the PCH Defendants committed negligence by misdiagnosing S.Z.S.'s injuries and attributing them to suspected abuse, and further deprived S.Z.S. and his parents of their rights by falsely reporting the suspected abuse to DCS. All of this was allegedly done within the context of a conspiracy between PCH and DCS to deprive S.Z.S. and his parents of their rights. The issues related to the federal civil rights claim and the State law claims involve the same injuries, the same medical diagnoses, and the same medical care.

Plaintiffs' Complaint demonstrates that the federal civil rights/conspiracy claim and the State law claims share a common nucleus of operative facts. In Count Six (the Section 1983 claim), Plaintiffs alleged that Dr. Coffman, Dr. Wood, and an unidentified social worker violated S.Z.S.'s and his parents' rights by reporting to DCS "false, misleading, and/or unfounded information alleging that Honor and/or Donald had abused S.Z.S." (Doc. 1, at ¶ 233.) In Count 15 (the State law intentional infliction of emotional distress claim), Plaintiffs alleged that Dr. Coffman, Dr. Wood, and NP Dieztman made "false reports of abuse to DCS which directly resulted in DCS unjustly keeping Honor's and Donald's young child from them." (Doc. 1, at ¶ 233.)

Without a hint of irony, Plaintiffs argue that their federal civil rights claim was based on "two, limited factual allegations." (Doc. 373, at p. 17.) Plaintiffs ignore that

they incorporated by reference all factual allegations in every cause of action, a pleading decision that confirms Plaintiffs recognized and intended the interconnectedness of their federal and State law claims.

Plaintiffs contend that work solely on the State law claims predominates the PCH Defendants' attorneys' fees request. That is not true. The only specific example Plaintiffs offer concerns PCH's expert witnesses. Plaintiffs argue that PCH's expert witnesses, and all the time spent developing their opinions, and preparing and defending their depositions, went to the State law negligence claims and not the federal civil rights claim. Again, that is not true. Even if Plaintiffs had pled only the federal civil rights claim and not the State law claims, the PCH Defendants would have used the same defense and the same experts. The defense experts were critical for defending the federal civil rights claim by demonstrating that the injuries Plaintiffs tried to explain away actually existed and were likely caused by abuse, and by proving that PCH's providers complied with the standard of care in reporting the suspected abuse to DCS. In other words, the defense experts helped establish that the PCH Defendants' actions were driven by medicine, science, and care for S.Z.S.'s wellbeing, and <u>not</u> by some unsubstantiated conspiracy to deprive him and his parents of their rights.

## 2. **Plaintiffs' pendant State law claims were unreasonable, frivolous, meritless, or vexatious.**

Plaintiffs' State law claims were unreasonable, frivolous, meritless, or vexatious. In Plaintiffs' Response, they repeat a few of their arguments about the medical care to conclude that "there was a reasonable basis to believe that the PCH Defendants had breached the applicable standard of care diagnosing and treating S.Z.S." (Doc. 373, at p. 16.) Plaintiffs' argument is spurious but beside the point. Considering the applicable civil immunity statute, the issue is not whether Plaintiffs had a reasonable basis to believe the PCH Defendants breached the standard of care but whether there was any

1   evidence that the PCH Defendants acted with malice (i.e., "a wish to vex, annoy or
2   injure another person, or an intent to do a wrongful act, established either by proof or
3   presumption of law)." A.R.S. § 1-215(20); *Ramsey v. Yavapai Fam. Advoc. Ctr.*, 235
4   P.3d 285, 292 (App. 2010).

5           In ruling that the PCH Defendants were entitled to civil immunity, the Court
6   noted that "Plaintiffs make no effort to support their contentions in arguing this point
7   with evidence, with the entire section of their response dedicated to civil immunity
8   entirely devoid of citations to the record." (Doc. 365, p. 10-11.) Plaintiffs' Response to
9   the PCH Defendants' Motion for Attorneys' Fees and Costs is no different. Plaintiffs
10  offer no discussion of the immunity statute.

11          The absence of evidentiary support would have been apparent to Plaintiffs before
12  they filed the lawsuit, if they had done their due diligence. Unfortunately, they failed to
13  take the most basic step before filing State law negligence claims against licensed
14  healthcare providers. In a letter dated March 28, 2022, counsel for Plaintiffs admitted
15  that they did not have the case reviewed by medical experts before filing suit, as they
16  claimed they had no such legal obligation, ignoring their Rule 11 duties. (*See* Exhibit 2
17  attached hereto.) In the same correspondence, Plaintiffs offered a hyper-technical
18  reading of the statute requiring preliminary expert affidavits in medical negligence
19  actions, arguing that affidavits were not required because the case is venued in federal
20  court and thus Rule 26.1, Arizona Rules of Civil Procedure, did not apply. Ex. 2.
21  Nonetheless, Plaintiffs' counsel acknowledged that "no one disputes that such expert
22  testimony will be required for the claims against your individually named clients." Ex.
23  2. Yet, as noted above and in other filings, Plaintiffs disavowed this unambiguous
24  statutory requirement, once they failed to find supportive medical experts to testify that
25  any of PCH Defendants breached the standard of care.

26

Plaintiffs' argument that the PCH Defendants needed to itemize the requested fees is factually and legally misplaced. The PCH Defendants did exclude from their fee application nearly $20,000 in attorneys' fees incurred directly related to the claims against William Wood, M.D., Carey Lewis, and Zachary Dion, each of whom were PCH employees individually named as Defendants. Moreover, Plaintiffs' citation to *Harris v. Maricopa County Sup. Crt.*, 631 F.3d 963 (9th Cir.2011), for the argument that the PCH Defendants needed to differentiate fees attributable to frivolous versus non-frivolous claims is inapplicable, because all of Plaintiffs' claims were frivolous. *See Crane-McNab*, 773 F.Supp.2d at 884 (E.D.Cal.2011) ("Because there were no nonfrivolous claims here, *Harris* is inapplicable.")

Plaintiffs decided to take the approach of throwing many claims against the wall to see which would stick. It was a risky game to play. In the end, none of the claims stuck, because there was no evidence to support the allegations. Plaintiffs acted in complete disregard of the facts and law in filing their claims and then in refusing to dismiss them.

## II.    THE PCH DEFENDANTS' ENTITLEMENT TO AN AWARD OF COSTS.

The PCH Defendants seek an award of costs in the amount of $48,677.54. Plaintiffs raise only one objection to the requested costs. Without citing any legal authority, Plaintiffs argue that $15,000 in travel expenses for out-of-state depositions is excessive, because Plaintiffs believe the appearances could have occurred through Zoom. Each of the out-of-state depositions the PCH Defendants' counsel attended was to defend either a former PCH healthcare provider or an expert witness, or to take Plaintiffs' expert's deposition. There is nothing unreasonable or excessive to appearing in person to defend or take a client or expert deposition.

/ / / /

**III.   ASSESSING THE ATTORNEYS' FEES AND COSTS AGAINST PLAINTIFFS' COUNSEL.**

Plaintiffs' counsel have repeatedly put their interests before their clients' interests, and in doing so, they pursued frivolous claims, and unreasonably and vexatiously multiplied the proceedings. The attorneys' fees and costs should be assessed against Plaintiffs' counsel.

In their Response, Plaintiffs misunderstand the legal bases for assessing the fees and costs against counsel. First, the Court may award fees and costs against counsel, pursuant to 42 U.S.C. § 1988. *C.W. v. Capistrano Unified School Dist.*, 784 F.3d 1237 (9th Cir.2015) (affirming a fee award against counsel in a case involving Section 1983 claims). Second, the Court can shift the fees and costs burden to Plaintiffs' counsel through 28 U.S.C. § 1927, which provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under Section 1927 require a finding that an attorney has acted "recklessly or in bad faith." *U.S. v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir.1985) (*quoting United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983)). Section 1927 authorizes an award for the litigation as a whole and "may shift the entire financial burden of an action's defense, including attorneys' fees, if the entire course of proceedings was unwarranted and should not have been commenced or pursued." *Blixseth v. Yellowstone Mountain Club, LLC,* 854 F.3d 626, 632 (9th Cir.2017).

For the reasons stated in the PCH Defendants' Motion and above, Plaintiffs' counsel acted recklessly and/or in bad faith. Without having the case reviewed by medical experts, they filed claims alleging medical negligence in diagnosing suspected child abuse, which purported led to the false reporting of abuse to DCS as part of a

conspiracy for which there was no evidence. When Plaintiffs later failed to find supportive standard of care experts, they disavowed their prior statements that such expert testimony was required and continued to litigate the case. The same is true of their refusal to dismiss the federal civil rights claim.

Plaintiffs' counsel argue that if the Court awards attorneys' fees, the award should be assessed against Plaintiffs individually and not their counsel. They also argue that the Court should consider the Plaintiffs' financial resources when determining an award, but they do not provide the Court any proof of their financial circumstances. Moreover, as previously discussed, the PCH Defendants requested that Plaintiffs' counsel retain the $249,000 from the settlement with the State Defendants in trust, pursuant to E.R. 1.15. Plaintiffs' counsel claim they consulted with ethics counsel, yet they do not provide an ethics opinion letter. Regardless, by disbursing the settlement funds to recover their fee and all their litigation costs to date, Plaintiffs' counsel created any financial vulnerability that they now ask the Court to take into account.

Assessing the attorneys' fees and costs against Plaintiffs' counsel is not about silencing them. It is about accountability. Plaintiffs' counsel will remain free to sue whomever they want and for whatever reason they want. But they must learn that filing meritless claims, acting recklessly or in bad faith, and vexatiously pursuing claims against healthcare providers caring for the most vulnerable members of our society comes with a cost.

**IV.    CONCLUSION**

The PCH Defendants incurred substantial fees and costs in defending against Plaintiffs' meritless and frivolous claims. The PCH Defendants request an award of attorneys' fees in the amount of $501,983.50 and costs in the amount of $48,677.54.

/ / / /

1    DATED this 20th day of September, 2024.

2                                    **GUST ROSENFELD, P.L.C.**

3

4                                    By  /s/ Robert C. Stultz
5                                        Kari B. Zangerle
                                         Robert C. Stultz
6                                        One East Washington Street, Suite 1600
                                         Phoenix, AZ  85004-2553
7                                        *Attorneys for Defendants Phoenix*
8                                        *Children's Hospital; Dr. William S. Wood*
                                         *and Rachel Wood; Dr. Kathryn Coffman;*
9                                        *Haley Dietzman and Roald Dietzman;*
                                         *Zachary Dion; and Carey Lewis*
10

11                        **<u>CERTIFICATE OF SERVICE</u>**

12        I hereby certify that on September 20, 2024, I electronically filed the foregoing

13   with the Clerk of Court, using the CM/ECF system, which will send notification of such

14   filing to all parties, and will e-mail all notification of such filing to all non-CM/ECF

15

16   system participants.

17   Thomas A. Connelly, Esq.
18   Robert T. Mills, Esq.
     Sean A. Woods, Esq.
19   Mills & Woods Law PLLC
     5055 North 12th Street, Suite 101
20   Phoenix, AZ  85014
21   *Attorneys for Plaintiffs*

22   DeeAn Gillespie Strub, Esq.
23   Mark Shields, Esq.
     Gillespie, Shields, Goldfarb Taylor
24   7319 North 16th Street
     Phoenix, AZ  85020
25   *Attorneys for Plaintiffs*

26

1  Cynthia Y. Patane, Esq.
2  Rachel L. Werner, Esq.
   Gordon & Rees Scully Mansukhani, LLP
3  One Renaissance Square
   Two North Central Ave., #2200
4  Phoenix, AZ  85004
5  *Attorneys for Defendant Brendan Cassidy*

6  By  /s/ Melody Kern

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26